IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| JEFFERY BLUBAUGH, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff<br><br>vs.<br><br>HEALTHCARE SOLUTIONS INSURANCE AGENCY LLC<br><br>Defendant. | Case No. 25-cv-607-BCW |

**PLAINITFF'S OPPOSITION TO THE**
**DEFENDANT'S MOTION TO BIFURCATE DISCOVERY**

## Introduction

Defendant Healthcare Solutions Insurancy Agency LLC ("Healthcare Solutions" or "Defendant") asks this Court to split discovery into "individual" and "class" phases. This request is inconsistent with the Federal Rules and with persuasive authority in this Circuit. Late last year, Judge Harpool from this Court rejected nearly identical arguments in a TCPA case in *Robertson v. Mortgage Research Center, LLC d/b/a Veterans United*, Case No. 2:24-cv-04106-MDH, 2024 WL 5046604, at *7 (W.D. Mo. Dec. 9, 2024), holding that "Plaintiff's claims and any potential class members' claims overlap" and that "class certification will be tied to the issues surrounding standing and the merits of the claims."

Furthermore, the motion is untimely, procedurally improper, and transparently reactive to an ongoing discovery dispute. Defendant waited months after discovery had already commenced before seeking bifurcation. Defendant raised the issue only after Plaintiff began a

discovery dispute process to get the very data needed to evaluate the liability at issue. This sequence confirms that the motion is an attempt to retroactively justify discovery obstruction and to delay production of evidence that goes to the heart of Plaintiff's claims.

This Court has already entered a Scheduling Order providing for a single, unified discovery period. Defendant cannot now undo it simply because Plaintiff has served discovery that Defendant does not wish to produce.

**Background**

Plaintiff Jeffery Blubaugh commenced this action on August 1, 2025 by filing a Class Action Complaint under the Telephone Consumer Protection Act, 47 U.S.C. § 227. ECF No. 1. The Complaint alleges that Defendant Healthcare Solutions Insurance Agency LLC engaged in a telemarketing campaign that resulted in multiple unlawful calls to Plaintiff's telephone number and to the telephone numbers of similarly situated consumers nationwide. Plaintiff alleges that these calls were placed despite the fact that the recipients' numbers were registered on the National Do Not Call Registry and despite the absence of prior express written consent. ECF No. 1 ¶¶ 1–4, 15–24.

Plaintiff's telephone number is a noncommercial residential number that has been listed on the National Do Not Call Registry since at least July 2024. ECF No. 1 ¶¶ 13–14. Plaintiff alleges that he never had any prior relationship with Defendant and never consented to receive telemarketing calls from Defendant. Nevertheless, Plaintiff received multiple calls promoting healthcare and insurance-related products over a period of months. ECF No. 1 ¶¶ 15–21. At least one of those calls allegedly used a prerecorded message, and others connected Plaintiff to live agents acting on Defendant's behalf. ECF No. 1 ¶¶ 18–20.

Plaintiff brings this action individually and on behalf of proposed nationwide classes of consumers who received similar unlawful calls, including a National Do Not Call Registry class and a prerecorded voice or robocall class. ECF No. 1 ¶¶ 28–33. The Complaint seeks statutory damages, treble damages for willful or knowing violations, and injunctive relief to prevent future unlawful telemarketing. ECF No. 1 ¶¶ 66–87.

Defendant was served with the Complaint in September 2025 and filed its Answer and affirmative defenses on October 28, 2025. ECF Nos. 5, 8. Following the Rule 16 process, the parties jointly proposed a scheduling order, and on December 4, 2025, the Court entered a Scheduling Order establishing a unified discovery period running through June 1, 2026. ECF Nos. 10, 11.

After discovery commenced, Plaintiff served written discovery seeking, among other things, outbound call records and documents evidencing Defendant's claimed consent defenses. Defendant refused to produce class-wide responsive materials, asserting burden and proportionality objections and contending that discovery should be limited to Plaintiff alone. As a result, Plaintiff raised a discovery dispute with the Court regarding Defendant's refusal to produce call detail records and consent documentation central to the claims and defenses in this case. See ECF No. 18 and related correspondence.

Only after Plaintiff sought the Court's intervention regarding Defendant's discovery refusals did Defendant file its Motion to Bifurcate Discovery on January 28, 2026. ECF No. 19. Defendant's motion was filed months after the entry of the Scheduling Order and after discovery had already begun, and it seeks to retroactively limit discovery to Plaintiff-specific issues while postponing production of class-wide evidence that Defendant had already declined to produce.

**Standard**

Rule 42(b) allows bifurcation for convenience, to avoid prejudice, or to expedite and economize." The moving party bears the burden. *O'Dell v. Hercules Inc.*, 904 F.2d 1194, 1201 (8th Cir. 1990). The Eighth Circuit cautions that bifurcation is not to be routinely ordered. *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010).

Rule 26(b)(1) permits discovery into any nonprivileged matter relevant and proportional to the needs of the case. Defendants resisting discovery must support "undue burden" objections with specifics. *Larson v. Burlington N. & Santa Fe Ry. Co.*, 210 F.R.D. 663, 664–66 (D. Minn. 2002). Mere speculation about burdens or dispositive motions is inadequate. *Konkol v. Educ. Comput. Sys.*, 2016 WL 6476932, at *12 (D. Minn. Oct. 25, 2016).

**Argument**

This Court has rejected bifurcation in TCPA cases. In *Robertson*, Judge Harpool held that overlap between merits and class issues makes bifurcation improper. 2024 WL 5046604, at *7. Other Courts in this Circuit have agreed, just last month in *Estate of Lokken v. UnitedHealth Group, Inc.,* 2025 WL 2607196 (D. Minn. Sept. 8, 2025, Magistrate Judge Elkins denied bifurcation where defendants sought to stage summary judgment first, explaining that such proposals assume success, risk duplication, and "would create more problems than [they] would solve." 2025 WL 2607196, at *10.

Magistrate Judge Jackson's decision in *Negrete v. Fla. Ins. Servs., Inc.,* 2024 U.S. Dist. LEXIS 20095 (S.D. Iowa, February 6, 2024) provides a roadmap for what should occur here. In *Negrete,* the Court entered a unified scheduling order and discovery plan, and the defendant did

not request bifurcated discovery during the Rule 26 process or at the scheduling conference. The case then proceeded into discovery. Only after the plaintiff filed a motion to compel did the defendant file a motion to bifurcate, proposing a narrow initial phase focused on the named plaintiff and then summary judgment before broader discovery. *Id.* The court denied bifurcation, finding no good cause to modify the scheduling order at that stage, concluding that the proposal was unilaterally beneficial to the defendant, unjust and prejudicial to the plaintiff, and likely to delay rather than expedite the case. The same sequence is present here, and the same result should follow.

## I. Bifurcation Would Waste Judicial Resources and Party Resources

Defendant's proposal would ensure duplication. Plaintiff would be forced to conduct one round of "individual" discovery—requesting documents, deposing corporate representatives and vendors, and reviewing expert materials—only to repeat those same steps once the case proceeds to "class" discovery. Outbound call records, vendor contracts, dialer settings, and compliance scripts all bear on both Plaintiff's claim and the class claims. To split them into phases would require duplicative discovery.

Indeed, "bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." *Hartley-Culp v. Credit Mgmt. Co*, 2014 U.S. Dist. LEXIS 130308, *10 (W.D. Pa. September 15, 2014).

The Court could deny the motion to bifurcate for this reason alone. *See id.* (denying similar motion to bifurcate merits and class discovery in a TCPA case); *EQT Prod. Co. v. Terra Servs., LLC*, 2014 U.S. Dist. LEXIS 203680, *4 (W.D. Pa. October 21, 2014) ("Terra's proposal would

5

likely result in deposing the same witnesses twice—once in the liability phase, and again in the damages phase. This is the definition of inconvenience, and the additional cost of duplicative depositions and document review combine to counsel against bifurcation in this case.").

Apart from the duplication of discovery outlined above, Defendant's proposal is bound to lead to additional discovery disputes and proceedings that would be completely unnecessary without bifurcation. There is significant overlap between discovery relevant to the merits of Plaintiff's individual claims and issues of class certification. Indeed, "[class certification] analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33-34 (2013) (internal citations and quotations omitted); *Charvat v. Plymouth Rock Energy, LLC*, No. 15-CV-4106, 2016 U.S. Dist. LEXIS 6778, at *6 (E.D.N.Y. Jan. 12, 2016) (denying motion to bifurcate merits and class discovery in TCPA action…"In fact, bifurcation would have the opposite effect."); *Lakeland Reg'l Med. Ctr. v. Astellas US*, LLC, 2011 U.S. Dist. LEXIS 16684, *4 (M.D. Fla. 2011) ("the line between 'class issues' and 'merits issues' is practically difficult, if not impossible, to determine."); Notes of Advisory Committee on 2003 Amendments to Fed. R. Civ. Pro. 23(c)(1)(A) ("Active judicial supervision may be required" to avoid "an artificial and ultimately wasteful decision between 'certification discovery' and 'merits discovery.'"). As another Court ruled when denying a motion to bifurcate in a TCPA case earlier this year:

> The Court has reviewed the parties' joint status report [10]. The Court does not see a need to bifurcate discovery in this case. There will be some overlap in discovery here. Discovery as to commonality and typicality under Rule 23 will also apply to the merits of the claim. Moreover, the Supreme Court in Walmart v Dukes has said the district court must conduct a rigorous analysis in determining class certification and that will often require some evaluation about facts that go to the merits of a plaintiff's underlying claims. Thus, bifurcating discovery often does not make sense as the lines between "class discovery" and "merits discovery" are significantly blurred.

6

*See Katz v. Allied First Bank, SB*, Civil Action No. 22-cv-5277, ECF No. 14 (January 3, 2023).

Given this overlap, bifurcation would "belie principles of judicial economy, as the Court may be forced to spend time and resources resolving discovery disputes over what is 'merit' discovery as compared to 'class' discovery." *In re Plastics Additives Antitrust Litig.*, 2004 U.S. Dist. LEXIS 23989, *9 (E.D. Pa. November 29, 2004) (citing *In re Hamilton Bancorp. Inc. Securities Litigation*, 2002 WL 463314, at *1 (S.D. Fla. Jan. 14, 2002) (noting that "bifurcation of discovery may well-increase litigation expenses by protracting the completion of discovery, coupled with endless disputes over what is 'merit' versus 'class' discovery").

The Eighth Circuit has cautioned that bifurcation cannot be justified where it prolongs proceedings or causes parties to incur duplicative costs. *O'Dell v. Hercules Inc.*, 904 F.2d 1194, 1201 (8th Cir. 1990). The Manual for Complex Litigation likewise warns that separating class from merits discovery multiplies disputes and delays resolution. MCL 4th § 21.14.
This is not theoretical. In *Estate of Lokken v. UnitedHealth Group, Inc.*, defendants proposed to confine discovery to named plaintiffs and pursue summary judgment first. The District of Minnesota rejected the approach recently, explaining that efficiency depended on assumed summary-judgment success and that if unsuccessful, bifurcation would force plaintiffs to "litigate discovery and summary judgment twice." 2025 WL 2607196, at *6–8. That is exactly what Defendant proposes here.

Similarly, in *Negrete v. Florida Insurance Services, Inc.*, Magistrate Judge Stephen B. Jackson, Jr. denied a TCPA defendant's motion to bifurcate was denied where the Court held that the motion was "unilaterally beneficial to Defendant," prejudicial to the plaintiff, and likely to delay the case rather than expedite it. 2024 WL 470370, at *6–7. Those same concerns apply here.

Defendant cannot show good cause because the asserted basis for bifurcation was known from the outset. Defendant knew consent would be disputed, knew class allegations were pled, and knew discovery would include calling data and consent documentation. Defendant nevertheless then waited until a discovery dispute arose to seek bifurcation. That is not diligence, and it is not good cause.

## II. Merits and Class Discovery Overlap

Defendant argues that Plaintiff can pursue "individual" discovery first, with class discovery to follow. However, the Eighth Circuit requires a "rigorous analysis" of Rule 23 at class certification. *Ebert v. General Mills, Inc.*, 823 F.3d 472, 477 (8th Cir. 2016). That analysis is "enmeshed" with merits issues. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). In this case, the very same evidence—call logs, vendor records, dialer configurations, and compliance policies—simultaneously proves Plaintiff's individual claims and the Rule 23 requirements. *Robertson v. Mortgage Research Center, LLC* squarely rejected bifurcation for this reason, holding that "Plaintiff's claims and any potential class members' claims overlap." 2024 WL 5046604, at *7.

*Estate of Lokken* also illustrates why artificial separation is unworkable: it breeds constant disputes over whether requests are "class" or "merits," wastes judicial resources, and ultimately "creates more problems than it solves." 2025 WL 2607196, at *10. And *Negrete* shows that attempts to carve out narrow "first phases" in TCPA cases ignore the overlap and simply delay resolution while creating more discovery fights. 2024 WL 470370, at *6–7.

Other courts have agreed. *See, e.g.*, *Grippo v. Sugared + Bronzed, LLC*, No. SA CV 24-01792-AB (DFMX), 2025 WL 596095, at *2 (C.D. Cal. Feb. 24, 2025) (relying on several TCPA cases in rejecting a bifurcation of discovery holding, "the distinction between merits discovery and

class discovery is not always clear, and many courts are, for this reason, reluctant to bifurcate class and merits discovery."); *Blair v. Assurance IQ LLC*, No. 23-16, 2023 WL 6622415, at *6 (W.D. Wash. Oct. 11, 2023); *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. 15-2057, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst.").

Defendant attempts to characterize consent as a discrete, threshold issue that can be resolved through Plaintiff-only discovery, but Defendant's own motion and supporting declaration demonstrate why that framing is unsupportable. Defendant's bifurcation request rests on the assertion that Plaintiff allegedly submitted his contact information through an online form and thereby provided prior express written consent to receive telemarketing calls. *See* ECF No. 20 at *2–4. But Defendant's own declaration confirms that its consent defense depends on standardized systems, standardized disclosures, and standardized recordkeeping practices, not on any individualized interaction unique to Plaintiff. The declarant asserts that Plaintiff's information was obtained through an online marketing form associated with Defendant's operations, that Defendant's systems captured and maintain electronic records of the submission, and that those records include the consent language presented at the time of submission along with metadata such as the date, time, and IP address. ECF No. 20-1 ¶¶ 7–9. Defendant offers no evidence whatsoever that Plaintiff's information was gathered in a manner materially different from that of other consumers who received telemarketing calls. Defendant does not identify any alternative consent pathways, any individualized disclosures unique to Plaintiff, or any basis to conclude that other class members' information was collected differently. To the contrary, Defendant's motion and declaration describe a single marketing process governed by uniform disclosures, uniform systems, and uniform recordkeeping practices. See ECF No. 20 at *3–4; ECF No. 20-1 ¶¶ 7–14. Where a

defendant relies on a standardized lead-generation and consent process, the validity, scope, and application of that process is necessarily common proof.

As another federal court held earlier this year while rejecting bifurcated discovery in a TCPA class action:

> Because individual and class discovery overlaps, the difficulty of drawing the line between the two is likely to cause further discovery disputes and place greater demands on the Court's time. This result also implicates the third factor, judicial economy, and weighs against bifurcation.

*Nock v. PalmCo Admin., LLC*, No. 24-CV-00662-RDB, 2025 WL 100894, at *3 (D. Md. Jan. 15, 2025). Likewise, while rejecting a substantially similar bifurcation request from a TCPA class action another court wrote:

> As to class certification under Rule 23, the Supreme Court has instructed that "certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351, 131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).
>
> And "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (cleaned up).
>
> Considering *Dukes* and the "rigorous analysis" requirement for class certification, district courts have been reluctant to bifurcate class-related discovery from discovery on the merits. *See Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 U.S. Dist. LEXIS 2286, 2018 WL 501413 (C.D. Cal. Jan. 5, 2018) (declining to bifurcate discovery in TCPA case and stating that "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) (collecting cases).
>
> In another TCPA case, *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393 (D.S.C. Feb. 24, 2021), the Court found that bifurcation would not serve the interests of judicial economy given the plaintiff's "persuasive argument that the evidence needed to determine whether [they] have a claim substantially overlaps with [their]

10

> ability to represent a class under [Rule] 23." *Cardenas*, 2021 U.S. Dist. LEXIS 34923, 2021 WL 733393, at *3.
>
> Similarly, here, the undersigned already found that Folsom "may not avoid appropriate classwide discovery that is — as Bond persuasively argues — necessary for a future class certification motion." Dkt. No. 28. And, so, the Court agrees with Bond that bifurcation would not promote efficiency because there is considerable overlap between discovery relevant to the merits of his individual claims and issues of class certification. *Accord True Health Chiropractic, Inc. v. McKesson Corp.*, 2015 WL 273188, *2-3 (N.D. Cal. 2015) (declining to bifurcate a TCPA class action and noting that individual and class discovery claims typically overlap).
>
> And, in light of the bulk of authority discussing the lack of a "bright line" distinction between merits and class discovery, bifurcation could lead to avoidable, future disputes over whether a particular discovery request relates to the merits or to class certification. *See Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327-28 (N.D. Ill. 2017); *see also City of Pontiac General Employees' Retirement System v. Wal-Mart Stores, Inc.*, 2015 U.S. Dist. LEXIS 79392, 2015 WL 11120408, *1-2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); *True* Health, 2015 U.S. Dist. LEXIS 7015, 2015 WL 273188, at *3 (finding that bifurcation "raise[s] a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two.").
>
> And, so, considering the binding law from *Dukes* and persuasive authority from other district courts, the Court declines to bifurcate discovery in this case.

*Bond v. Folsom Ins. Agency LLC*, No. 3:24-CV-2551-L-BN, 2025 WL 863469, at *2-3 (N.D. Tex. Mar. 19, 2025).

### III. Bifurcation Would Prejudice Plaintiff and Absent Class Members

Bifurcation would severely prejudice Plaintiff by withholding evidence critical to his own claim. Defendant asserts that Plaintiff's number came from Inbounds.com, but refuses to produce vendor contracts, lead records, and consent data—labeling them "class discovery." Yet those very materials are necessary for Plaintiff to rebut Defendant's consent defense. Withholding them prevents Plaintiff from prosecuting his own case and from preparing for dispositive motions.

11

Delay also risks spoliation. Vendors and dialer platforms routinely purge records. Every month of delay increases the chance that call logs, consent files, and scripts will be lost. Courts recognize that staged discovery in class actions can irreparably prejudice plaintiffs. *Saleh v. Crunch, LLC*, 2018 WL 11264884, at *2 (S.D. Fla. 2018). The risk is even more acute here because Defendant's Initial Disclosures identify an overseas call-center vendor, as a party with knowledge and custody of relevant records. Overseas call centers often operate outside the scope of U.S. discovery norms, with weaker data-retention practices and less incentive to preserve evidence. If production from this entity is postponed until a later "class phase," there is a heightened risk that critical records will be deleted, overwritten, or rendered inaccessible by jurisdictional barriers. Witness availability is also more precarious—overseas contractors may be beyond the subpoena power of the Court, and turnover at such operations is frequent.

Courts in this Circuit have repeatedly recognized that prejudice resulting from delayed or denied access to discovery justifies rejecting bifurcation. In *Estate of Lokken*, the court refused to bifurcate because it would cause duplication, invite disputes, and prejudice plaintiffs by requiring them to litigate discovery twice. 2025 WL 2607196, at *6–8. In *Negrete v. Florida Insurance Services, Inc.*, Magistrate Judge Stephen B. Jackson, Jr. held that a belated, defendant-favorable bifurcation motion was "unjust and prejudicial," particularly where it would delay classwide discovery that overlapped with individual claims. 2024 WL 470370, at *6–7. The prejudice here is even starker given the involvement of an overseas call-center vendor whose records may be irretrievably lost if discovery is delayed.

Absent class members are also prejudiced. They rely on Plaintiff to preserve and marshal common proof of Defendant's telemarketing practices. If records from overseas vendors

12

disappear while discovery is artificially limited, their claims vanish entirely. Rule 23 was designed to avoid exactly that result.

The delay from segmented discovery periods would in fact prejudice Plaintiff and other class members by amplifying the risk that evidence will be lost or destroyed. *See, e.g.*, *Saleh v. Crunch, Ltd. Liab. Co.*, No. 17-62416-Civ-COOKE/HUNT, 2018 U.S. Dist. LEXIS 36764, at *4-5 (S.D. Fla. Feb. 28, 2018) ("a stay would prolong this matter on the Court's docket and could conceivably prejudice Plaintiff by the fading memory of any witnesses"); *Lathrop v. Uber Techs., Inc.*, No. 14-CV-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016) (plaintiffs in putative class action may "suffer prejudice from a stay because the case would extend for an indeterminate length of time, increase the difficulty of reaching class members, and increase the risk that evidence will dissipate"). The risk to the putative class members' interests is not merely hypothetical. Multiple decisions in TCPA class action cases have turned on the destruction of records necessary to identify class members. *See, e.g.*, *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) (denying class certification in a TCPA case because "critical information regarding the identity of those who received the facsimile transmissions" was not available); *Pasco v. Protus IP Solutions, Inc.*, 826 F. Supp. 2d 825, 831 (D. Md. 2011) (granting the defendant summary judgment for the substantially the same reason). As such, courts regularly permit plaintiffs to commence discovery prior to a Fed. R. Civ. P. 26(f) conference related to these issues implicating non-parties in TCPA cases. *See, e.g.*, *Cooley v. Freedom Forever LLC et. al.*, No. 2:19-cv-562, ECF No. 37 (D. Nev. July 19, 2019); *Cooley v. First Data Merchant Services, LLC et. al.*, No. 19-cv-1185, ECF No. 32 (N.D. Ga. July 8, 2019); *Abante Rooter and Plumbing, Inc. v. Birch Commc'ns, Inc.* No. 15-cv-03562, Dkt. No. 32 (N.D. Ga. 2016); *Mey v. Interstate National Dealer Services, Inc., et al.*, No. 14-cv-01846, Dkt. No. 23 (N.D. Ga. Aug. 19, 2014).

13

Plaintiff will also be prejudiced by a stay because, "with the passage of time, the memories of the parties and other witnesses may fade, witnesses may relocate or become unavailable, or documents may become lost or inadvertently destroyed." *Sanaah v. Howell*, 2009 No. 08-cv-02117-REB-KLM, U.S. Dist. LEXIS 35260, *2 (D. Colo. Apr. 9, 2009).

Defendant's privacy concerns do not justify bifurcation. If Defendant seeks protections for nonparty information, the appropriate tools is a protective order (which the Plaintiff would agree to). Bifurcation is not necessary to address privacy, and it is not proportional to use bifurcation to block production of the key datasets needed to evaluate liability and class certification.

Similarly, Defendant's burden argument is conclusory. Defendant must support proportionality objections with specific facts about what data exists, where it is maintained, what effort extraction requires, and why narrower alternatives would not work. Defendant's proposal instead asks the Court to accept a general assertion of burden while delaying production of the very records that will determine the scope and merits of the claims. Indeed, the Eighth Circuit requires specificity when claiming undue burden. *Larson v. Burlington N. & Santa Fe Ry. Co.*, 210 F.R.D. 663, 664–66 (D. Minn. 2002), considered an affidavit estimating 720 days and $1.29 million when discussing complying with class discovery. Even then, the court preserved class discovery to expedite resolution. By contrast, Defendant here provides no such data, and no substantiation. Courts have rejected such bare assertions. *Konkol v. Educ. Comput. Sys.*, 2016 WL 6476932, at *12 (D. Minn. Oct. 25, 2016). *Negrete* confirms that efficiency and burden arguments must be more than rhetoric. Judge Jackson rejected the defendant's proposal precisely because it was unsupported and designed to delay and prejudice, not to conserve resources. 2024 WL 470370, at *6–7.

By contrast, Defendant will not be prejudiced if Plaintiff is permitted to proceed with discovery in the ordinary course. As another federal court explained in denying a motion to stay discovery in a TCPA case:

> In addition, [defendant] has not demonstrated irreparable injury; it notes only that it is potentially on the hook for substantial damages, given the putative nationwide class. Monetary damages, of course, do not by themselves constitute irreparable injury. [plaintiff], on the other hand, persuasively argues that she would be injured by a stay, particularly because discovery has yet to commence, and evidence is at risk of being lost. This injury, which is both likely and irreparable, far outweighs the injury posed by a potential future judgment for money damages.
>
> \* \* \*
>
> In the meantime, it is clear that critical evidence, including records from any third parties that [defendant] may have contracted with for its telephone marketing, may be lost or destroyed.

*Simon v. Ultimate Fitness Grp., LLC*, No. 19-cv-890, 2019 U.S. Dist. LEXIS 147676, at *18, 21-22 (S.D.N.Y. Aug. 19, 2019).

## Conclusion

Defendant's motion to bifurcate discovery is untimely, prejudicial, and procedurally improper. The motion appears designed solely to avoid producing discovery that is already the subject of a pending dispute and that is central to Plaintiff's claims.

Discovery should proceed in the ordinary course under the Court's Scheduling Order. Defendant should not be permitted to use bifurcation as a litigation tactic to delay, obstruct, or limit discovery after discovery has already begun. For these reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to bifurcate discovery.

RESPECTFULLY SUBMITTED AND DATED this 30th day of January, 2026.

*s/ Anthony I. Paronich*
Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com