IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

CASE NO.: 4:25-cv-00607-BCW

JEFFERY BLUBAUGH, individually and
on behalf of a class of all persons and entities
similarly situated,

        Plaintiff,

vs.

HEALTHCARE SOLUTIONS INSURANCY
AGENCY LLC,

        Defendant.

_____/

## DEFENDANT HEALTHCARE SOLUTIONS INSURANCY AGENCY LLC'S SUGGESTIONS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Healthcare Solutions Insurancy Agency LLC ("Healthcare Solutions") moves for summary judgment because the undisputed business records establish that Plaintiff's identifying information and telephone number were submitted through an online process that expressly authorized Healthcare Solutions to contact him regarding Medicare plans, including if his number appeared on the National Do-Not-Call Registry. Healthcare Solutions called only because its contemporaneous records reflected that consent.

If Plaintiff submitted the information, his written permission defeats his claim under 47 C.F.R. § 64.1200(c)(2)(ii). If he denies submitting it, Healthcare Solutions made the calls in error based upon a detailed consent record generated through a process designed to transmit only leads bearing consent. Under the reasoning adopted in *Johansen v. Efinancial LLC*, 2022 U.S. Dist. LEXIS 8798, 2022 WL 168170 (W.D. Wash. Jan. 18, 2022), Healthcare Solutions is alternatively

entitled to the TCPA's safe-harbor protection.

## I. STATEMENT OF UNCONTROVERTED MATERIAL FACTS

1. Healthcare Solutions assists consumers with evaluating and enrolling in Medicare-related insurance products. Declaration of Jordan Vickers ("Vickers Decl.") ¶ 4.

2. Healthcare Solutions obtains consumer leads through online processes that are the same as or materially similar to the process described in Vickers's declaration. Before information is transmitted to Healthcare Solutions for calling, the consumer is presented with consent language identifying Healthcare Solutions and must affirmatively agree to be contacted at the telephone number provided, including when the number appears on the National Do-Not-Call Registry. *Id.* ¶ 7.

3. Healthcare Solutions maintains electronic lead records in its Azure SQL production environment. Those records are created at or near the time of submission, maintained in the ordinary course of Healthcare Solutions' regularly conducted business, and regularly relied upon in conducting its business. *Id.* ¶ 8.

4. Healthcare Solutions' Azure SQL export reflects that, on September 10, 2024 at 12:19:31, a person using the ScoredIt path submitted Plaintiff's name, telephone number ending in 2682, email address, date of birth, residential address in Independence, Missouri, and interest in Medicare Advantage products. *Id.* ¶¶ 10–11 & Ex. A.

5. The record identifies the marketing platform as Zeeto, publisher as Tibrio, property as ScoredIt, and placement as "Scored It - Primary Placement." It further identifies the campaign as "MedAdv - COMPLIANCE APPROVED O65" and the ad set as "Image - Compliance - 13." Id. ¶ 12 & Ex. A.

6. The Azure SQL export was generated from data maintained in Healthcare Solutions'

production database. The underlying data was captured and maintained in the ordinary course of Healthcare Solutions' business and was not created or reconstructed for this litigation. *Id*. ¶ 13.

7. Based upon Healthcare Solutions' records, Creative ID B10242316 and its accompanying consent disclosure were associated with Plaintiff's submission. *Id*. ¶ 14 & Ex. B.

8. The disclosure expressly named Healthcare Solutions and stated that, by submitting the consumer's name and contact information, the consumer was electronically signing and expressly consenting to receive calls, text messages, and emails at the telephone number provided from a licensed insurance agent from Healthcare Solutions or its identified marketing partners about Medicare plans. *Id*. ¶ 15 & Ex. B.

9. The disclosure further stated that calls or texts could use an autodialer or prerecorded message, including if the number appeared on the National Do-Not-Call Registry; that consent was not a condition of enrollment; and that consent could be revoked at any time. *Id*.

10. The consent disclosure incorporated the telephone number supplied during the session. The number associated with Plaintiff's record was Plaintiff's telephone number ending in 2682. *Id*. ¶ 16 & Ex. B.

11. A lead record would not have been transmitted to Healthcare Solutions unless the consumer affirmatively selected the Healthcare Solutions offer and submitted the information and consent associated with it. This required checking the consent checkbox on the initial ScoredIt consent screen and separately clicking "Yes" in response to the Healthcare Solutions offer and accompanying disclosure. *Id*. ¶ 17.

12. Healthcare Solutions did not purchase Plaintiff's information from an unrelated third-party

3

calling list. The information was transmitted through the Zeeto/ScoredIt path with the Healthcare Solutions creative and consent information preserved in the contemporaneous opt-in record. *Id*. ¶ 18.

13. Healthcare Solutions uses Convoso for outbound calling and related call records and maintains and relies upon those records in its regularly conducted business. Declaration of Brad Morgan ("Morgan Decl.") ¶ 4.

14. Healthcare Solutions' outbound operation was designed to call only telephone numbers associated with consumer-submitted leads bearing consent. It did not intentionally place unsolicited telemarketing calls to numbers for which it lacked a consent record. *Id*. ¶ 10.

15. The complete Convoso export contains ten call records concerning Plaintiff's number between July 3 and July 8, 2025, and between 9:08 a.m. and 5:41 p.m. in Plaintiff's local time. *Id*. ¶¶ 6–7 & Ex. A.

16. Eight outbound records reflect twelve-second answering-machine detections without agent involvement and without a voicemail or message drop. One outbound call on July 8, 2025 connected for approximately 95 seconds and was transferred to licensed agent Anthony Carbone, resulting in an approximately 255-second inbound conversation. *Id*. ¶ 8.

17. During July 2025, Healthcare Solutions maintained an internal do-not-call list within Convoso, including a "Do NOT Call" disposition that agents could select when a consumer requested that calls stop or otherwise indicated that the consumer did not want further contact. *Id*. ¶ 11.

18. Agents and fronters were trained to recognize do-not-call requests and to select the "Do NOT Call" disposition immediately. When in doubt, personnel were trained to treat a statement as a do-not-call request. *Id*. ¶ 12.

19. Selecting the disposition placed the number on Healthcare Solutions' internal do-not-call list, suppressed further outbound calls and texts to that number, and retained the designation indefinitely. *Id*. ¶ 13.

20. The training slide attached to Morgan's declaration accurately reflects the content of the Do-Not-Call training program and procedures provided when Plaintiff was called. *Id*. ¶ 14 & Ex. B.

21. Healthcare Solutions' records reflect that Plaintiff's number was designated do-not-call on July 13, 2025. No call, text, or other contact was made to Plaintiff's number afterward. *Id*. ¶ 15.

22. Healthcare Solutions' internal do-not-call list presently contains more than 2.7 million records. The list and associated controls existed before this lawsuit and were used in Healthcare Solutions' routine business operations. *Id*. ¶ 16.

23. During the relevant period, agents and fronters received in-person training regarding the internal do-not-call process at onboarding and through ongoing reinforcement. *Id*. ¶ 17.

## II. LEGAL STANDARD

Summary judgment is required when the movant shows that there is no genuine dispute concerning any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party asserting that a fact is undisputed may support that assertion with declarations and other admissible record materials. Fed. R. Civ. P. 56(c)(1).

## III. ARGUMENT

A. Plaintiff's prior express written permission defeats his claim.

The regulation upon which Plaintiff relies generally prohibits telephone solicitations to a residential subscriber whose number appears on the National Do-Not-Call Registry. 47 C.F.R. §

64.1200(c)(2). The prohibition does not apply, however, when the seller "has obtained the subscriber's prior express invitation or permission," evidenced by a signed written agreement stating that the consumer agrees to be contacted by the seller and including the telephone number to be called. 47 C.F.R. § 64.1200(c)(2)(ii).

An electronic submission can satisfy this requirement. In *Johansen*, the court explained that the FCC has determined that the signed-written-agreement requirement may be fulfilled through submission of a website form and that prior express permission may be provided by submitting personal information through a form containing notice that the person agrees to be contacted. *Johansen v. Efinancial LLC*, 2021 U.S. Dist. LEXIS 251092, at *21–22, 2021 WL 7161969 (W.D. Wash. June 11, 2021), report and recommendation adopted, 2022 U.S. Dist. LEXIS 8798, 2022 WL 168170 (W.D. Wash. Jan. 18, 2022).

The record here is direct and individualized. Healthcare Solutions' contemporaneous database contains Plaintiff's name, telephone number, email address, birth date, residential address, and Medicare Advantage interest. Vickers Decl. ¶ 11 & Ex. A. The associated disclosure named Healthcare Solutions, incorporated Plaintiff's telephone number, expressly authorized calls concerning Medicare plans, covered calls using an autodialer or prerecorded message, and applied even if the number appeared on the National Do-Not-Call Registry. *Id*. ¶¶ 14–16 & Ex. B. The information would not have been transmitted unless the consumer checked the initial consent box and separately selected "Yes" in response to the Healthcare Solutions offer. *Id*. ¶ 17.

The regulation requires prior express written permission, not a prior purchase or customer relationship. The electronic record establishes that permission. Because the challenged calls were authorized under § 64.1200(c)(2)(ii), Plaintiff cannot establish a violation.

B. A bare denial of submission does not overcome the contemporaneous consent evidence.

*Johansen* is closely analogous. There, the defendant received the plaintiff's name and telephone number through an online submission containing consent to be contacted. 2021 U.S. Dist. LEXIS 251092, at *21–22. Although the plaintiff denied submitting the form and speculated that someone else had done so, the court found the defendant's submission record and the surrounding evidence sufficient for summary judgment. *Id*. at *24–28. The district court adopted that recommendation and granted summary judgment. *Johansen*, 2022 U.S. Dist. LEXIS 8798, at *14–15.

Healthcare Solutions possesses more than a bare telephone number. Its contemporaneous record contains multiple items of Plaintiff's personal information and identifies the precise marketing platform, publisher, property, placement, campaign, advertisement, and consent disclosure associated with the submission. Vickers Decl. ¶¶ 10–17 & Exs. A–B. Nothing in the present record identified by Plaintiff negates that contemporaneous evidence.

The recent decision in *Elzen v. American Home Shield Corp.* likewise granted summary judgment where the defendant presented evidence that an online form containing the plaintiff's contact information and consent had been submitted, notwithstanding the plaintiff's denial. 2026 U.S. Dist. LEXIS 87347, at *21–28, 2026 WL 1078771 (E.D. Wis. Apr. 21, 2026). The same result is warranted here.

C. Alternatively, Healthcare Solutions' consent-based procedures satisfy the reasoning of *Johansen*'s safe-harbor analysis.

The TCPA provides an affirmative defense where a defendant "has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations." 47 U.S.C. § 227(c)(5). The implementing regulation protects a caller that demonstrates that a violation resulted from error and that its routine business

practices meet the regulation's compliance standards. 47 C.F.R. § 64.1200(c)(2)(i).

*Johansen* held that a caller's reasonable reliance upon a consent submission could satisfy the error requirement. The court reasoned that the defendant had not assumed consent without reason; its internal processes ensured that it would not receive a consumer's information unless consent was first provided. 2021 U.S. Dist. LEXIS 251092, at \*31–32. Thus, if the plaintiff had not submitted the form "despite all evidence to the contrary," the resulting calls were made in error. *Id*. at \*32.

*Johansen* also accepted substantial compliance where the defendant called only consumers who provided consent, trained personnel on do-not-call procedures, and maintained an internal do-not-call list. *Id*. at \*34–35. The district court adopted the recommendation and entered summary judgment. *Johansen*, 2022 U.S. Dist. LEXIS 8798, at \*14–15.

Healthcare Solutions' evidence tracks that reasoning. Its system was designed to call only consumer-submitted numbers supported by consent records. Morgan Decl. ¶ 10. It maintained an internal do-not-call list, trained its personnel concerning do-not-call requests, immediately suppressed numbers upon such a request, and retained those designations indefinitely. *Id*. ¶¶ 11–17. Its internal list presently contains more than 2.7 million records. *Id*. ¶ 16. When Plaintiff's number was designated do-not-call, all contact ceased. *Id*. ¶ 15.

Accordingly, if Plaintiff submitted the online form, the calls were authorized. If he did not, Healthcare Solutions called only because its contemporaneous records reflected an affirmative consent submission containing Plaintiff's detailed personal information. Under Johansen, any otherwise actionable call resulted from error within a consent-based compliance system.

*Klassen v. Advanced Marketing & Processing, Inc.* is consistent. There, the defendant received a validated lead containing the plaintiff's personal information and purported consent.

The court held that, even if the plaintiff did not submit the consent, the defendant called under the mistaken belief that consent had been provided and therefore satisfied the safe harbor's error requirement. 2023 U.S. Dist. LEXIS 241367, at *13–16, 2023 WL 12167551 (M.D. Fla. Mar. 1, 2023).

IV. CONCLUSION

The undisputed evidence establishes that Healthcare Solutions received Plaintiff's detailed information through an online process requiring express written permission to contact him, including if his telephone number appeared on the National Do-Not-Call Registry. Healthcare Solutions called in reliance upon that contemporaneous record and ceased all contact after the number was designated do-not-call. Healthcare Solutions therefore requests that the Court grant summary judgment in its favor on Plaintiff's individual claim.

Dated July 20, 2026.

> HEALTHCARE SOLUTIONS
> INSURANCY AGENCY LLC,
> Defendant
>
> By: /s/ *James A. Peterson*
> James A. Peterson, Esq.
> (admitted pro hac vice)
> PETERSON LEGAL P.A.
> 5079 North Dixie Highway, Suite 105
> Oakland Park, Florida 33334
> Telephone: (754) 444-8076
> James@PetersonLegal.com
>
> and
>
> Nimrod T. Chapel, Jr., MO 46875
> Chapel Law Group LLC
> 311 W Dunklin
> Jefferson City, MO 65101
> Phone 573-303-0405
> Email: nimrod@chapellaw.com

9

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2026, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to the following attorneys registered with the CM/ECF system:

Maxwell Cory Nelson
MCN Law LLC
8600 W. 110th Street
Suite 214
Overland Park, KS 66210
913-358-5800
E-Mail: mcorynelson@mcnlawllc.com

Anthony Paronich, Esq.
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA  02043
E-Mail: anthony@paronichlaw.com

*/s/ James A. Peterson*
James A. Peterson, Esq.

10