# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CASE NO.: 25-cv-607-BCW

JEFFERY BLUBAUGH, INDIVIDUALLY AND
ON BEHALF OF A CLASS OF ALL PERSONS
AND ENTITIES SIMILARLY SITUATED,
Plaintiff,
V.
HEALTHCARE SOLUTIONS INSURANCE
AGENCY LLC,
Defendant.
________________________________/

- - -

VIDEOCONFERENCE DEPOSITION OF
JORDAN VICKERS
MONDAY, AUGUST 24, 2026
10:56 a.m. - 1:15 p.m.

- - -

Reported by:
Amanda Fulks, Court Reporter
Notary Public, State of Florida


MAGNA LEGAL SERVICES

APPEARANCES:
(Via Zoom)

On behalf of the Plaintiff:
PARONICH LAW, P.C
BY: ALEX JILIZIAN, ESQUIRE
350 LINCOLN ST
SUITE 2400
HINGHAM, MA 02043
(617) 485-0018
alex@paronichlaw.com

On behalf of the Defendant:
PETERSON LAW GROUP
BY: JAMES PETERSON, ESQUIRE
2650 N DIXIE FWY
NEW SMYRNA BEACH, FL 32168
(386) 428-2464
james@petersonlegal.com

ALSO PRESENT:
MATT CENTI, OBSERVING
NIMROD CHAPEL, JR., OBSERVING
JACOB WORRELL, ADDITIONAL WITNESS
BRAD MORGAN, ADDITIONAL WITNESS



\- - -

INDEX

\- - -


| Testimony of: JORDAN VICKERS | PAGE |
|---|---|
| BY MR. JILIZIAN | 04 |
| BY MR. PETERSON | 66 |


\- - -

EXHIBITS

\- - -


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit-3 | Email | 06 |
| Exhibit-4 | Bates numbers 14 and 15 | 07 |
| Exhibit-5 | Bates numbered 0038 | 24 |
| Exhibit-6 | Supplemental Responses | 30 |
| Exhibit-7 | Motion for Summary Judgment | 41 |
| Exhibit-8 | Declaration | 42 |
| Exhibit-9 | Interrogatories | 43 |
| Exhibit-10 | Call Records | 57 |




(P R O C E E D I N G S:)
THE REPORTER: Time is 10:56 a.m. We are now on the record.
MR. JILIZIAN: All right. Thank you, Madam Court Reporter.
THE REPORTER: I'm sorry, Mr. Vickers, do you have your ID? Perfect. Thank you. I will now swear in the witness.
Mr. Vickers, can you please raise your right hand?
JORDAN VICKERS, after having been duly sworn, was examined and testified as follows:
THE WITNESS: I do.
THE REPORTER: Thank you.
Counsel, you may proceed.

\- - -

EXAMINATION

\- - -

BY MR. JILIZIAN:
Q. Good morning. Could you please state your full name for the record and spell it?
A. Jordon Vickers, J -- J-O-R-D-A-N, V, as in Victor, I-C-K-E-R-S.
Q. Good morning, Mr. Vickers. Today -- so in reviewing for your deposition today, did you review the



31 topics listed in your deposition subpoena?
A. I reviewed the topics pertaining to marketing and lead generation.
Q. Okay. I'm going to share with you right now my screen here. Okay. Do you see the screen here, Mr. Vickers?
A. Yes.
Q. Okay. Do you recognize this document here?
A. Yes.
Q. Could you identify it?
A. I believe it's a deposition notice.
Q. Okay. This document has already been introduced here as Exhibit-A, or sorry, Exhibit-1. I'm sorry, that you've identified here as your -- as the 30(b)(6) deposition subpoena. I'm going to scroll down here to page 3. Before -- sorry, excuse me. We can strike that off.
I'm now going to share another document with you before we look back at this. Okay. Mr. Vickers, do you see this document in front of you?
A. Yes.
Q. Okay. If I represented to you that this was an email just sent shortly ago during the deposition -- during Mr. Morgan's testimony, by Mr. Peterson, your counsel, would you have any reason to dispute that?



Case 4:25-cv-00607-BCW Document 50-4 Filed 09/18/26 Page 3 of 46

MAGNA LEGAL SERVICES

Page 6

A. No.
Q. Okay. Do you see the time stamp here Monday, August 24, 2026, at 7:14 a.m., which is roughly about 45 minutes ago?
A. I do.
Q. Okay. And so do you see, in the context of this email, your attorney appears to identify the topics to which you are prepared to testify about; is that correct?
A. Yes.
Q. And what topics here, do you see that your attorney has -- sorry -- indicated that you were designated to testify on?
A. Well, 14 to 16, and any topics related to lead generation, marketing consent, lead records.
MR. JILIZIAN: Okay. So I'm going to now -- sorry, I'm going to now take us back to Exhibit-1. And sorry, we can go ahead and mark that last exhibit, the email, as Exhibit-3.
- - -
(Exhibit-3, Email, was marked for identification.)
- - -
BY MR. JILIZIAN:
Q. Okay. And -- okay. Do you see my screen here

Page 7

with Exhibit-1?
A. I do.
MR. PETERSON: Alex, actually, sorry to interrupt. Before you start, can we also put that clearer screenshot that we worked off of as an exhibit?
MR. JILIZIAN: Yes, we can. I will -- we can go ahead, I guess, because now it's a little bit out of order, but I guess we can just -- the clearer screenshots of Bates numbers 14 and 15, we could include as Exhibit-4.
- - -
(Exhibit-4, Bates numbers 14 and 15, was marked for identification.)
- - -
MR. PETERSON: Okay. Thank you.
MR. JILIZIAN: Thank you.
BY MR. JILIZIAN:
Q. Okay. I'm going to scroll down in this document here to page 6. Do you see topic 12 listed here?
A. I do.
Q. And so sitting here today, are you prepared to testify on your company -- or on Healthcare Solutions's creation, modification, use, architecture, functionality

Page 8

of all databases, and then, which include all of the following subtopics?
A. No. This actually seems like a topic for Brad when it comes to databases and technology, functionality, architecture. That might have been a mistake.
Q. Okay. So sitting here today, you're not prepared to testify on topic 12?
A. I am not.
Q. Okay.
MR. PETERSON: Yeah, Alex, I saw that, and then I think maybe I had a wrong note in my system. I'm trying to verify now.
MR. JILIZIAN: Okay. I'll go through the rest of these, and then if you want to edit something or clean something up, we can go off the record and you could perhaps send me a new email that we can enter into evidence.
MR. PETERSON: Oh, sorry, Alex. I think I just saw what happened. That wasn't the topic, that was a definition.
MR. JILIZIAN: I see. I see now you were looking at definitions.
MR. PETERSON: I think you were too, right?
MR. JILIZIAN: I see now. I was looking at definitions. That is the definition. Sorry, that

Page 9

was a mistake on my part. Totally not a problem. I'm sorry about that, Mr. Vickers. Yeah, that was a silly mistake on my part. Okay. Sorry, we can -- we're on the record here.
MR. PETERSON: Okay. So I think this is more accurate, yeah.
MR. JILIZIAN: Yeah, this is. Sorry. Okay. We'll start that over here.
BY MR. JILIZIAN:
Q. Okay. So, Mr. Vickers, I apologize. I had shown you definition number 12. That was not deposition topic number 12 here. Right now in front of you, I have deposition topic number 12. Do you see here, where it starts with the factual basis for Healthcare Solutions statements regarding --
A. I see 7 through 11 on my screen.
Q. Sorry. Here, do you now see 12? I could make it a bit bigger if we need.
A. And maybe it's my screen. Yes, I see it now.
Q. Okay. So topic number 12 covers the factual basis for Healthcare Solutions's statements regarding consent and its supplemental discovery responses, including documents or information the company contends reflect consent for any of the individuals or numbers identified. And there's some other language in there,


MAGNA LEGAL SERVICES

but it basically speaks to consent. So are you prepared to testify on the topic of consent in this matter?
A. Yes.
Q. Okay. And then the next were 14 to 16, which you were identified. So these, again, you can just review these on your own, 14, 15, and 16, and tell me yes or no if you are prepared to testify on these subjects.
A. Yes.
Q. Okay. And then, sorry, we're going to backtrack here because, if you notice it, in the email and Exhibit-3 -- I'm sorry, I don't have it in front of you right now. But your counsel had indicated that you would be testifying not on the entirety of these topics, but just the lead generation, marketing vendor consent, and lead record aspects of the following topics that I'm about to show you. So the first are 8 through 10 here.
So are you just -- and go ahead if you need to read these topics for a second. Go ahead. But are you prepared to testify on the lead generation, marketing vendor consent, and lead record aspects of numbers 8 through 10?
A. Yes.
Q. And scrolling down to 25, the same, lead generation, marketing vendor consent, and lead record aspects, are you prepared to talk about those aspects of



number 25?
A. 25C is more of an architectural and, I guess, a database CRM platform question. Are you -- is there lead and marketing definitions within 25?
Q. I'm just asking if you are prepared to speak to the lead -- to testify to the lead generation, marketing vendor consent, and lead record aspects of that topic. So if it were to fall outside of lead generation or marketing and --
A. Marketing and lead generation, correct. Lead records would fall under the actual record and how it's displaced. But yes, marketing and lead generation.
Q. Okay. But you're not prepared to testify here on the actual maintaining of record -- lead record databases.
A. I am not.
Q. Okay. And then, so same -- so the -- okay. I'm going to use the same language, but your attorney had said the lead generation, marketing vendor consent, and lead record aspects of topics 30 and 31, the final topics. So are you prepared to speak to those aspects of topics 30 and 31 today?
A. Yes.
Q. Okay.
MR. PETERSON: Alex, if I could maybe just



clarify for the record because I certainly want to be transparent. Perhaps my email was a little bit vague as to lead records.
MR. JILIZIAN: Sure.
MR. PETERSON: Certainly anything with the tech side of that, with like databases, how the information is stored, that's definitely Brad. How those are obtained, like from a marketing standpoint, that would be Mr. Vickers.
MR. JILIZIAN: Got it. Okay.
MR. PETERSON: So is that fair to say?
MR. JILIZIAN: Yeah.
THE WITNESS: Yes, correct.
MR. JILIZIAN: Okay. Thank you.
BY MR. JILIZIAN:
Q. And sorry, so before we move on, so Mr. Vickers, did you review documents today in preparation for your deposition testimony?
A. Yes.
Q. And without necessarily revealing the contents of those conversations, did you prepare at all with legal counsel today for your deposition?
A. Yes.
Q. Okay. And you are not testifying in individual capacity today; is that correct?



A. Yeah.
Q. If you need me to explain, you are testifying as a corporate representative of Healthcare Solutions, correct, rather than in your individual capacity as Jordan Vickers?
A. Yes, correct.
Q. Okay. And so if you do not know the answer to a question, does that mean that Healthcare Solutions necessarily doesn't know the answer?
A. No.
MR. PETERSON: Object to form.
BY MR. JILIZIAN:
Q. And also, we had said this with the last witness, but whenever I -- can you agree that whenever I say Healthcare Solutions, that refers to Healthcare Solutions Insurance Agency, LLC, which is the defendant in this case?
A. Correct.
Q. Okay. So your understanding of the consent record in this case is based on the Scoredit record; is that correct?
A. Correct.
Q. Okay. And that record was created by a third party; is that right? Scoredit, which is a -- sorry, I'll strike that. I'll rephrase.


MAGNA LEGAL SERVICES

That record was created by third party, Scoredit; is that correct?
MR. PETERSON: Object to form.
THE WITNESS: Can you clarify created?
BY MR. JILIZIAN:
Q. Yeah. So the -- that record, the consent record or the consent of function, I guess, is procured by Scoredit, which is a third party, correct?
A. Scoredit is an entity owned by Zeeto.
Q. Okay.
A. But yes.
Q. But Scoredit -- in relation to Healthcare Solutions, Scoredit is technically an unaffiliated entity, right, is a third party?
A. Correct.
MR. PETERSON: Object to form.
BY MR. JILIZIAN:
Q. Okay. Your company does not control the Scoredit website, correct?
A. We didn't.
Q. Okay. I'm going to introduce to you -- I'm going to share my screen here and, sorry, excuse me for a second. This is going to be an earlier introduced exhibit, which was Exhibit-2. And then we also, for a couple of the pages, your counsel had provided a clearer



version which we had previously introduced as Exhibit-4 just for a couple of these pages. Let me just share here. Okay. Do you see the screen share in front of you here?
A. Yes.
Q. And so, again, this was the document labeled as Exhibit-2, which your counsel produced to us in response to discovery requests, as Bates numbered as Healthcare Solutions 0009 to 0021. Do you have any reason to dispute that?
A. No.
Q. Okay. Can you just -- looking at this document here without me scrolling through it any further, are you familiar with this document?
A. Yes.
Q. Did you review it in preparation for your deposition today?
A. Yes.
Q. Can you identify what the document appears to be?
A. This was created to give opposing counsel an understanding of what the consumer journey would have looked like in 2024.
Q. Okay. I understand. Thank you for providing the reason which this was produced. But can you identify



for me just the actual nature of the document, what -- like if you were to just explain to me what this document is in the normal course of business, not necessarily in litigation, could you identify what this is?
A. This is the consumer's path.
Q. Okay. And does Healthcare Solutions contend that this document provides a basis or at least a partial basis for a consent defense?
MR. PETERSON: Object to form.
THE WITNESS: Again, this is what was provided to show what the consumer might have saw in 2024, but this is not exactly what the consumer saw.
BY MR. JILIZIAN:
Q. Okay. Okay. I'm just going to scroll through the pages. So it appears, when we go through to Healthcare Solutions 10 page, you see that it asked for the customer to provide a ZIP code; is that correct?
A. Correct.
Q. And this -- sorry, just scrolling back here to page 9. This appears to be for some type of a free laundry detergent giveaway. Does that seem accurate?
A. On this example, correct.
Q. Okay.
A. But again, this is not what would have been shown to the consumer.



Q. Okay. You see here on page 11, they're asked to give a first and last name; is that correct?
A. Correct.
Q. And then you see here -- on page 12, you see, and then it asks for the consumer's email?
A. Correct.
Q. Okay. And then page 13, it asks for birthday and gender, correct?
A. Correct.
Q. All right. Page 14 here -- I'm going to, again, stop sharing. This was the part that your counsel provided a clearer image, which we had marked as Exhibit-4. So here, I'm going to share my screen.
So this, it does -- this page doesn't have the Bates numbering on it, but I'll represent to you that this is the page that we were about to look at, Bates 0014 of Exhibit-2. Do you have any reason to dispute that that's accurate?
A. No.
Q. Okay. And so here, so this is right after the page with the email, and so on page 14 here, the consumer is asked to provide a phone number; is that correct?
A. Correct.
Q. Okay. And below, there appears to be some sort of agreement with a check box; is that correct?


MAGNA LEGAL SERVICES

A. Correct.
Q. And so just reading through this agreement, can you characterize this as what it appears to be?
A. This would be the TCPA opt-in disclaimer.
Q. Okay. So it's your view that this agreement here serves as an opt-in for a consumer to opt into telemarketing communications; is that correct?
MR. PETERSON: Object to form.
THE WITNESS: Correct. First -- the first one.
BY MR. JILIZIAN:
Q. What do you mean by the first one?
A. So how the path works is they would agree and opt in here and also during the path opt in to other specific offers.
Q. Okay. So in this consent itself, just looking through it, in the second line, you see that Scoredit is identified, right, as is -- do you see that?
A. Yes.
Q. And looking more specifically, and please take a second to read through the first few lines. You see that you -- the -- sorry. In the text of this agreement, it says that, "I provide my e-sign signature and express written consent to receive calls and SMS text messages from Scoredit and its marketing partners," and that the



marketing partners appear to be hyperlink blue. Is that -- do you see that?
A. Yes.
Q. Okay. And then also though, after marketing partners, it goes on to list several other business entities, correct? You see like Boundless Media, Coupon Cart Daily. Do you see that in the next couple of lines?
A. Yes.
Q. Okay. So Scoredit's marketing partners are not necessarily all listed in the text of this consent, right? The consumer would have to -- in order to see those marketing partners, they would have to click on one of these blue hyperlinks in order to view that; is that correct?
A. In comparison to the other companies that are listed here?
Q. Yeah. So my question is, a consumer would not be able to identify all of the marketing partners of Scoredit, which they are providing consent to receive telemarketing communications from. They would not be able to identify those marketing partners just by looking at the text of this box alone. They would have to go and click on one of these blue hyperlinks; is that correct?
A. To see the full list, correct.
Q. Okay. And so you had mentioned that this is a



sample, sort of consent; is that correct?
A. Yes, correct.
Q. Okay. So this is not the exact consent form necessarily that Plaintiff would have seen -- Plaintiff necessarily -- sorry -- we can strike that. I'll start over.
This is not the exact form that Plaintiff necessarily would have seen when providing their consent, because this is just a sample, correct?
A. Yes. Correct. We were not able to produce exactly what the plaintiffs saw in 2024.
Q. Okay. Do you know if it's possible that this consent -- sorry, that this agreement with the checkbox here that you're looking at right now would have included Healthcare Solutions, within the text of the box, either -- not just in 2024, but just at any point in time?
MR. PETERSON: Object to form.
THE WITNESS: And can you clarify that question for me?
BY MR. JILIZIAN:
Q. Sure. So you would identify that this is just a sample consent, correct?
A. Correct.
Q. Okay. So, at any point in time, would it have



been possible that Healthcare Solutions name would have been included in the text of this consent, not merely just hyperlinked under a marketing partner hyperlink?
A. Yes.
Q. Okay. Can you -- could you identify with specificity what time period that would have been?
A. In regards to what? Our name showing in the disclaimer?
Q. Yes. If that would have happened, yes.
A. So in order for the one-to-one or specific marketing partners to display in this disclaimer, the attributes and demographic would have to match exactly to that person's specific campaign and demographic.
Q. Okay. So could you tell me for certain that Healthcare Solutions's name ever appeared in the text box, not merely hyperlinked, but in the text of a Scoredit agreement, ever?
A. Can you -- are you referring to every time we've shown, or you're talking specifically to this case?
Q. I would -- at any time ever has Scoredit ever --
A. Yes.
Q. -- had a consent with Healthcare Solutions's name in the text box itself, not merely as -- in the hyperlink marketing partners?


MAGNA LEGAL SERVICES

A. Yes.
Q. Okay. But like you said, you -- your company was not able to identify that specific consent and produce it, right, which is why they produced this sample?
MR. PETERSON: Object to form.
THE WITNESS: From 2024, we were not.
BY MR. JILIZIAN:
Q. Okay. Thank you. I'm also going to go to the next page here. So this -- again, this is Exhibit-4 technically because it's the reproduced version and doesn't have Bates numbers listed on it, but I can represent to you that your counsel sent me this shortly ago as a clearer version of the page Bates number 0015. Do you have any reason to dispute that?
A. No.
Q. And sorry, I'll try -- this is acting very weird. But again, so I'll ask, is this -- this is just a sample consent, correct, not the actual consent that plaintiff would have seen?
A. Correct.
Q. Okay. And within this consent, it doesn't involve -- it doesn't list Healthcare Solutions within the text of the consent box, correct, or of the agreement, correct?



A. In this sample, it doesn't.
Q. Okay. Do you know that -- for any of the agreements here, which you had said served as TCPA consents, do the checkboxes auto-populate or does the user have to manually check the box themselves?
A. They have to manually check it.
Q. Okay. So can you verify from the Scoredit agreement itself, that Plaintiff personally typed their information into the agreement, rather than someone else submitting it on their behalf or some other way that the information got there?
MR. PETERSON: Object to form.
THE WITNESS: Can you clarify that question for me?
BY MR. JILIZIAN:
Q. Yeah. So just based on this Scoredit consent alone, which was in your possession and produced to us. Based on that alone, are you able to tell whether the person filling -- sorry, whether the information provided was provided personally by the person who owns and controls that information? So, for example, the person that provided the telephone number was -- sorry, the telephone number provided was actually provided by the person who owns it?
A. I would have no reason to believe otherwise.



Q. But what I'm asking is, the -- Scoredit does not inform Healthcare Solutions or provide any indication that the telephone number or emails provided were provided personally by the person who owns and controls those numbers and emails, correct?
A. They provide timestamp, lead information, IP address.
MR. JILIZIAN: Okay. Sorry, I'm going to stop sharing here. Okay. I'm going to take us to the next exhibit here. Okay. Madam Court Reporter, we'll mark this exhibit here as Exhibit-5, document Bates numbered Healthcare Solutions 0038.
- - -
(Exhibit-5, Bates numbered Healthcare Solutions 0038, was marked for identification.)
- - -
BY MR. JILIZIAN:
Q. Mr. Vickers, do you recognize this document in front of you?
A. Yes.
Q. All right. Did you review it before, in preparation for your deposition today?
A. Yes.
Q. Okay. Could you identify what you believe this document to be?



A. This is the advertisement to consumer, so along with the TCPA opt-in lead.
Q. Okay. And so -- and just to be clear, so this top portion right here in brown, that's titled Medicare Advantage Plans, this is the advertisement portion, correct?
A. Correct.
Q. And then this gray text, at the bottom here, you're saying serves as the TCPA opt-in, correct?
A. Correct.
Q. Okay. And this is the only document that your company has produced that displays the Healthcare Solutions name above a -- sort of a -- how -- what you characterize as a TCPA consent; is that correct?
A. (Indiscernible).
Q. Sorry, was that a yes?
A. Well, again, from not being able to produce 2024, not sure if Healthcare Solution was displayed on the first disclaimer on the Scoredit page, but the consumer would have also seen this and opted in to this offer as well.
Q. That's helpful. Thank you. What I was asking, though is, in this litigation, this is the only document that your company was able to produce that included Healthcare Solutions's name with what you


MAGNA LEGAL SERVICES

characterize as a TCPA consent language; is that correct?
A. That we provided, correct.
Q. Okay. And this document here displays a phone number here, (641) 347-2682; is that -- do you see that here in the second line?
A. Correct.
Q. And was that phone number -- was that typed in by Plaintiff, or do you know if it was auto-populated by the advertising system?
A. It's auto-populated.
Q. Okay. So the system -- so what you're saying is -- sorry -- the user does not -- at this -- for this consent, type in their phone number themselves. The website takes their phone number, which has already been provided at an earlier stage, and auto-populates the field; is that accurate?
A. It displays their phone number here for them, yes.
Q. Okay. And just -- also just to clarify here, in the -- the top left corner here, and let me know if it's not clear, this is Healthcare Solution's logo, correct?
A. Yes.
Q. How does a user reach this page? Like, because I -- I ask because this document was not -- it



wasn't provided with necessarily any other pages connected to it. So I'm just asking how a consumer would end up on this consent page?
A. So a consumer would go to a lander or -- or website like Scoredit. They would input their information, and then they would be prompted to other offers, which could be insurance products, discounts on products, other services, but then they would go in and either agree or say no to those specific offers, opting in to, you know, being contacted.
Q. Okay. So this would have been -- this document, would it have been accessed through Scoredit's website, or would it have been reached through a Healthcare Solutions's website or something entirely different?
MR. PETERSON: Object to form.
THE WITNESS: It would -- it would be through the funnel of Scoredit.
BY MR. JILIZIAN:
Q. Sorry, I missed that. Could you repeat that?
A. It would be through the funnel of Scoredit.
Q. Okay. Do you know the date on which Plaintiff allegedly submitted this document?
A. I do not know the exact date. I just know that it was in 2024.



Q. Okay. And also, so looking at the language of the consent here, you see, starting in the second line, you -- well, you -- again, you can just take -- sorry, I'll strike that.
Just please take time to go through this consent, and I'll just -- identify when you're ready. You see in the first few lines that it provides consent to receive calls, text messages, and/or emails from Healthcare Solutions and our marketing partners listed in the privacy and Medicare plans. Do you see that language?
A. I did.
Q. And so again, these marketing partners are not listed within the language of the consent itself here, right? You'd have to navigate to the privacy partner -- or sorry, privacy policy in order to look at those entities; is that correct?
A. Correct.
Q. Okay. And the disclosure states that the calls may be made even if they were on the National Do Not Call Registry; is that correct?
A. Correct.
Q. Do you know if the plaintiff ever attempted to revoke their consent to receiving telemarketing communications, assuming that consent was provided?



A. I would defer that question to Brad.
Q. Okay. And you -- your counsel had produced this document -- well, I'm sorry. You had produced this document through counsel in response to RFP number 17, which seeks documents evidencing purported consent; is that correct?
A. I'm not familiar with the document or 17 you referred to.
Q. Okay. I'll represent to you that plaintiffs had propounded discovery requests on your -- on Healthcare Solutions's request for production 17, asking for documents that evidenced consent, a consent defense. And that in response, that your -- that Healthcare Solutions produced this document in front of us right here, in response to RFP number 17, which asks for consent.
So what I'm asking is, your -- Healthcare Solutions contends that this document provides a basis for a consent defense under the TCPA; is that correct?
MR. PETERSON: Object to form.
THE WITNESS: These documents were produced to provide counsel an understanding of the consumer journey.
BY MR. JILIZIAN:
Q. Okay. And you see this code in the upper


MAGNA LEGAL SERVICES

Page 30

right-hand corner here, B1024 -- do you see that?
A. Yes.
Q. Your company's summary judgment motion, it refers to that code as creative ID B10242316; is that correct? Are you familiar with that?
A. It's not considered a creative ID. It's considered a compliance -- compliance code from our FMO.
Q. Okay. We can move on to the next exhibit here. All right. Do you -- oh, sorry, I'll get the summary out of the way. Do you see the document in front of me?
A. I do.
MR. JILIZIAN: Okay. We'll go ahead and mark this document here as Exhibit-6.
- - -
(Exhibit-6, Supplemental Responses, was marked for identification.)
- - -
BY MR. JILIZIAN:
Q. Mr. Vickers, I'll represent to you that these are supplemental responses that your company had produced in response to some of our discovery requests. Do you have any reason to dispute that?
A. I'm not familiar with this document.
Q. I'm sorry?

Page 31

A. Is this the first document you showed us, the --
Q. No. So that first document, Exhibit-1, that was your deposition subpoena, the 30(b)(6) subpoena, which you were identified as a deponent. This document is another legal document. It looks similar, but it's your company's responses to our RFP or to our request for production. So we had sent discovery request for some documents, not for deposition testimony, this one, and these are your company's amended responses to them.
Do you have any reason to dispute that?
A. I have not reviewed this document personally.
Q. Okay. Well, we'll just go through this real quick then. We'll just go to RFP number 6. And so number 6, do you see that it asks for all contracts or documents representing agreements with any vendors that provided you with the plaintiff's telephone number information. Do you see that?
A. Yes.
Q. Okay. And you see there, for each of these -- because they're supplemental responses, you'll see that there's an original response that I'm highlighting here, that you had responded first, and then you had supplemented your responses. And you'll see there's -- that for many of these, there are supplemental responses

Page 32

here. So looking at the original response, because you haven't reviewed this, please take time to review if you need.
It states several objections here, but right at the end, subject to all the objections, this is the main point here. It states that defendant states no documents exist responsive to this request. Do you see that?
A. Yeah.
Q. And then in the supplemental response, it says, again, defend -- you maintain your response and says defendant has no responsive documents in its possession, custody, or control; is that correct?
A. Correct.
Q. Okay. So but looking back, you know, a lot of the consent records that you provided, the alleged consent records, are -- again, they're not Healthcare Solutions only -- sorry, I'll strike that and rephrase.
The consent -- the alleged consent records in this case are not controlled by Healthcare Solutions, correct? They are -- many of them are controlled by Scoredit, you contend; is that right?
A. Can -- can you clarify that question?
Q. Yeah. It is -- is it accurate in this case to say that many of the records that you provided, which you

Page 33

contend provide consent to receive telemarketing communications. Is it true that those records are not all Healthcare Solutions's internal records and many originate from third parties, like Scoredit?
A. When you say records, are we just referring to the plaintiff's record?
Q. No. So for example, I'm saying like Exhibit-2, for example, was the -- and if you like, we can go back to it. What was the, you know, Bates numbers 9 through 21, which your counsel provided the clearer version of, you know, with the text boxes and the checkboxes. Those were not Healthcare Solutions's own company records, correct? Those originated from a third party?
A. They originated from a marketing platform, and then opted in to our creative and advertisement.
Q. Okay. So in that marketing platform is a third party, Scoredit, correct?
A. Zeeto. Correct.
Q. Okay. And Scoredit is a Zeeto-owned entity you had previously said; is that correct?
A. Correct.
Q. And Zeeto, again is in relation to your -- to Healthcare Solutions is unaffiliated third party, right?
A. It's a marketing platform.


MAGNA LEGAL SERVICES

Q. Okay. But it's not owned in -- or in any way -- or yeah. I guess it's not owned in any way or a subsidiary or owns Healthcare Solutions; is that correct?
A. Correct.
Q. This is just a company -- Zeeto and Scoredit are both just companies which you contract with to provide services, that's correct?
A. Correct, yeah. They're -- they're considered a marketing platform like -- like Facebook, Google.
Q. So, again, now looking back at this language of RFP 6, which your company contended no responsive documents existed. It had asked for contracts or documents representing agreements with any vendor that provided you the plaintiff's telephone number or information.
So what I'm asking now is did Scoredit or Zeeto, do you allege that they provided you plaintiff's telephone number or identifying information?
A. Correct. They -- they -- when a consumer opts in our advertisement, the system, like any other marketing platform, where it automatically sends the information to us.
Q. Okay. So wouldn't it be accurate to say that because Scoredit's -- Scoredit or Zeeto's documents produced to you, that you then -- sorry, I'll strike



that. I'll rephrase.
Isn't it accurate to say that Scoredit or Zeeto's documents that they provided to you, which includes the plaintiff's identifying information and telephone number, even if it was just sent as part of an automated system, wouldn't those necessarily fall under documents responsive to RFP 6, since they represent an agreement with a vendor that provided you that information?
MR. PETERSON: Object to form.
THE WITNESS: I guess you'd have to clarify vendor. Vendor typically in our industry is -- is someone that sells you leads. We don't purchase leads. We utilize internal marketing platforms with our own approved creatives and websites. We pay based off of impressions and clicks. We don't buy leads from any vendors.
BY MR. JILIZIAN:
Q. Okay. So you -- thank you. That's helpful. So you -- you're contending that the reason that no documents were produced responsive to RFP 6, which asks for agreements with vendors, significantly, that provided you with the plaintiff's telephone number information is because Scoredit and Zeeto are not lead vendors, rather they are marketing platforms. Is that an accurate



description of what you described?
MR. PETERSON: Object to form.
THE WITNESS: Yes, correct. I -- I would also say we did ask for -- I mean, again, these contracts were produced roughly four or five years ago. We asked for the original documentation and contracts; however, they have not provided those yet.
BY MR. JILIZIAN:
Q. Okay. I'll scroll down to RFP 7. It asks for internal communications at your company regarding vendors that provided you with Plaintiff's telephone number information, which you also held -- and I'll just look at these supplemental responses too, because a lot of them are just reiterating your original response. But you contended in both your original and supplemental response that Defendant has no responsive documents. Do you see that?
A. Can you highlight where you're referring to?
Q. Yeah. So RFP 7 is a very similar one. Asks for internal communications at your company regarding vendors that provided you with Plaintiff's information, then you responded both times in the original and supplemental that Defendant has no responsive documents. Do you see that? This is RFP 7.
A. Okay.



Q. And so, again, is that the same answer for RFP 6 of why you didn't produce any of these communications, because you're contending that Zeeto and Scoredit would fall under -- would not be classified as vendors, but rather should be classified as marketing platforms?
A. I'd refer to James on that clarification.
Q. Okay. Request number 11. Now, this one is quite a bit broader, right? This is all communications with any third party that provided you with Plaintiff's telephone number. And you, both times, had identified that or had answered that Defendant has no responsive documents. Do you see that?
A. I do.
Q. Okay. So this -- I mean, is quite a bit broader and it doesn't have the vendor limitation, right? It just asks for any communication with the third party that provided you Plaintiff's telephone number. So, again, what my question is, wouldn't Scoredit and Zeeto fall under third parties that provided you with Plaintiff's telephone number?
MR. PETERSON: Object to form.
THE WITNESS: Assume so, yes.
BY MR. JILIZIAN:
Q. Okay. And so do you why these sorts of agreements were not produced, the agreements between --


Case 4:25-cv-00607-BCW Document 50-4 Filed 09/18/26 Page 11 of 46
MAGNA LEGAL SERVICES

sorry, I'll strike that.
Do you know why these documents that showed the plaintiff's information, that were sent from either Scoredit or Zeeto or another third party to Healthcare Solutions, why these documents were not produced or were not able to be produced for this litigation?
A. I would refer to James on clarification.
Q. Okay. And when you're saying refer to James, you're talking about James, your counsel, correct?
A. Correct.
Q. And just -- number 12 here, again, very -- is this -- this is just like 11, but instead of communications with the third party, it's internal communications at your company regarding the third parties that provide you Plaintiff's telephone number. So again, do you have an answer for why no responsive documents were produced in response to this RFP?
MR. PETERSON: Object to form.
THE WITNESS: Once again, I would -- I would refer to James regarding -- regarding this.
BY MR. JILIZIAN:
Q. Okay. Request number 4 asks for documents related to any failure by a vendor of yours to abide by your policies or any agreement you had relating to the sending of outbound calls. And you said you had no



responsive documents here. So again, were no documents produced here because of the vendor limitation, or was it because you actually, you don't contend that you have any documents that show a failure of these third parties to abide by your policies? What is the reason no documents were produced?
MR. PETERSON: Object to form.
THE WITNESS: Correct, yes, we had no documentation regarding any failures or regarding this policy.
BY MR. JILIZIAN:
Q. Okay. So can you -- sitting here, can you identify today the entity which sent Plaintiff's information? And when I say information, I mean telephone number and other identifying information to Healthcare Solutions. Do you know the entity?
A. Can you clarify that question?
Q. Yes. So do you know the entity that sent Plaintiff's telephone number and other identifying information to Healthcare Solutions?
A. When you say know the entity, you're just referring to their name?
Q. Can you identify by name the entity, yes.
A. Not the exact entity name, but the company name.



Q. Can you identify just generally the company. I don't need, you know, LLC or something.
A. Yeah. Yes. Zeeto.
Q. Okay. Do you -- so are you contending that Zeeto directly transmitted that information to Healthcare Solutions, or were there other marketing companies or vendors or lead generators involved in this chain?
A. Zeeto directly.
MR. JILIZIAN: Okay. We've been -- I'm going to move to the next exhibit, but I was going to say we've been going close to an hour here, so maybe -- this might be a good point to just stop for about five, ten minutes and --
MR. PETERSON: Yeah. Yeah. I'm fine with a quick bathroom break.
MR. JILIZIAN: Yeah. Yeah. We -- I think that's about good. You want to just -- right at 9 o'clock here, come back. Oh, sorry, I'm on the West Coast time, sorry. That'll be noon for you guys.
MR. PETERSON: You're up early. Yeah, let's do five after.
MR. JILIZIAN: Same. Okay. Five after's good. Yeah. Great.
MR. PETERSON: Thank you.
MR. JILIZIAN: Thank you.



THE REPORTER: Off the record.
- - -
(A recess was taken.)
- - -
THE REPORTER: Okay. Back on the record.
MR. JILIZIAN: All right. I'm going to introduce a new exhibit here. Believe this is going to be Exhibit-7. Just going to kind of introduce a few in a row here, and because I'm going to be bouncing back and forth. So if you could please bear with me. Okay. Oh, excuse me. Okay. So this, we'll go ahead and mark as Exhibit-7.
- - -
(Exhibit-7, Motion for Summary Judgment, was marked for identification.)
- - -
BY MR. JILIZIAN:
Q. Mr. Vickers, do you recognize this document here?
A. What is this document?
Q. I'll represent to you that this was a Healthcare Solutions's their motion for summary judgment, suggestions, and support. So basically their memorandum of law, like their argument in support of their motion for summary judgment. Do you see this?



MAGNA LEGAL SERVICES

A. I see that, correct.
Q. And I'll represent to you that, without giving you a whole -- a huge legal lesson, that a motion for summary judgment is a type of motion that a party can file. The -- basically tells -- argues to the court that there's no dispute of material fact as to a significant issue in the case, and that the court can just dispose of that issue before trial, if that makes sense. So do you have any reason to dispute that?
MR. PETERSON: Object to form.
THE WITNESS: I have not personally reviewed this document.
MR. JILIZIAN: Okay. Okay. I'm going to bounce around here too. This document we'll go ahead and mark his Exhibit-8 here.
- - -
(Exhibit-8, Declaration, was marked for identification.)
- - -
BY MR. JILIZIAN:
Q. Mr. Vickers, do you recognize this document here?
A. I do.
Q. Can you identify it for me?
A. I -- I don't know the specific name of the



document.
Q. Okay. So this is your declaration that was submitted alongside your motion for summary judgment, so it pairs along the memorandum of law that I had just showed you is and identify as identified as Exhibit-7. So do you have any reason to dispute that?
A. I do not.
MR. JILIZIAN: Okay. And then last of the exhibits here -- what we'll do for right now. We'll go ahead and mark this as Exhibit-9.
- - -
(Exhibit-9, Interrogatories, was marked for identification.)
- - -
BY MR. JILIZIAN:
Q. Excuse me. Mr. Vickers, do you recognize this document here?
A. I don't.
Q. Okay. I'll represent to you that these are your supplemental interrogatory responses that you had submitted -- that Healthcare Solutions had submitted through their counsel. And I'll let you know that interrogatories are a discovery mechanism which the parties can use to ask questions of each other and ask the opposing party to provide a written response, rather



than RFPs, which we saw in one of the earlier exhibits, which asked for documents.
So do you have any reason to dispute that these are your -- Healthcare Solutions's discovery -- sorry, interrogatory supplemental responses?
A. I have not personally reviewed this document.
Q. Okay. All right. So I'm going to go back now to what we marked as Exhibit-7, the MSJ -- but I'm sorry, suggestions in support of the MSJ. I'm going to kind of bounce around here a little. So this motion here identifies another entity. Sorry, excuse me. So looking at page 2 of this document, paragraph 3, right in the section titled Statement of Uncontroverted Material Facts, I've highlighted a section here. Can you just read this back for me?
A. Healthcare Solutions maintains electronic lead records in its Azure SQL production environment. Those records are created near the time of submission, maintained in the ordinary course of Healthcare Solutions's regularly conducted business, and regularly relied upon in conducting its business.
Q. Okay. So could you describe to me what the Azure SQL production environment is?
A. These would be Brad's questions.
Q. Okay. So sitting here today, are you familiar



with what the Azure SQL production is?
MR. JILIZIAN: And, Counsel, I'm sorry, if he doesn't know, I won't go into a long line of questioning here. I just want to understand that.
THE WITNESS: I am not.
BY MR. JILIZIAN:
Q. You're not familiar at all?
A. No.
Q. Okay. And then here, so same page, just paragraph number 5, if you could just read out this first sentence here to me.
A. The record identifies the marketing platform as Zeeto, publisher as Tibrio, property as Scoredit and placement as Scoredits, primary placement.
Q. Okay. So there are a few questions I have here. So first, who is Tibrio?
A. Tibrio is another entity under Zeeto, owned by Zeeto.
Q. So all these companies listed here that I've highlighted, Zeeto, Tibrio, and Scoredit, they are all under the same, I guess, corporate umbrella; is that correct?
A. Correct.
Q. Because you had previously testified that Scoredit is a subsidiary or wholly owned entity of Zeeto;


MAGNA LEGAL SERVICES

is that correct?
A. Correct.
Q. And so could you just describe as much as you know about the general ownership structure, like who is wholly owned by whom?
A. Can you clarify that question for me?
Q. Sure. So like you had previously testified that Scoredit is a subsidiary of Zeeto, right? So could you just identify where in the chain Tibrio falls, like is Tibrio wholly owned by Scoredit? Is Tibrio the parent company of it all?
A. So these are just marketing benchmarks. So typically marketing platforms will have so-called -- and publisher is just a name that we have internally. That is not what Zeeto refers to them as. However, that's a marketing benchmark for us to know. Essentially, Zeeto will place these, I guess, advertisements through their marketing platforms as well, and Tibrio would essentially give us a benchmark if this avenue is working correctly or not. And then Scoredit would be the lander or website.
Q. Excuse me. Okay. That's helpful. I appreciate that. We will get into their roles as marketing platform and publisher and placement shortly. What I'm asking about is the ownership structure of these



entities. So just aside from the jobs that they all do, do you know the ownership structure of Zeeto, Tibrio, and Scoredit? Like, who is a subsidiary of whom and who is the parent company?
A. Parent company is Zeeto.
Q. Okay. And do you know if they wholly own Tibrio and Scoredit as equal entities or --
A. Correct. I don't know for certain, but from my understanding, yes.
Q. Okay. Now, what I want to get into -- and I know you kind of just explained, but I just want to create a clear record here. So could you explain to me what a -- Zeeto is the marketing platform, publisher is Tibrio, property is Scoredit. Could you identify what a marketing platform is in the context of your work in Healthcare Solutions?
A. Yes. A marketing platform is essentially where we can display our online advertisement with our approved websites and creatives.
Q. Okay. And then what is a publisher in this context?
A. Again, that's just an identifier that we have to display a different marker for us to see if it's performing well or not. Zeeto is not displaying Tibrio as a publisher; that is something that we have as an



identifier just to get additional context.
Q. And what do you mean by -- or what does property mean in this context? Property is Scoredit.
A. Property could mean a website or landing page or -- yeah, in this context.
Q. Okay. And then what does placement refer to?
A. So Zeeto also shows us where our offer is placed, if we were the first offer shown, second, third, fourth, et cetera. Primary placement means we were the first offer shown.
Q. I see. Okay. I want to look at this second line here. Can you just -- can you read that out to me?
A. It further identifies the campaign as Med Advantage compliances approve 065 and asset image compliance, 13 ID, et cetera.
Q. Yeah. And apologies at the end, that was just a citations there. But this is really what we can go ahead and focus on. So this campaign Med ADB compliance approved 065. Can you describe to me generally what that is?
A. Yes. I mean, that's a campaign that we orchestrated in the Zeeto platform, and that's the name.
Q. And what do you mean exactly by campaign?
A. So campaign is where you will create your demographic, you will display your images. You will



upload your TCPA compliance disclosure language. Yeah, and pretty much you're setting forth the demographic and attributes for, you know, what consumer base you want to advertise to.
Q. Okay. So you said -- so right there, and correct me if I'm wrong, but it sounded like you just testified that for each new campaign that is created, you upload whatever marketing, you know, telecommunications content you want to send out to the consumer, along with your TCPA language consent language, however it is you referred to it; is that correct?
MR. PETERSON: Object to form.
THE WITNESS: Correct. We utilize only our approved creatives.
BY MR. JILIZIAN:
Q. Okay. So when you submit this TCPA -- we'll just refer to this, like these consent agreements TCPA -- we'll say TCPA disclosure language. Okay. Is that sensible?
A. Uh-huh.
Q. Okay. When you submit this TCPA disclosure language -- or sorry, when I say you, Healthcare Solutions. When Healthcare Solutions submits this TCPA disclosure language as a part of a new campaign, is it uniquely curated for each campaign, the language?


Case 4:25-cv-00607-BCW Document 50-4 Filed 09/18/26 Page 14 of 46
MAGNA LEGAL SERVICES

A. If you want it to be, it could be.
Q. So --
A. All of our campaigns utilize the same.
Q. Okay. So yeah, I mean that was my question. So it -- the campaign language is, I don't want to say copy, paste, right? But it's pretty much consistent between every one of your campaigns; is that correct?
A. At the time. I mean, we obviously -- throughout the course of years, update our consent language based on our -- our -- our compliance department and AmeriLife FMO and changes in the industry.
Q. Okay. So what I was trying to get at, though, is aside from those periodic updates from changes in the industry or changes in the law, that would apply to like where you would change the language and that would apply to all going forward. You don't necessarily make individual changes based on each campaign, right? Like for example, if, oh, we're selling this certain product, so we need to alter the campaign this certain way, or is that accurate?
A. Correct. Any active campaign is utilizing the same TCPA language.
Q. Okay. Sorry. Excuse me. One minute. I'm just going to -- sorry. They give me these AI-like summaries of the -- I'm just -- I'm going to go bounce



now to Exhibit-8 now. This is your declaration. And just scrolling through here. So we'll just kind of go through -- I know -- I just kind of -- I kind of want to shift a little bit more to like your background and what you've been offered to testify here today.
So your title is Chief Marketing Officer, that's correct?
A. (No audible response).
Q. And it says here your responsibilities include oversight of marketing operations, lead gen, vendor relationships, relationship with Zeeto, which you had testified is the third-party marketing platform, as well as reviewing -- as well as review and approval of advertising creatives and consent language prior to use, which makes you familiar with how Healthcare Solutions obtain the consumers' lead information during the relevant period. And so would you characterize that as accurate?
A. Correct.
Q. And here it says -- I'm looking at paragraph 6 here of your declaration, the highlighted portion. It says Scoredit is an owned and operated consumer property within Zeeto's corporate group, held through Tibrio LLC; is that correct?
A. That's what it reads there, correct.



Q. Okay. So it looks like your -- Zeeto is the parent company in the corporate group, which Scoredit and Tibrio fold under?
A. Correct.
Q. And it -- so Zeeto -- it sounds like this in the language, Zeeto owns Tibrio LLC, and then would -- so Scoredit is held through Tibrio LLC, it sounds like. It's within the Zeeto parent company corporate group, and it is held through Tibrio LLC. So is it fair to say that Scoredit is held through Tibrio LLC and these entities are all owned and operated within Zeeto's parent company corporate group?
A. I am not sure of the actual structure.
Q. Okay. You don't need to -- if you're not sure, you don't need to speculate or anything. I -- I'm just asking if you're -- if you knew here today. Okay.
And then here, you said, Azure Health -- sorry, Healthcare Solutions maintains electronic lead records in its Azure SQL production. These records are created at or near the time the consumer submits information through the applicable online process. Are maintained in the ordinary course of Healthcare Solutions's regularly conducted business in our Healthcare Solutions -- and our records Healthcare Solutions regularly relies upon in conducting its



business. You see that there?
A. I do.
Q. And you said in the next paragraph, I have access and regularly review these records as a part of my responsibilities and reviewed the records associated with the plaintiff's telephone number. Do you see that?
A. I do.
Q. You had testified earlier, though, that you don't believe that you have the expertise here to provide testimony into the Azure SQL production environment?
A. I cannot.
Q. I'm sorry. I didn't catch the response.
A. Can you -- can you repeat your question again?
Q. Yes, sorry. Okay. So you had testified earlier, though, that you did not have the expertise to provide testimony on the Azure SQL production environment, and recommended that I ask the -- Mr. Morgan about the Azure database; is that correct?
A. Correct.
Q. Okay. But so you did say in your declaration, though, that you have access to and regularly review these records as a part of your responsibilities. So I want to understand. Do you have familiarity with the Azure SQL and you've just been -- or are you saying this because you've been instructed not to provide testimony



MAGNA LEGAL SERVICES

on this topic, or is it because you don't have the information necessary?

A. Well, the Azure SQL production environment is out of my scope, and that's referring to our actual database infrastructure. Yes, I have access to lead records through our CRM, but I don't have access or anything to our database, and that would all be Brad's questions.

Q. Okay. Okay. I'm just going to go now to Exhibit-9 here. This is your interrogatory supplemental responses, so -- sorry, I'm going to just scroll down here. Sorry, excuse me. I just got to -- okay. Sorry about that. I'm going to share again.

Okay. So I'm looking at interrogatory number 8 here. This asks you to identify all communications you've had with third parties other than your counsel regarding the lawsuit here. And your supplemental -- or sorry. Your original response said the documents would later be produced responsive. In your supplemental response, you identified Convoso and Zeeto related to this litigation. Do you see that?

A. I do.

Q. Can you explain to me who Convoso is?

A. That would also be a Brad question.

Q. That is for Brad? Okay.



A. Yes.

Q. Do you -- if you're not familiar with it, I don't want to make you ask, but I just want to ask, do you have any familiarity at all with what it is without -- I'm not going to go into a deep asking you about.

A. Yeah. Convoso is our dialing platform.

Q. Your dialing platform, you said?

A. Yeah.

Q. Okay. I'll reserve the questioning for that, but I just wanted to understand if you knew what it was. And it's -- it looks like you described here that your communication -- your communications involved -- sorry, I'll strike that.

It says -- it indicates here that these communications involved talks about preserving documents for litigation; is that correct? If you look here in this section.

A. Yeah. I think that's referring to Convoso, which again, would be a Brad question.

Q. So -- and then here it says the communications with Zeeto concerned Plaintiff's lead information, including the lead journey marketing campaign, consumer experience, and related lead records. Do you see that?

A. Yes.

Q. Okay. So I'll ask, are you aware if any of



those communications have been produced? Today the communications -- not just with Zeeto, but the communications with Convoso and/or Zeeto, have any of those communications been produced?

A. Which -- can you clarify what communications you're referring to?

Q. I'm just asking if you know if any communications between either Zeeto and Healthcare Solutions or Convoso and Healthcare Solutions, have either -- have any communications between Healthcare Solutions and either of those two companies, have they been produced?

A. Regarding -- regarding what topic?

Q. Any topic. Any topic.

A. So there's any -- any communication ever with Zeeto about any topic?

Q. Anything. I'm just -- yeah. I'm just saying have -- has Healthcare Solutions produced any of those communications yet?

A. I am not sure.

MR. JILIZIAN: Okay. Okay. I'm just going to go and introduce one more final exhibit here for you, and then I think that'll probably put us at a good stopping point where we can move on to Brad after this. Okay.



So here I have in front of you, and please tell me if this is too hard to read. I have it in this CSV file in which it was produced, but because I wanted to keep it how it was -- but if we need to convert this, then we could maybe go do that real quickly, but we'll go ahead and mark this as Exhibit-10.

- - -

(Exhibit-10, Call Records, was marked for identification.)

- - -

BY MR. JILIZIAN:

Q. This was produced by Healthcare Solutions, Bates number 0008. And it comprises the alleged call records in this case. Do you see that here, Mr. Vickers?

A. I do. And once again, I could already tell you this would most likely be Brad's area as far as calling is concerned.

Q. Okay. I'm not going to ask you a whole bunch of specific questions on how the calling operations and how the system function -- functionality, how the data is tracked. I just kind of want to ask generally a couple of things about this. But if I'm straying into a -- that is totally in Brad's area, I will ask him instead. So just let me know.



Case 4:25-cv-00607-BCW Document 50-4 Filed 09/18/26 Page 16 of 46

MAGNA LEGAL SERVICES

A. Okay.
Q. So Healthcare Solutions -- just not looking at the document right now. Healthcare Solutions contends that Plaintiff had submitted a lead to the -- or sorry, that some lead was submitted to Healthcare Solutions on September 10, 2024; is that correct?
A. I don't know the exact date, but correct.
Q. Okay. Okay. So you're not sure of the exact date, but were you familiar that it was in 2024?
A. Yes. Correct.
Q. Okay. If I -- I'll just -- I'll represent to you that, and if you'd like, I mean, we could go back to the previous exhibits, we can go to the MSJ and and see where your counselor wrote it, but I'll just represent to you that -- you can -- Healthcare Solutions had submitted documents and contended in their briefing and in litigation that the lead in this case was submitted on September 10, 2024. So do you have any reason to dispute that, if I represent that to you?
A. Uh-uh.
Q. Okay. So the first call, now turning to your, the Exhibit-10 here. The first call here looks to have occurred on -- if we see here -- oh, sorry, the -- it's bottom up. So first call looks to have been on July 3rd of 2025. Do you see that there and I can go down.



Sorry, I -- oh, yeah. I'm not sure if I can zoom in any further on this itself. But if you see here, it says 7/3/2025, at 1541 military time.
A. Look to the right. Yes.
Q. Okay. Yeah. You see where I highlighted the blue box here?
A. I -- I see that date, correct.
Q. Yeah. So if you -- if -- do you see here that the calls here -- so you see -- you're looking at column A, do you see these are all the calls to Plaintiff Blubaugh's phone number?
A. I don't know his phone number by heart.
Q. Okay. I'll represent to you that this is Plaintiff's phone number. Do you have any reason to dispute that?
A. No.
Q. And Healthcare Solutions had produced these -- sorry, produced these records as the call records to Plaintiff's phone number. Do you have any reason to disagree with that?
A. No.
Q. So looking at the date again, I was saying, so, do you agree then that the first call appears to have been transmitted on July 3, 2025, at 1541 military time?
A. Again, confirm with Brad on what those dates



actually mean.
Q. Okay. Well, so I'll show you here that Q is the column Q here. It's titled, Call Date, and lists the date and time here. So do you think that it'd be fair to assume that this is the date that the call was transmitted?
A. It would be fair to assume, but I would -- Brad could clarify that's the actual case, but it does say probably on there.
Q. Okay. Yeah. I won't -- again, if you can't answer with certainty, I won't make you. But what I just wanted to ask is, assuming that -- just looking at the face of this document, just assuming that July 3rd was the date of the first call, and that Healthcare Solutions contends that the plaintiff's lead was submitted on September 10th of 2024. That is roughly nine or ten months between when Healthcare Solutions contends they received a lead from Plaintiff and when Healthcare Solutions contends they made their first call to plaintiff; is that accurate?
A. If that was produced, correct.
Q. Okay. So my question is, do you have any idea why there would have been a -- around ten-month gap, from when Plaintiff's lead was submitted, and when you contend that they provided their consent and when the first call



was made by Healthcare Solutions?
A. I do not know.
Q. Okay. Do you know whether this lead was sold directly to Healthcare Solutions by Zeeto or an affiliate -- or an affiliated entity of Zeeto, or were there different entities that purchased the lead in between and eventually sold it to Healthcare Solutions?
A. Well, again, clarification, Zeeto is not a vendor. They don't sell leads. So we don't purchase leads. How their platform works is we -- me or any other, I would say, agency or -- or consumer with Zeeto, would -- would essentially pay based off impressions and -- and clicks. So if a consumer saw our ad and opted in, we would receive that lead. If we showed our ad to 1,000 consumers and no one opted in, we would pay on those impressions and not receive one lead.
Q. Okay. Thank you for that. So it's a pay-per-click model with how it's colloquially understood; is that correct?
A. Pay per impression or pay per click, correct.
Q. Okay.
A. Or display.
Q. So do you know -- let's ask first, during 2024, during the time when Healthcare Solutions would have allegedly gotten the plaintiff's lead, at that time,


Case 4:25-cv-00607-BCW Document 50-4 Filed 09/18/26 Page 17 of 46
MAGNA LEGAL SERVICES

do you know if it specifically was operating under pay per click or pay per lead model -- or sorry, pay per click or pay per impression model? Excuse me.
A. Impressions.
Q. It was pay per impression? And then what about today? Is it pay per click or pay per impression?
A. We utilize both avenues.
Q. Okay. So with -- sorry -- Zeeto and their affiliated companies, Scoredit -- sorry -- Tibrio, do you know if today that they're operating pay per click or pay per impression?
A. I do not.
Q. Okay. So again, I'm going back to kind of my original question in this line. I had asked though within the pay per click or pay per impression model -- I understand now that you don't pay directly for the leads. Was the -- that you're saying that -- sorry, I'll strike that.
Understanding now that the nature of business between Healthcare Solutions and the Zeeto, Tibrio, Scoredit entities was a pay per click slash pay per impression model. Are you saying that Healthcare Solutions paid either of those three entities directly for pay per click or pay per impression, or was there some sort of intermediate entity in between them when



making that deal?
A. Zeeto only.
Q. Okay. Okay. So it was a direct, I guess, exchange of --
A. Direct.
Q. Yeah, I see. Do you -- does, in Healthcare Solutions, terms of service or privacy policy, does it specify a length of time that the consent would remain valid for?
A. I would have to review. I don't know it verbatim offhand.
Q. Okay. So I'm going to go back here just to the summary judgment motion here. Or actually -- yeah, let me -- so I'll ask before getting into the exhibit here, going back to Exhibit-7. Can you identify any other individual, receiving -- sorry, I'll strike that.
Can you identify any other individual which you received -- what -- how -- which Healthcare Solutions receive business due to referral by -- not referral, but originating out of a deal with Scoredit or an affiliated entity where the individual contended that they did not actually provide that consent?
MR. PETERSON: Object to form.
BY MR. JILIZIAN:
Q. Let me know if you need me to rephrase.



A. Yeah, rephrase it.
Q. Okay. Are you aware of any other instances where an individual -- sorry, we'll strike that.
Are you aware of any instances in which a Scoredit or affiliated entity originated business, like originated person -- so I know they don't refer you to the lead, but one where it originated from Scoredit, a referral. Are you aware of any other individuals, other than the plaintiff, that originated from that, which contend or contacted your company and told you that they didn't actually provide any consent to be contacted?
MR. PETERSON: Object to form.
THE WITNESS: (No audible response).
BY MR. JILIZIAN:
Q. No? Okay. Did your company's process for accepting the lead include any independent verification that the phone number belonged to the person who submitted it?
A. At the time, no.
Q. Sorry? And I'll just ask if you could just speak up a little bit more, because some of these answers are not catching on the microphone here.
A. At the time, we did not.
Q. Okay. And are you suggesting that following this -- the initiation of this litigation that there were



some policies put in place to verify the accuracy of -- verify who these phone numbers belong to?
MR. PETERSON: Object to form.
THE WITNESS: I'm not sure the exact date of when we added the additional programs and platforms.
BY MR. JILIZIAN:
Q. Okay. Is it fair to say that those safeguards were put in place as a response to litigation being initiated, or at least partially motivated by such?
MR. PETERSON: Object to form.
THE WITNESS: We had trusted forum implemented before this litigation was proposed to us. However, we've added other safeguards, but I'm not sure of the dates.
MR. JILIZIAN: Okay. All right. Well, Mr. Vickers, that's all the questioning I have for you today. I think we'll just be moving on to Mr. Morgan after this. And yeah, but that's all I have for you. So we can go off the record now, and I'll give the floor to Mr. Peterson.
THE REPORTER: All right. Will the witness read or waive?
MR. PETERSON: Well, I'm going to ask a few questions.
THE REPORTER: Okay.



MAGNA Legal Services

Page 66

MR. PETERSON: But I'm okay taking a quick break.
MR. JILIZIAN: Sure. Absolutely.
MR. PETERSON: It's just 55 -- 5 until?
MR. JILIZIAN: Great. Okay.
THE REPORTER: All right. Off the record.
- - -
(A recess was taken.)
- - -
THE REPORTER: We are now back on the record.
MR. PETERSON: Thank you. Mr. Vickers, you're on mute still.
- - -
EXAMINATION
- - -
BY MR. PETERSON:
Q. Okay. Can you hear me okay?
A. Yes.
MR. PETERSON: Okay. So I'm just trying to clarify a couple things that I may have either heard incorrectly or misheard during your testimony earlier. So I want to make sure I have the ability to share screen. Looks like I do. I'm going to share what was -- actually, what was the consumer journey? That was exhibit -- was that Exhibit-2,

Page 67

Alex?
MR. JILIZIAN: Yes.
BY MR. PETERSON:
Q. Okay. I'm going to share what's been marked as Exhibit-2. Okay. Mr. Vickers, do you see what I've placed on screen?
A. Yes. It's cut off, but I only see the top portion of it.
Q. Where does it end for you?
A. It's just showing, "Your free item is ready. Do you want it?" It's just the top portion of the website, it looks like, on my screen.
Q. Okay. Is that any different?
A. Yeah, now I see the whole screen.
Q. Okay. You previously testified you -- you're familiar with this document, correct?
A. Correct.
Q. Okay. I just want to clarify, Healthcare Solutions is not claiming these are the exact slides that Mr. Blubaugh would have seen during his alleged opt-in process; is that correct?
A. Yes. Correct.
Q. Okay. At one point, I thought you said that you weren't able to produce the exact slides; is that correct?

Page 68

A. Correct.
Q. And that this is just a -- is this a visual representation for the sake of narrating the process? Is that what this is?
A. Yes. Correct.
Q. Okay. So this is more to educate the parties and the court; is that correct?
A. Yes. Correct.
Q. Now, at one point, I thought you said HS -- healthcare Solutions was not able to produce the exact consent. Do you recall saying that?
A. Yes, meaning the exact journey.
Q. Okay. So you mean the whole path; is that what you mean?
A. The -- the exact imagery, the exact path, and -- and the exact content that the individual would have seen at that time.
Q. Okay. So then if I shift over to a different document really quick. Okay. Is this also cut off?
A. Yes, from the top. Same -- same scenario. Maybe if you scroll down.
Q. And it's the same -- does it look the same to you right now?
A. Yeah. I only see the -- the creative and -- and yes. I -- I don't know if it's me or everyone was

Page 69

seeing the same.
MR. PETERSON: Alex, are you seeing the same as --
MR. JILIZIAN: No, I see it perfectly fine.
BY MR. PETERSON:
Q. Okay. Maybe if you -- maybe expand the Zoom window perhaps or something.
A. Yeah. Well, I have to grab it and scroll up and down. Okay. I see the whole thing.
Q. Okay. You're familiar with this document, correct?
A. Yes. Correct.
Q. So I'm just clarifying, is it Healthcare Solutions's position that this is exactly what Plaintiff saw when he opted in to receive telephone calls?
A. Yes.
Q. Okay. So your previous testimony, when you may have said that you weren't able to provide the exact consent, only related to the prior path and prior slides and web pages; is that correct?
A. Correct. It was only related to Scoredit's content, not what we showed at that time.
Q. Okay. Okay. I'm going to go to this -- I'm going to go to the Defendant's Supplemental Responses to Plaintiff's First Request for Production. I don't recall


Case 4:25-cv-00607-BCW Document 50-4 Filed 09/18/26 Page 19 of 46

if that was an exhibit, but that's fine. Let me share this with you as well, Mr. Vickers. Do you see what's on screen right now?
A. Yes.
Q. Just kind of describe what you see, just so I can understand if you're seeing all of it or not.
A. Yeah. I see documents starting with a practical, ending with represented -- representing agreements.
Q. Okay. Perfect. So you're seeing it. So you were asked by Plaintiff's counsel about some requests that Healthcare Solutions had not provided any documents to. Let me find one so we can talk about it specifically. Okay. So let's use number 6 as an example. It says all contracts or documents representing agreements with any vendor that provided you with the Plaintiff's telephone number or information.
In terms of how Healthcare Solutions interacted with Zeeto, would you have to call them up and say, "Hey, I need a list of leads?"
A. No.
Q. Okay. This is a hypothetical. If you order a pizza from Domino's, and it's delivered in a Domino's marked car, who provided you that pizza?
MR. JILIZIAN: Objection. Form. Foundation.



THE WITNESS: Domino's.
BY MR. PETERSON:
Q. Okay. If you ordered a pizza from Domino's and UPS delivered it, where is that pizza from?
MR. JILIZIAN: Same objections.
THE WITNESS: I would assume it's still from Domino's.
BY MR. PETERSON:
Q. Okay. So is it Healthcare Solutions's position that the lead from Plaintiff and others comes straight to Healthcare Solutions --
A. Yes.
Q. -- directly from the consumer?
A. Yes.
Q. So it is not Healthcare Solutions's position that Zeeto is a vendor that provided you with Plaintiff's telephone number or information, is it?
A. Correct.
Q. And then do you see requests for -- for example, requests for production number 11? All communications went into any third party that provided you the plaintiff's telephone number.
A. Yes.
Q. Is it Healthcare Solutions's position that Zeeto provided you with Plaintiff's telephone number?



A. Can you ask that question again?
Q. Sure. Is it Healthcare Solutions's position that Plaintiff directly provided his phone number to Healthcare Solutions?
A. Yes.
Q. Okay. So it is not Healthcare Solutions's position that Zeeto provided Plaintiff's telephone number to Healthcare Solutions; is that correct?
A. (No audible response).
Q. I'm sorry, Mr. Vickers, did you answer there? I couldn't hear.
A. Yeah, correct.
Q. Okay. I'm going to stop sharing and go on to the next document. Just, before I do, generally speaking, did you see a lot of legal documents during your deposition?
A. Yes.
Q. Like documents that said the case number and the plaintiff's name and the defendant's name at the top, and then a bunch of words at the bottom?
A. Yes.
Q. Do they all look kind of the same to you?
A. Yes.
Q. Okay. So I'm going to share, this has been marked as Exhibit-9, I believe, the supplemental response



to Plaintiff's first set of interrogatories. Do you see what's on screen now?
A. Yes.
Q. Okay. I want to -- I'm going to scroll through each page. You don't have to read word for word, but I do want you to look at everything. Okay? Just as in general. Okay?
A. Uh-huh.
Q. Let me know if I'm going too fast. Again, I don't need you to read it word for word, I just want you to observe each page.
A. Okay. Yeah, I mean, it's still really like in -- enlarged on my screen for whatever reason, so I'm not really -- but yeah, I'm getting -- I'm getting the concept.
Q. Okay. Just tell me what you can see and can't see right now. Like, for example, it was -- when you told me what it started and ended with, that was good. So what is this -- what can you see it start and end with?
A. The Healthcare Solutions, ends with discovery continues.
Q. Okay. So you're seeing the whole thing.
A. Well, yeah, because I have to scroll through, but it's not showing me the whole page at once, which is


Case 4:25-cv-00607-BCW Document 50-4 Filed 09/18/26 Page 20 of 46
MAGNA LEGAL SERVICES

kind of annoying, but yeah.
Q. Oh, I see. Okay. Okay. And that's the end of it. Did you get a general knowledge of what the document is?
A. Yeah, I think so. Yeah.
Q. Okay. What I'd like you to do is read for yourself, page 17. I've put it up in its entirety.
A. Read the whole thing?
Q. You don't have to read it out loud, just read it.
A. Okay.
Q. Okay. And then I'm going to scroll to the next page, and then just read that page for me. You don't have to do it out loud. Just let me know when you're done.
A. Okay.
Q. Done?
A. Yeah.
Q. Okay. So I'm not sure if I heard you right or wrong earlier, but I thought you had said you had not seen this document before. Do you recall what you had said earlier?
A. I don't believe it was this document, but I'm not 100 percent sure.
Q. Okay. And that was kind of my point. A lot



of these legal documents look the same to you; is that fair?
A. Correct. Yes.
Q. Okay. So do you see this executed August 6, 2026, Jordan Vickers.
A. Correct. Yes.
Q. Is that your signature?
A. Yes.
Q. Okay. If you signed this document, would you have reviewed it thoroughly beforehand?
A. I assume so, yes.
MR. JILIZIAN: I'll object to form on that last question.
BY MR. PETERSON:
Q. Okay. Let me -- just one more document I want to look at real quick. Okay. Do you see -- I believe I put your declaration on screen, which was Exhibit-8, I believe.
MR. JILIZIAN: That's correct.
BY MR. PETERSON:
Q. You were asked, before you even saw this declaration, you were asked about Azure SQL, right?
A. (No audible response).
Q. Sorry, Mr. Vickers, I maybe missed that.
A. Yes. Correct.



Q. Okay. I believe you said something to the effect of, Mr. Morgan would know more about that?
A. Yes.
Q. Okay. Now, and then I think you said later on when reviewing this declaration that you can still access information within Healthcare Solutions's programs and I think you mentioned CRM; is that right?
A. Correct.
Q. Okay. So even -- it sounds like you don't have a lot of knowledge and it's not your job description to know how the database works; is that fair?
A. Correct.
Q. But you still know how to look up information in the database, right?
A. In the CRM, correct.
MR. PETERSON: Right. In the CRM, right. Okay. Alex, I don't have anything further.
MR. JILIZIAN: All righty. Okay. Yeah. We can go off the record then, right?
MR. PETERSON: My client will read.
MR. JILIZIAN: Oh, sure. Sure.
THE REPORTER: All right. And off the record at 1:15.
- - -
(Whereupon, the Witness was excused.)



- - -
(Deposition concluded at 1:15 p.m.)
- - -


Case 4:25-cv-00607-BCW Document 50-4 Filed 09/18/26 Page 21 of 46
MAGNA LEGAL SERVICES

CERTIFICATE OF REPORTER

I, Amanda Fulks, Court Reporter and Notary Public, do hereby certify:

That the foregoing deposition was taken before me on the date and at the time and location stated on Page 1 of this transcript; that the deponent was duly sworn to testify to the truth, the whole truth, and nothing but the truth; that the foregoing deposition as typed is a true, accurate, and complete record of objections made at the time of the examination to the best of my ability.

I further certify that I am neither related to nor counsel for any party to the cause pending or interested in the events thereof.

______________________________
Amanda Fulks, a
Court Reporter and Notary Public
Date: 08/24/2026



ERRATA SHEET

IN RE : JEFFERY BLUBAUGH V. HEALTHCARE SOLUTIONS INSURANCE AGENCY, LLC
DEPONENT: JORDAN VICKERS
TAKEN : MONDAY, AUGUST 24, 2026
*****************************************************
DO NOT make any marks or changes on the transcript itself. Enter any changes here.

Page/Line Change Reason for change



ACKNOWLEDGMENT OF DEPONENT

I, Jordan Vickers, do hereby certify that I have read the foregoing pages, 04 - 76, and that the same is a correct transcription of the answers given by me to the questions therein propounded, except for the corrections or changes in form or substance, if any, noted in the attached Errata Sheet.

____________________ ______________
JORDAN VICKERS DATE

Subscribed and sworn to before me this ________ day of ____________, 20_____.
My commission expires: ____________

______________________________
Notary Public



LAWYER'S NOTES

PAGE LINE





MAGNA LEGAL SERVICES

**A**

**abide**
38:23 39:5
**ability**
66:22 78:13
**able**
19:18,21 20:10 22:3 23:18 25:17,24 38:6 67:24 68:10 69:18
**about**
6:3,8 9:2 10:16,25 17:16 38:9 40:12,17 46:4,25 53:18 54:13 55:5,15 56:16 57:23 62:6 70:11,13 75:22 76:2
**above**
25:13
**Absolutely**
66:3
**accepting**
64:16
**access**
53:4,21 54:5,6 76:5
**accessed**
27:12
**accuracy**
65:1
**accurate**
9:6 16:21 17:18 26:16 32:24 34:23 35:2,25 50:20 51:18 60:20 78:11
**ACKNOWLEDG...**
80:1
**acting**
22:17
**active**
50:21
**actual**
11:11,14 16:1 22:19 52:13 54:4 60:8
**actually**
7:3 8:3 23:23 39:3 60:1 63:13,22 64:11 66:24
**ad**
61:13,14
**ADB**
48:18
**added**
65:5,13
**additional**
2:16,16 48:1 65:5
**address**
24:7
**Advantage**
25:5 48:14
**advertise**
49:4
**advertisement**
25:1,5 33:16 34:20 47:18
**advertisements**
46:17
**advertising**
26:9 51:14
**affiliate**
61:5
**affiliated**
61:5 62:9 63:20 64:5
**after**
4:11 17:20 19:4 40:21 56:25 65:18
**after's**
40:22
**again**
10:5 15:6 16:10,24 17:11 22:10,18 25:17 28:3,13 32:11 32:17 33:23 34:10 36:4 37:1,18 38:11 38:16,19 39:1 47:22 53:13 54:13 55:19 57:16 59:22,25 60:10 61:8 62:13 72:1 73:9
**agency**
1:11 13:16 61:11 79:3
**ago**
5:23 6:4 22:14 36:5
**agree**
13:14 18:13 27:9 59:23
**agreement**
17:25 18:2,5,22 20:13 21:17 22:25 23:8,9 35:8 38:24
**agreements**
23:3 31:16 34:13 35:22 37:25,25 49:17 70:9,16
**ahead**
6:18 7:8 10:17,18 30:13 41:12 42:15 43:10 48:18 57:6
**AI-like**
50:24
**Alex**
2:4 7:3 8:10,18 11:25 67:1 69:2 76:17
**alex@paronichlaw...**
2:6
**all**
1:6 4:4 8:1,1 12:21 17:10 19:10,18 24:21 30:9 31:15 32:5 33:3 37:8 41:6 44:7 45:7,19,20 46:11 47:1 50:3,16 52:11 54:7,15 55:4 59:10 65:15,16,18 65:21 66:6 70:6,15 71:20 72:22 76:18 76:22
**allege**
34:17
**alleged**
32:16,19 57:14 67:20
**allegedly**
27:23 61:25
**alone**
19:22 23:17,18
**along**
25:2 43:4 49:9
**alongside**
43:3
**already**
5:12 26:14 57:16
**also**
2:14 7:4 13:13 14:24 18:14 19:4 22:9 25:20 26:19 28:1 36:3,12 48:7 54:24 68:19
**alter**
50:19
**am**
8:8 11:16 45:5 52:13 56:20 78:15
**Amanda**
1:24 78:3,21
**amended**
31:10
**AmeriLife**
50:11
**an**
5:23 7:5 11:2 14:9,13 14:23 15:21 18:6 26:15 29:22 31:22 35:5,7,25 38:16 40:11 47:22,25 51:22 61:4,5 63:20 64:3 70:1,14
**and/or**
28:8 56:3
**annoying**
74:1
**another**
5:18 31:6 38:4 44:11 45:17
**answer**
13:7,9 37:1 38:16 60:11 72:10
**answered**
37:11
**answers**
64:21 80:5
**any**
5:25 6:14 9:24 15:9 15:13 17:17 20:16 20:25 21:20 22:15



MAGNA LEGAL SERVICES

23:2 24:2 27:1 30:23 31:11,16 34:1 34:2,13,20 35:17 37:2,9,16 38:23,24 39:3,9 42:9 43:6 44:3 50:21 55:4,25 56:3,7,10,14,14,15 56:15,16,18 58:18 59:1,14,19 60:22 61:10 63:15,17 64:2 64:4,8,11,16 67:13 70:12,16 71:21 78:16 79:7,8 80:7

**anything** 12:5 52:15 54:7 56:17 76:17

**apologies** 48:16

**apologize** 9:10

**appear** 19:1

**APPEARANCES** 2:1

**appeared** 21:15

**appears** 6:7 15:19 16:15,20 17:24 18:3 59:23

**applicable** 52:21

**apply** 50:14,15

**appreciate** 46:23

**approval** 51:13

**approve** 48:14

**approved** 35:15 47:19 48:19 49:14

**architectural** 11:2

**architecture** 7:25 8:5

**are** 4:2 6:8 7:23 10:1,7 10:16,17,18,25 11:3 11:5,21 12:8,24 13:2 15:14 19:9,15 19:19 21:18 23:18 28:13 30:5,21 31:10 31:25 32:17,20,21 32:21 33:2,5 34:6 35:24,25 36:14 40:4 43:19,23 44:4,18,25 45:15,20 46:12 52:11,19,21 53:24 55:25 59:10 62:22 64:2,4,8,22,24 66:10 67:19 69:2

**area** 57:17,24

**argues** 42:5

**argument** 41:24

**around** 42:14 44:10 60:23

**as** 4:12,22 5:13,14,14 6:19 7:5,11 12:3 13:3,4 15:1,7,8,8 17:12 18:3,6,18 21:24 22:14 23:3 24:11 25:9,14,21 26:1 30:4,14 31:5 35:5 37:4,5 41:12 42:6 43:5,5,10 44:8 45:13,13,13,14 46:3 46:3,15,18,23 47:7 47:25,25 48:13 49:24 51:12,13,13 51:13,17 53:4,22 57:6,17,17 59:18 65:8 67:5 69:3 70:2 70:14 72:25 73:6 78:11

**aside** 47:1 50:13

**ask** 22:18 26:25 36:4 43:24,24 53:17 55:3 55:3,25 57:19,22,24 60:12 61:23 63:14 64:20 65:23 72:1

**asked** 16:16 17:1,22 34:12 36:6 44:2 62:14 70:11 75:21,22

**asking** 11:5 24:1 25:23 27:2 29:11,17 34:16 46:25 52:16 55:5 56:7

**asks** 17:5,7 29:15 31:15 35:21 36:9,19 37:16 38:22 54:15

**aspects** 10:15,20,25,25 11:7 11:20,21

**asset** 48:14

**associated** 53:5

**assume** 37:22 60:5,7 71:6 75:11

**assuming** 28:25 60:12,13

**at** 5:19 6:3 8:22,24 12:21 15:12 16:7 17:16 19:22 20:14 20:16,25 21:20 25:8 26:12,15 28:1,16 32:1,5 34:10 36:10 36:12,20 38:14 40:17 44:12 45:7 48:11,16 50:8,12 51:20 52:20 54:14 55:4 56:23 58:2 59:3,9,22,24 60:12 61:25 64:19,23 65:9 67:23 68:9,17 69:22 72:19,20 73:6,25 75:16 76:23 77:2 78:7,12

**attached** 80:8

**attempted** 28:23

**attorney** 6:7,12 11:18

**attributes** 21:12 49:3

**audible** 51:8 64:13 72:9 75:23

**August** 1:19 6:3 75:4 79:5

**automated** 35:6

**automatically** 34:21

**auto-populate** 23:4

**auto-populated** 26:8,10

**auto-populates** 26:15

**avenue** 46:19

**avenues** 62:7

**aware** 55:25 64:2,4,8

**Azure** 44:17,23 45:1 52:17 52:19 53:10,16,18 53:24 54:3 75:22

**a.m** 1:20 4:2 6:3

**B**

**B** 3:9

**back** 5:19 6:17 16:19 32:15 33:9 34:10 40:18 41:5,10 44:7 44:15 58:12 62:13



MAGNA Legal Services

63:12,15 66:10
**background**
51:4
**backtrack**
10:10
**base**
49:3
**based**
13:20 23:16,18 35:16 50:10,17 61:12
**basically**
10:1 41:23 42:5
**basis**
9:14,21 16:7,8 29:18
**Bates**
3:13,14 7:10,13 15:8 17:15,16 22:12,14 24:12,14 33:9 57:14
**bathroom**
40:15
**be**
10:13 12:2,9 14:23 15:20 16:20 17:24 18:3,4 19:1,18,20 24:25 25:3 27:6,7 27:17,21 28:20 34:23 37:4,5 38:6 40:12,19 41:8,9 44:24 46:20 50:1,1 54:7,19,24 55:19 57:17 60:4,7 64:11 65:17
**BEACH**
2:10
**bear**
41:11
**because**
7:8 10:10 12:1 20:9 22:11 26:25,25 31:21 32:1 34:24 35:24 36:13 37:3 39:2,3 41:9 45:24 53:25 54:1 57:3 64:21 73:24
**been**
4:11 5:12 8:5 16:24 21:1,2,6 26:14 27:11,12,13 40:9,11 51:5 53:24,25 56:1 56:4,12 58:24 59:24 60:23 67:4 72:24
**before**
5:16,19 7:4 12:16 24:21 42:8 63:14 65:12 72:14 74:21 75:21 78:6 80:13
**beforehand**
75:10
**behalf**
1:6 2:3,8 23:10
**being**
25:17 27:10 65:8
**believe**
5:11 23:25 24:24 41:7 53:9 72:25 74:23 75:16,18 76:1
**belong**
65:2
**belonged**
64:17
**below**
17:24
**benchmark**
46:16,19
**benchmarks**
46:12
**best**
78:13
**between**
37:25 50:7 56:8,10 60:17 61:7 62:20,25
**bigger**
9:18
**birthday**
17:7
**bit**
7:8 9:18 12:2 37:8,14 51:4 64:21
**Blubaugh**
1:5 67:20 79:2
**Blubaugh's**
59:11
**blue**
19:1,13,23 59:6
**both**
34:6 36:15,22 37:10 62:7
**bottom**
25:8 58:24 72:20
**bounce**
42:14 44:10 50:25
**bouncing**
41:10
**Boundless**
19:6
**box**
17:25 19:22 20:15 21:16,24 22:24 23:5 59:6
**boxes**
33:11
**Brad**
2:16 8:3 12:7 29:1 54:24,25 55:19 56:24 59:25 60:8
**Brad's**
44:24 54:7 57:17,24
**break**
40:15 66:2
**briefing**
58:16
**broader**
37:8,15
**brown**
25:4
**bunch**
57:19 72:20
**business**
16:3 19:5 44:20,21 52:23 53:1 62:19 63:19 64:5
**but**
7:9 10:1,12,14,18 11:12,13,18 13:14 14:11,12 15:25 16:12,24 17:15 20:16 21:16 22:2,12 22:18 24:1 25:19 27:8 31:6 32:4,15 34:1 36:14 37:4 38:12 39:24 40:10 44:8 47:8,11 48:17 49:6 50:6 53:20 54:6 55:3,10 56:2 57:3,4,6,23 58:7,9 58:14 59:2 60:7,8 60:11 63:19 64:7 65:13,18 66:1 67:7 70:1 73:6,14,25 74:1,20,23 76:13 78:10
**buy**
35:16
**by**
1:23 2:4,9 3:5,6 4:19 5:24 6:24 7:18 9:9 12:15 13:12,23 14:1 14:5,8,9,17 16:13 18:11,12 19:21 20:21 22:8 23:15,20 23:23 24:4,17 26:8 26:8 27:19 29:24 30:19 32:20,21 35:18 36:8 37:23 38:21,23,23 39:5,11 39:23 41:17 42:20 43:15 45:6,17 46:5 46:10 48:2,23 49:15 57:12,13 59:12 61:1 61:4 63:19,24 64:14 65:6,9 66:16 67:3 69:5 70:11 71:2,8 75:14,20 80:5
**B1024**
30:1
**B10242316**
30:4

## C

**C**
4:1
**call**
3:19 28:21 57:9,14 58:21,22,24 59:18

59:23 60:3,5,14,19 60:25 70:19
**calling**
57:18,20
**calls**
18:24 28:8,20 38:25 59:9,10 69:15
**campaign**
21:13 48:13,18,21,23 48:24 49:7,24,25 50:5,17,19,21 55:22
**campaigns**
50:3,7
**can**
4:9 5:16 6:18 7:4,7,7 7:9 8:15,16 9:3 10:5 13:14 14:4 15:12,19 15:25 18:3 20:5,19 21:5,18 22:12 23:7 23:13 28:3 30:8 32:23,23 33:9 36:18 39:12,12,17,23 40:1 42:4,7,24 43:24 44:14 46:6 47:18 48:12,12,17,19 53:13,13 54:23 56:5 56:24 58:13,15,25 59:1 63:15,17 65:19 66:17 70:6,13 72:1 73:16,19 76:5,19
**cannot**
53:11
**can't**
60:10 73:16
**capacity**
12:25 13:4
**car**
70:24
**Cart**
19:7
**case**
1:3 13:17,20 21:19 32:20,24 42:7 57:15 58:17 60:8 72:18
**catch**
53:12
**catching**
64:22
**cause**
78:16
**CENTI**
2:15
**certain**
21:14 47:8 50:18,19
**certainly**
12:1,5
**certainty**
60:11
**CERTIFICATE**
78:1
**certify**
78:4,15 80:3
**cetera**
48:9,15
**chain**
40:7 46:9
**change**
50:15 79:9,9
**changes**
50:11,13,14,17 79:7 79:8 80:7
**CHAPEL**
2:15
**characterize**
18:3 25:14 26:1 51:17
**check**
17:25 23:5,6
**checkbox**
20:13
**checkboxes**
23:4 33:12
**Chief**
51:6
**citations**
48:17
**claiming**
67:19
**clarification**
37:6 38:7 61:8
**clarify**
12:1 14:4 20:19 23:13 26:19 32:23 35:11 39:17 46:6 56:5 60:8 66:20 67:18
**clarifying**
69:13
**CLASS**
1:6
**classified**
37:4,5
**clean**
8:15
**clear**
25:3 26:21 47:12
**clearer**
7:5,9 14:25 17:12 22:14 33:10
**click**
19:12,23 61:20 62:2 62:3,6,10,15,21,24
**clicks**
35:16 61:13
**client**
76:20
**close**
40:11
**Coast**
40:19
**code**
16:17 29:25 30:4,7
**colloquially**
61:18
**column**
59:9 60:3
**come**
40:18
**comes**
8:4 71:10
**commission**
80:15
**communication**
37:16 55:12 56:15
**communications**
18:7 19:20 28:25 33:2 36:10,20 37:2 37:8 38:13,14 54:15 55:12,15,20 56:1,2 56:3,4,5,8,10,19 71:21
**companies**
19:15 34:6 40:6 45:19 56:11 62:9
**company**
7:24 9:23 14:18 22:2 25:12,24 30:21 33:13 34:5,11 36:10 36:20 38:14 39:24 40:1 46:11 47:4,5 52:2,8,11 64:10
**company's**
30:3 31:7,10 64:15
**comparison**
19:15
**complete**
78:12
**compliance**
30:7,7 48:15,18 49:1 50:10
**compliances**
48:14
**comprises**
57:14
**concept**
73:15
**concerned**
55:21 57:18
**concluded**
77:2
**conducted**
44:20 52:23
**conducting**
44:21 52:25
**confirm**
59:25
**connected**
27:2
**consent**
6:15 9:22,24 10:1,2 10:14,20,24 11:7,19 13:19 14:6,7 16:8 18:16,24 19:10,19 20:1,3,8,13,23 21:2


MAGNA LEGAL SERVICES

21:23 22:3,19,19,22 22:24 23:16 25:14 26:1,13 27:3 28:2,6 28:7,14,24,25 29:5 29:12,12,16,19 32:16,17,19,19 33:1 49:10,17 50:9 51:14 60:25 63:8,22 64:11 68:11 69:19
**consents**
23:4
**considered**
30:6,7 34:8
**consistent**
50:6
**consumer**
15:22 16:11,12,25 17:21 18:6 19:11,17 25:1,20 27:2,4 29:22 34:19 49:3,9 51:22 52:20 55:22 61:11,13 66:24 71:13
**consumers**
51:16 61:15
**consumer's**
16:5 17:5
**contacted**
27:10 64:10,11
**contend**
16:6 32:22 33:1 39:3 60:24 64:10
**contended**
34:11 36:15 58:16 63:21
**contending**
35:20 37:3 40:4
**contends**
9:23 29:18 58:3 60:15,17,19
**content**
49:9 68:16 69:22
**contents**
12:20
**context**
6:6 47:15,21 48:1,3,5
**continues**
73:22
**contract**
34:6
**contracts**
31:15 34:12 36:4,6 70:15
**control**
14:18 32:13
**controlled**
32:20,21
**controls**
23:21 24:4
**conversations**
12:21
**convert**
57:5
**Convoso**
54:20,23 55:6,18 56:3,9
**copy**
50:6
**corner**
26:20 30:1
**corporate**
13:3 45:21 51:23 52:2,8,12
**corrections**
80:7
**correctly**
46:19
**could**
4:20 5:10 7:10 8:16 9:17 11:25 16:4 21:5,14 24:24 27:7 27:20 41:10 44:22 45:10 46:3,8 47:12 47:14 48:4 50:1 57:5,16 58:12 60:8 64:20
**couldn't**
72:11
**counsel**
4:15 5:25 10:12 12:22 14:25 15:7,21 17:11 22:13 29:2,4 29:22 33:10 38:9 43:22 45:2 54:16 70:11 78:16
**counselor**
58:14
**couple**
14:25 15:2 19:7 57:22 66:20
**Coupon**
19:6
**course**
16:3 44:19 50:9 52:22
**court**
1:1,24 4:5 24:10 42:5 42:7 68:7 78:3,22
**covers**
9:20
**create**
47:12 48:24
**created**
13:23 14:1,4 15:21 44:18 49:7 52:20
**creation**
7:25
**creative**
30:4,6 33:16 68:24
**creatives**
35:15 47:19 49:14 51:14
**CRM**
11:3 54:6 76:7,15,16
**CSV**
57:3
**curated**
49:25
**custody**
32:13
**customer**
16:17
**cut**
67:7 68:19

**D**

**D**
3:2 4:1
**Daily**
19:7
**data**
57:21
**database**
11:3 53:18 54:5,7 76:11,14
**databases**
8:1,4 11:15 12:6
**date**
27:22,24 58:7,9 59:7 59:22 60:3,4,5,14 65:4 78:7,23 80:11
**dates**
59:25 65:14
**day**
80:14
**deal**
63:1,20
**declaration**
3:17 42:17 43:2 51:1 51:21 53:20 75:17 75:22 76:5
**deep**
55:5
**defend**
32:11
**defendant**
1:12 2:8 13:16 32:6 32:12 36:16,23 37:11
**defendant's**
69:24 72:19
**defense**
16:8 29:12,19
**defer**
29:1
**definitely**
12:7
**definition**
8:20,25 9:11
**definitions**
8:22,25 11:4
**delivered**
70:23 71:4
**demographic**


MAGNA LEGAL SERVICES

21:12,13 48:25 49:2
**department**
50:10
**deponent**
31:5 78:8 79:4 80:1
**deposition**
1:17 4:25 5:1,11,15 5:23 9:11,13 12:18 12:22 15:17 24:22 31:4,9 72:16 77:2 78:6,11
**describe**
44:22 46:3 48:19 70:5
**described**
36:1 55:11
**description**
3:11 36:1 76:10
**designated**
6:13
**detergent**
16:21
**dialing**
55:6,7
**did**
4:25 12:17,21 15:16 24:21 28:12 34:16 36:4 53:15,20 63:21 64:15,23 72:10,15 74:3
**didn't**
14:20 37:2 53:12 64:11
**different**
27:15 47:23 61:6 67:13 68:18
**direct**
63:3,5
**directly**
40:5,8 61:4 62:16,23 71:13 72:3
**disagree**
59:20
**disclaimer**
18:4 21:8,11 25:19
**disclosure**
28:19 49:1,18,21,24
**discounts**
27:7
**discovery**
9:22 15:8 29:10 30:22 31:8 43:23 44:4 73:21
**displaced**
11:12
**display**
21:11 47:18,23 48:25 61:22
**displayed**
25:18
**displaying**
47:24
**displays**
25:12 26:3,17
**dispose**
42:7
**dispute**
5:25 15:10 17:17 22:15 30:23 31:11 42:6,9 43:6 44:3 58:18 59:15
**DISTRICT**
1:1,2
**DIXIE**
2:9
**document**
5:8,12,18,20 7:20 15:6,13,14,19 16:1 16:2,7 24:11,18,25 25:11,24 26:3,25 27:12,23 29:3,4,7 29:14,18 30:10,14 30:24 31:1,3,5,6,12 41:18,20 42:12,14 42:21 43:1,17 44:6 44:12 58:3 60:13 67:16 68:19 69:10 72:14 74:4,21,23 75:9,15
**documentation**
36:6 39:9
**documents**
9:23 12:17 29:5,12 29:21 31:9,16 32:7 32:12 34:12,13,24 35:3,7,21 36:16,23 37:12 38:2,5,17,22 39:1,1,4,5 44:2 54:18 55:15 58:16 70:7,12,15 72:15,18 75:1
**does**
13:8 14:18 16:6,21 17:14 23:4 24:1 26:12,24 48:2,6 60:8 63:6,7 67:9 68:22
**doesn't**
13:9 17:14 22:12,22 22:23 23:1 37:15 45:3
**Domino's**
70:23,23 71:1,3,7
**done**
74:15,17
**don't**
10:11 35:13,16 39:3 40:2 42:25 43:18 47:8 50:5,16 52:14 52:15 53:9 54:1,6 55:3 58:7 59:12 61:9,9 62:16 63:10 64:6 68:25 69:25 73:5,10 74:9,14,23 76:9,17
**down**
5:15 7:19 10:23 36:9 54:11 58:25 68:21 69:9
**due**
63:19
**duly**
4:11 78:9
**during**
5:23,24 18:14 51:16 61:23,24 66:21 67:20 72:15

**E**

**E**
3:2,9 4:1,1
**each**
31:20 43:24 49:7,25 50:17 73:5,11
**earlier**
14:23 26:15 44:1 53:8,15 66:22 74:20 74:22
**early**
40:20
**edit**
8:14
**educate**
68:6
**effect**
76:2
**either**
20:16 27:9 38:3 56:8 56:10,11 62:23 66:20
**electronic**
44:16 52:18
**else**
23:9
**email**
3:12 5:23 6:7,19,21 8:16 10:10 12:2 17:5,21
**emails**
24:3,5 28:8
**end**
27:3 32:5 48:16 67:9 73:19 74:2
**ended**
73:18
**ending**
70:8
**ends**
73:21
**enlarged**
73:13
**enter**
8:16 79:8

**entirely**
27:14
**entirety**
10:13 74:7
**entities**
1:7 19:6 28:17 47:1,7 52:10 61:6 62:21,23
**entity**
14:9,14 33:20 39:13 39:16,18,21,23,24 44:11 45:17,25 61:5 62:25 63:21 64:5
**environment**
44:17,23 53:10,17 54:3
**equal**
47:7
**Errata**
79:1 80:8
**ESQUIRE**
2:4,9
**essentially**
46:16,18 47:17 61:12
**et**
48:9,15
**even**
28:20 35:5 75:21 76:9
**events**
78:17
**eventually**
61:7
**ever**
21:15,17,20,20 28:23 56:15
**every**
21:18 50:7
**everyone**
68:25
**everything**
73:6
**evidence**
8:17
**evidenced**
29:12
**evidencing**
29:5
**exact**
20:3,7 27:24 39:24 58:7,8 65:4 67:19 67:24 68:10,12,15 68:15,16 69:18
**exactly**
16:12 20:11 21:12 48:23 69:14
**examination**
4:17 66:14 78:13
**examined**
4:12
**example**
16:22 23:21 33:7,8 50:18 70:15 71:20 73:17
**except**
80:6
**exchange**
63:4
**excuse**
5:16 14:22 41:11 43:16 44:11 46:22 50:23 54:12 62:3
**excused**
76:25
**executed**
75:4
**exhibit**
6:19 7:6 14:24 24:10 24:11 30:8 40:10 41:7 56:22 63:14 66:25 70:1
**exhibits**
43:9 44:1 58:13
**Exhibit-A**
5:13
**Exhibit-1**
5:13 6:17 7:1 31:3
**Exhibit-10**
3:19 57:7,9 58:22
**Exhibit-2**
14:24 15:7 17:17 33:8 66:25 67:5
**Exhibit-3**
3:12 6:19,21 10:11
**Exhibit-4**
3:13 7:11,13 15:1 17:13 22:10
**Exhibit-5**
3:14 24:11,14
**Exhibit-6**
3:15 30:14,16
**Exhibit-7**
3:16 41:8,12,14 43:5 44:8 63:15
**Exhibit-8**
3:17 42:15,17 51:1 75:17
**Exhibit-9**
3:18 43:10,12 54:10 72:25
**exist**
32:7
**existed**
34:12
**expand**
69:6
**experience**
55:23
**expertise**
53:9,15
**expires**
80:15
**explain**
13:2 16:2 47:12 54:23
**explained**
47:11
**express**
18:23
**e-sign**
18:23

**F**

**face**
60:13
**Facebook**
34:9
**fact**
42:6
**Facts**
44:14
**factual**
9:14,20
**failure**
38:23 39:4
**failures**
39:9
**fair**
12:11 52:9 60:4,7 65:7 75:2 76:11
**fall**
11:8,11 35:6 37:4,19
**falls**
46:9
**familiar**
15:14 29:7 30:5,24 44:25 45:7 51:15 55:2 58:9 67:16 69:10
**familiarity**
53:23 55:4
**far**
57:17
**fast**
73:9
**few**
18:21 28:7 41:9 45:15 65:23
**field**
26:16
**file**
42:5 57:3
**filling**
23:19
**final**
11:20 56:22
**find**
70:13
**fine**
40:14 69:4 70:1
**first**
10:16 17:2 18:9,9,12 18:21 25:19 28:7 31:1,3,23 45:10,16 48:8,10 58:21,22,24


MAGNA LEGAL SERVICES

59:23 60:14,19,25 61:23 69:25 73:1
**five**
36:5 40:13,21,22
**FL**
2:10
**floor**
65:20
**Florida**
1:25
**FMO**
30:7 50:11
**focus**
48:18
**fold**
52:3
**following**
8:2 10:15 64:24
**follows**
4:12
**foregoing**
78:6,10 80:4
**form**
13:11 14:3,16 16:9 18:8 20:3,7,18 22:6 23:12 27:16 29:20 35:10 36:2 37:21 38:18 39:7 42:10 49:12 63:23 64:12 65:3,10 70:25 75:12 80:7
**forth**
41:10 49:2
**forum**
65:11
**forward**
50:16
**Foundation**
70:25
**four**
36:5
**fourth**
48:9
**free**
16:20 67:10
**from**
12:8 18:25 19:20 22:7 23:7 25:17 28:8 30:7 33:4,13 33:15 35:17 38:3 47:1,8 50:13,13 60:18,23 64:7,9 68:20 70:23 71:3,4 71:6,10,13
**front**
5:20 9:12 10:11 15:3 24:19 29:14 30:10 57:1
**Fulks**
1:24 78:3,21
**full**
4:21 19:24
**function**
14:7 57:21
**functionality**
7:25 8:4 57:21
**funnel**
27:18,21
**further**
15:14 48:13 59:2 76:17 78:15
**FWY**
2:9

**G**

**G**
4:1
**gap**
60:23
**gen**
51:10
**gender**
17:8
**general**
46:4 73:7 74:3
**generally**
40:1 48:19 57:22 72:14
**generation**
5:3 6:15 10:14,19,24 11:6,8,10,12,19
**generators**
40:7
**get**
30:9 46:23 47:10 48:1 50:12 74:3
**getting**
63:14 73:14,14
**give**
15:21 17:2 46:19 50:24 65:20
**giveaway**
16:21
**given**
80:5
**giving**
42:2
**go**
6:18 7:8 8:13,15 10:17,18 16:15 19:22 22:9 27:4,8 28:5 30:13 31:13,14 33:9 41:12 42:14 43:10 44:7 45:3 48:17 50:25 51:2 54:9 55:5 56:22 57:5,6 58:12,13,25 63:12 65:19 69:23 69:24 72:13 76:19
**goes**
19:5
**going**
5:4,15,18 6:16,17 7:19 10:9 11:18 14:21,22,23 16:14 17:10,13 22:9 24:8 24:9 40:9,10,11 41:6,7,8,9 42:13 44:7,9 50:16,24,25 54:9,11,13 55:5 56:21 57:19 62:13 63:12,15 65:23 66:23 67:4 69:23,24 72:13,24 73:4,9 74:12
**good**
4:20,24 40:12,17,23 56:24 73:18
**Google**
34:9
**got**
12:10 23:11 54:12
**gotten**
61:25
**grab**
69:8
**gray**
25:8
**Great**
40:23 66:5
**group**
2:8 51:23 52:2,8,12
**guess**
7:8,9 11:2 14:7 34:2 35:11 45:21 46:17 63:3
**guys**
40:19

**H**

**H**
3:9
**had**
8:11 9:10 10:12 11:18 13:13 14:25 15:1 17:12 19:25 21:23 23:3 29:2,3 29:10 30:21 31:8,23 31:23 33:21 34:12 37:10,11 38:24,25 39:8 43:4,20,21 45:24 46:7 51:11 53:8,14 54:16 58:4 58:15 59:17 62:14 65:11 70:12 74:20 74:20,21
**hand**
4:10
**happened**
8:19 21:9
**hard**
57:2
**has**
5:12 6:12 21:20


MAGNA LEGAL SERVICES

25:12 26:14 32:12 36:16,23 37:11 56:18 72:24
**have**
4:7 5:25 8:5 9:12 10:11 15:9,22 16:11 16:24 17:14,17 19:11,12,22 20:4,8 20:14,25 21:1,6,9 21:12 22:12,15,20 23:5,6,25 25:20 27:11,12,13 28:15 30:23 31:11,12 35:11 36:7 37:15 38:16 39:3 42:9,11 43:6 44:3,6 45:15 46:13,14 47:22,25 53:3,9,15,21,23 54:1,5,6 55:4 56:1,3 56:9,10,11,18 57:1 57:2 58:18,22,24 59:14,19,23 60:22 60:23 61:25 63:10 65:16,18 66:20,22 67:20 68:16 69:8,18 70:19 73:5,24 74:9 74:14 75:10 76:10 76:17 80:4
**haven't**
32:2
**having**
4:11
**he**
45:2 69:15
**Health**
52:17
**healthcare**
1:10 7:24 9:14,21 13:3,8,15,15 14:12 15:9 16:6,16 20:15 21:1,15,23 22:23 24:2,12,14 25:12,18 25:25 26:21 27:14 28:9 29:11,13,17 32:17,20 33:3,12,24 34:3 38:4 39:16,20 40:5 41:22 43:21 44:4,16,19 47:16 49:22,23 51:15 52:18,22,24,24 56:8 56:9,10,18 57:13 58:2,3,5,15 59:17 60:14,17,18 61:1,4 61:7,24 62:20,22 63:6,18 67:18 68:10 69:13 70:12,18 71:9 71:11,15,24 72:2,4 72:6,8 73:21 76:6 79:2
**hear**
66:17 72:11
**heard**
66:20 74:19
**heart**
59:12
**held**
36:12 51:23 52:7,9 52:10
**helpful**
25:22 35:19 46:22
**hereby**
78:4 80:3
**Hey**
70:20
**highlight**
36:18
**highlighted**
44:14 45:20 51:21 59:5
**highlighting**
31:22
**him**
57:24
**HINGHAM**
2:5
**his**
42:15 59:12 67:20 72:3
**hour**
40:11
**how**
11:11 12:6,7 18:13 25:13 26:24 27:2 51:15 57:4,20,21,21 61:10,18 63:18 70:18 76:11,13
**however**
36:7 46:15 49:10 65:12
**HS**
68:9
**huge**
42:3
**hyperlink**
19:1 21:3,25
**hyperlinked**
21:3,16
**hyperlinks**
19:13,23
**hypothetical**
70:22

**I**

**ID**
4:7 30:4,6 48:15
**idea**
60:22
**identification**
6:22 7:14 24:15 30:17 41:15 42:18 43:13 57:10
**identified**
5:14 9:25 10:5 18:18 31:5 37:10 43:5 54:20
**identifier**
47:22 48:1
**identifies**
44:11 45:12 48:13
**identify**
5:10 6:7 15:19,25 16:4 19:18,21 20:22 21:5 22:3 24:24 28:6 39:13,23 40:1 42:24 43:5 46:9 47:14 54:15 63:15 63:17
**identifying**
34:18 35:4 39:15,19
**if**
5:22 8:14 9:18 10:7 10:10,17 11:5,8,25 13:2,7 16:2 20:12 21:9 25:18 26:8,20 28:20,23 32:2 33:8 35:5 41:10 42:8 45:2,10 46:19 47:6 47:23 48:8 49:6 50:1,18 52:14,16,16 55:2,10,16,25 56:7 56:7 57:2,4,23 58:11,12,19,23 59:1 59:2,8,8 60:10,21 61:13,14 62:1,10 63:25 64:20 68:18 68:21,25 69:6 70:1 70:6,22 71:3 73:9 74:19 75:9 80:7
**image**
17:12 48:14
**imagery**
68:15
**images**
48:25
**implemented**
65:11
**impression**
61:20 62:3,5,6,11,15 62:22,24
**impressions**
35:16 61:12,16 62:4
**include**
7:11 8:1 51:9 64:16
**included**
20:14 21:2 25:25
**includes**
35:4
**including**
9:23 55:22
**incorrectly**
66:21
**independent**
64:16
**indicated**

6:12 10:12
**indicates**
55:14
**indication**
24:2
**Indiscernible**
25:15
**individual**
12:25 13:4 50:17 63:16,17,21 64:3 68:16
**INDIVIDUALLY**
1:5
**individuals**
9:24 64:8
**industry**
35:12 50:11,14
**inform**
24:2
**information**
9:23 12:7 23:9,11,19 23:21 24:6 27:6 31:18 34:15,18,22 35:4,9,23 36:12,21 38:3 39:14,14,15,20 40:5 51:16 52:21 54:2 55:21 70:17 71:17 76:6,13
**infrastructure**
54:5
**initiated**
65:9
**initiation**
64:25
**input**
27:5
**instances**
64:2,4
**instead**
38:12 57:24
**instructed**
53:25
**insurance**
1:10 13:16 27:7 79:3
**interacted**
70:19
**interested**
78:17
**intermediate**
62:25
**internal**
33:3 35:14 36:10,20 38:13
**internally**
46:14
**interrogatories**
3:18 43:12,23 73:1
**interrogatory**
43:20 44:5 54:10,14
**interrupt**
7:4
**into**
8:17 18:6 23:9 45:3 46:23 47:10 53:10 55:5 57:23 63:14 71:21
**introduce**
14:21 41:7,8 56:22
**introduced**
5:13 14:23 15:1
**involve**
22:23
**involved**
40:7 55:12,15
**IP**
24:6
**Isn't**
35:2
**issue**
42:7,8
**item**
67:10
**its**
9:22 18:25 32:12 44:17,21 52:19,25 74:7
**itself**
18:16 21:24 23:8 28:14 59:2 79:8
**it'd**
60:4
**it's**
5:11 7:8 9:19 11:11 18:5 20:12 22:11 26:10,21 30:6,6 31:6 33:25 34:1,2 38:13 47:23 50:6 52:8 55:11 58:23 60:3 61:17,18 66:4 67:7,10,11 68:22,25 70:23 71:6 73:12,25 76:10
**I'd**
37:6 74:6
**I'll**
8:13 13:25,25 17:15 20:5 22:17,18 28:4 28:6 29:9 30:9,20 32:18 34:25 35:1 36:9,12 38:1 41:21 42:2 43:19,22 55:9 55:13,25 58:11,11 58:14 59:13 60:2 62:17 63:14,16 64:20 65:19 75:12
**I'm**
4:6 5:4,13,15,18 6:16 6:17 7:19 8:12 9:2 10:11,15 11:5,18 14:21,21 16:14 17:10,13 22:9 24:1 24:8,9 27:2 29:3,7 29:17 30:24,25 31:22 33:7 34:16 40:9,14,18 41:6,9 42:13 44:7,8,9 45:2 46:25 49:6 50:23,25 50:25 51:20 52:15 53:12 54:9,11,13,14 55:5 56:7,17,17,21 57:19,23 59:1 62:13 63:12 65:4,13,23 66:1,19,23 67:4 69:13,23,23 72:10 72:13,24 73:4,9,13 73:14,14 74:12,19 74:23
**I've**
44:14 45:19 67:5 74:7
**I-C-K-E-R-S**
4:23

## J

**J**
4:22
**JACOB**
2:16
**James**
2:9 37:6 38:7,8,9,20
**james@petersonle...**
2:11
**JEFFERY**
1:5 79:2
**JILIZIAN**
2:4 3:5 4:4,19 6:16 6:24 7:7,17,18 8:13 8:21,24 9:7,9 12:4 12:10,12,14,15 13:12 14:5,17 16:13 18:11 20:21 22:8 23:15 24:8,17 27:19 29:24 30:13,19 35:18 36:8 37:23 38:21 39:11 40:9,16 40:22,25 41:6,17 42:13,20 43:8,15 45:2,6 49:15 56:21 57:12 63:24 64:14 65:6,15 66:3,5 67:2 69:4 70:25 71:5 75:12,19 76:18,21
**job**
76:10
**jobs**
47:1
**Jordan**
1:18 3:4 4:11 13:5 75:5 79:4 80:3,11
**Jordon**
4:22
**journey**
15:22 29:23 55:22 66:25 68:12



MAGNA
LEGAL SERVICES

**JR**
2:15
**judgment**
3:16 30:3 41:14,22 41:25 42:4 43:3 63:13
**July**
58:24 59:24 60:13
**J-O-R-D-A-N**
4:22

**K**

**keep**
57:4
**kind**
41:8 44:9 47:11 51:2 51:3,3 57:22 62:13 70:5 72:22 74:1,25
**knew**
52:16 55:10
**know**
13:7,9 20:12 23:2 26:8,20 27:10,22,24 27:24 28:23 32:15 33:9,11 38:2 39:16 39:18,21 40:2 42:25 43:22 45:3 46:4,16 47:2,6,8,11 49:3,8 51:3 56:7 57:25 58:7 59:12 61:2,3 61:23 62:1,10 63:10 63:25 64:6 68:25 73:9 74:14 76:2,11 76:13
**knowledge**
74:3 76:10

**L**

**labeled**
15:6
**lander**
27:4 46:20
**landing**
48:4
**language**
9:25 11:18 26:1 28:1 28:11,14 34:10 49:1 49:10,10,18,22,24 49:25 50:5,10,15,22 51:14 52:6
**last**
6:18 13:13 17:2 43:8 75:13
**later**
54:19 76:4
**laundry**
16:21
**law**
2:3,8 41:24 43:4 50:14
**lawsuit**
54:17
**LAWYER'S**
81:1
**lead**
5:3 6:14,15 10:14,15 10:19,20,23,24 11:4 11:6,6,7,8,10,10,12 11:14,19,20 12:3 24:6 25:2 35:24 40:7 44:16 51:10,16 52:18 54:5 55:21,22 55:23 58:4,5,17 60:15,18,24 61:3,6 61:14,16,25 62:2 64:7,16 71:10
**leads**
35:13,14,17 61:9,10 62:17 70:20
**least**
16:7 65:9
**left**
26:20
**legal**
12:21 31:6 42:3 72:15 75:1
**length**
63:8
**lesson**
42:3
**let**
15:2 26:20 43:22 57:25 63:14,25 70:1 70:13 73:9 74:14 75:15
**let's**
40:20 61:23 70:14
**like**
8:3 12:6,8 15:23 16:2 19:6 22:2 26:24 27:5 33:4,7,8 34:9,9 34:20 38:12 41:24 46:4,7,9 47:3 49:6 49:17 50:14,17 51:4 52:1,5,7 55:11 58:12 64:5 66:23 67:12 72:18 73:12 73:17 74:6 76:9
**likely**
57:17
**limitation**
37:15 39:2
**LINCOLN**
2:4
**line**
18:17 26:5 28:2 45:3 48:12 62:14 81:2
**lines**
18:21 19:7 28:7
**list**
19:5,24 22:23 70:20
**listed**
5:1 7:20 19:10,16 22:12 28:9,14 45:19
**lists**
60:3
**litigation**
16:4 25:23 38:6 54:21 55:16 58:17 64:25 65:8,12
**little**
7:8 12:2 44:10 51:4 64:21
**LLC**
1:11 13:16 40:2 51:23 52:6,7,9,10 79:3
**location**
78:7
**logo**
26:21
**long**
45:3
**look**
5:19 17:16 28:16 36:12 48:11 55:16 59:4 68:22 72:22 73:6 75:1,16 76:13
**looked**
15:23
**looking**
8:22,24 15:12 18:16 18:20 19:21 20:14 28:1 32:1,15 34:10 44:11 51:20 54:14 58:2 59:9,22 60:12
**looks**
31:6 52:1 55:11 58:22,24 66:23 67:12
**lot**
32:15 36:13 72:15 74:25 76:10
**loud**
74:9,14

**M**

**MA**
2:5
**Madam**
4:4 24:10
**made**
28:20 60:19 61:1 78:12
**main**
32:6
**maintain**
32:11
**maintained**
44:19 52:22
**maintaining**
11:14
**maintains**
44:16 52:18

**make**
9:17 50:16 55:3 60:11 66:22 79:7
**makes**
42:8 51:15
**making**
63:1
**manually**
23:5,6
**many**
31:25 32:21,25 33:3
**mark**
6:18 24:11 30:13 41:12 42:15 43:10 57:6
**marked**
6:21 7:13 17:12 24:15 30:16 41:15 42:17 43:12 44:8 57:9 67:4 70:24 72:25
**marker**
47:23
**marketing**
5:2 6:15 10:14,19,24 11:4,7,9,10,12,19 12:8 18:25 19:1,4,9 19:12,18,21 21:3,11 21:25 28:9,13 33:15 33:17,25 34:9,21 35:14,25 37:5 40:6 45:12 46:12,13,16 46:18,24 47:13,15 47:17 49:8 51:6,10 51:12 55:22
**marks**
79:7
**match**
21:12
**material**
42:6 44:13
**MATT**
2:15
**matter**
10:2
**may**
4:15 28:20 66:20 69:18
**maybe**
8:11 9:19 11:25 40:11 57:5 68:21 69:6,6 75:24
**me**
5:16 8:16 10:6 13:2 14:22 15:2,13 16:1 16:2 20:20 21:14 22:13 23:14 26:20 30:11 41:11,11 42:24 43:16 44:11 44:15,22 45:11 46:6 46:22 47:12 48:12 48:19 49:6 50:23,24 54:12,23 57:2,25 61:10 62:3 63:14,25 63:25 66:17 68:25 70:1,13 73:9,16,18 73:25 74:13,14 75:15 78:7 80:5,13
**mean**
13:8 18:12 36:4 37:14 39:14 48:2,3 48:4,21,23 50:4,8 58:12 60:1 68:13,14 73:12
**meaning**
68:12
**means**
48:9
**mechanism**
43:23
**Med**
48:13,18
**Media**
19:6
**Medicare**
25:4 28:10
**memorandum**
41:23 43:4
**mentioned**
19:25 76:7
**merely**
21:2,16,24
**messages**
18:24 28:8
**microphone**
64:22
**might**
8:5 16:11 40:12
**military**
59:3,24
**minute**
50:23
**minutes**
6:4 40:13
**misheard**
66:21
**missed**
27:20 75:24
**MISSOURI**
1:2
**mistake**
8:5 9:1,3
**model**
61:18 62:2,3,15,22
**modification**
7:25
**Monday**
1:19 6:2 79:5
**months**
60:17
**more**
9:5 11:2 18:20 51:4 56:22 64:21 68:6 75:15 76:2
**Morgan**
2:16 53:17 65:18 76:2
**Morgan's**
5:24
**morning**
4:20,24
**most**
57:17
**motion**
3:16 30:3 41:14,22 41:24 42:3,4 43:3 44:10 63:13
**motivated**
65:9
**move**
12:16 30:8 40:10 56:24
**moving**
65:17
**MSJ**
44:8,9 58:13
**much**
46:3 49:2 50:6
**mute**
66:12
**my**
5:5 6:25 8:11 9:1,3 9:16,19 12:2 14:22 17:13 18:23 19:17 37:18 47:9 50:4 53:4 54:4 60:22 62:13 67:12 73:13 74:25 76:20 78:13 80:15

**N**

**N**
2:9 3:2 4:1
**name**
4:21 17:2 21:1,7,15 21:24 25:13,25 39:22,23,24,25 42:25 46:14 48:22 72:19,19
**narrating**
68:3
**National**
28:20
**nature**
16:1 62:19
**navigate**
28:15
**near**
44:18 52:20
**necessarily**
12:20 13:9 16:3 19:10 20:4,5,8 27:1 35:6 50:16
**necessary**



MAGNA LEGAL SERVICES

54:2
**need**
9:18 10:17 13:2 32:3 40:2 50:19 52:14,15 57:4 63:25 70:20 73:10
**neither**
78:15
**new**
2:10 8:16 41:7 49:7 49:24
**next**
10:4 19:7 22:10 24:10 30:8 40:10 53:3 72:14 74:13
**NIMROD**
2:15
**nine**
60:16
**no**
1:3 3:11 6:1 8:3 10:7 13:10 15:11 17:19 22:16 23:25 27:9 31:3 32:6,12 33:7 34:11 35:20 36:16 36:23 37:11 38:16 38:25 39:1,5,8 42:6 45:8 51:8 59:16,21 61:15 64:13,15,19 69:4 70:21 72:9 75:23
**noon**
40:19
**nor**
78:16
**normal**
16:3
**not**
8:6,8 9:1,11 10:13 11:13,16 12:24 13:7 14:18 16:3,12,24 19:10,17,20 20:3,7 20:10,16 21:2,16,24 22:3,7,19 24:2 25:17,18 26:12,21 26:25 27:24 28:13 28:21 29:7 30:6,24 31:9,12 32:17,20 33:2,12 34:1,2 35:24 36:7 37:4,25 38:5,6 39:24 42:11 43:7 44:6 45:5,7 46:15,20 47:24,24 52:13,14 53:15,25 55:2,5 56:2,20 57:19 58:2,8 59:1 61:2,8,16 62:12 63:19,21 64:22,23 65:4,13 67:19 68:10 69:22 70:6,12 71:15 72:6 73:14,25 74:19 74:20,24 76:10 79:7
**Notary**
1:25 78:3,22 80:18
**note**
8:11
**noted**
80:8
**NOTES**
81:1
**nothing**
78:10
**notice**
5:11 10:10
**now**
4:2,7 5:4,18 6:16,17 7:8 8:12,21,24 9:12 9:17,19 10:12 20:14 34:10,16 37:7 43:9 44:7 47:10 51:1,1 54:9 58:3,21 62:16 62:19 65:19 66:10 67:14 68:9,23 70:3 73:2,17 76:4
**number**
9:11,12,13,20 11:1 17:22 22:14 23:22 23:23 24:3 26:4,7 26:13,14,17 29:4,15 31:14,15,17 34:14 34:18 35:5,23 36:11 37:7,10,17,20 38:11 38:15,22 39:15,19 45:10 53:6 54:14 57:14 59:11,12,14 59:19 64:17 70:14 70:17 71:17,20,22 71:25 72:3,7,18
**numbered**
3:14 15:8 24:12,14
**numbering**
17:15
**numbers**
3:13 7:10,13 9:24 10:20 22:12 24:5 33:9 65:2

**O**

**O**
4:1
**object**
13:11 14:3,16 16:9 18:8 20:18 22:6 23:12 27:16 29:20 35:10 36:2 37:21 38:18 39:7 42:10 49:12 63:23 64:12 65:3,10 75:12
**Objection**
70:25
**objections**
32:4,5 71:5 78:12
**observe**
73:11
**OBSERVING**
2:15,15
**obtain**
51:16
**obtained**
12:8
**obviously**
50:8
**occurred**
58:23
**off**
5:17 7:5 8:15 35:16 41:1 61:12 65:19 66:6 67:7 68:19 76:19,22
**offer**
25:21 48:7,8,10
**offered**
51:5
**offers**
18:15 27:7,9
**offhand**
63:11
**Officer**
51:6
**oh**
8:18 30:9 40:18 41:11 50:18 58:23 59:1 74:2 76:21
**on**
1:6 2:3,8 4:3 6:13 7:24,24 8:7 9:1,3,4 9:16 10:2,6,7,13,19 11:14 12:16 13:20 16:22 17:1,4,15,21 19:5,12,23 22:12 23:10,16,18 25:18 25:19 27:3,7,22 28:20 29:10,10 30:8 37:6 38:7 40:18 41:5 48:18 50:10,17 53:16 54:1 56:24 57:20 58:5,17,23,24 59:2,24,25 60:9,15 61:15 64:22 65:17 66:10,12 67:6,12 70:2 72:13 73:2,13 75:12,17 76:4 78:7 78:8 79:7
**once**
38:19 57:16 73:25
**one**
18:10,12 19:12,23 31:9 36:19 37:7 44:1 50:7,23 56:22 61:15,16 64:7 67:23 68:9 70:13 75:15
**one-to-one**
21:10
**online**

47:18 52:21
**only**
25:11,23 32:18 49:13 63:2 67:7 68:24 69:19,21
**operated**
51:22 52:11
**operating**
62:1,10
**operations**
51:10 57:20
**opposing**
15:21 43:25
**opt**
18:6,14,14
**opted**
25:20 33:16 61:13,15 69:15
**opting**
27:9
**opts**
34:19
**opt-in**
18:4,6 25:2,9 67:20
**orchestrated**
48:22
**order**
7:9 19:11,13 21:10 28:16 70:22
**ordered**
71:3
**ordinary**
44:19 52:22
**original**
31:22 32:1 36:6,14 36:15,22 54:18 62:14
**originate**
33:4
**originated**
33:13,15 64:5,6,7,9
**originating**
63:20
**other**
9:25 18:14 19:5,15 23:10 27:1,6,8 34:20 39:15,19 40:6 43:24 54:16 61:11 63:16,17 64:2,8,8 65:13
**others**
71:10
**otherwise**
23:25
**our**
21:7 28:9 30:7,22 31:7,7 33:16 34:20 35:12,15 47:18,18 48:7 49:13 50:3,9 50:10,10,10 52:23 52:24 54:4,6,7 55:6 61:13,14
**out**
7:8 30:10 45:10 48:12 49:9 54:4 63:20 74:9,14
**outbound**
38:25
**outside**
11:8
**over**
9:8 20:6 68:18
**oversight**
51:10
**own**
10:6 33:12 35:15 47:6
**owned**
14:9 34:1,2 45:17,25 46:5,10 51:22 52:11
**ownership**
46:4,25 47:2
**owns**
23:20,24 24:4 34:3 52:6
**o'clock**
40:18

**P**

**P**
4:1
**page**
3:4,11 5:16 7:20 16:16,20 17:1,4,7 17:10,14,16,21,21 22:10,14 25:19 26:24 27:3 44:12 45:9 48:4 73:5,11 73:25 74:7,13,13 78:8 81:2
**pages**
14:25 15:2 16:15 27:1 69:20 80:4
**Page/Line**
79:9
**paid**
62:23
**pairs**
43:4
**paragraph**
44:12 45:10 51:20 53:3
**parent**
46:10 47:4,5 52:2,8 52:11
**PARONICH**
2:3
**part**
9:1,3 17:11 35:5 49:24 53:4,22
**partial**
16:7
**partially**
65:9
**parties**
33:4 37:19 38:15 39:4 43:24 54:16 68:6
**partner**
21:3 28:15
**partners**
18:25 19:1,5,9,12,18 19:21 21:11,25 28:9 28:13
**party**
13:24 14:1,8,14 33:14,18,24 37:9,16 38:4,13 42:4 43:25 71:21 78:16
**paste**
50:6
**path**
16:5 18:13,14 68:13 68:15 69:19
**pay**
35:15 61:12,15,20,20 62:1,2,2,3,5,6,6,10 62:10,15,15,16,21 62:21,24,24
**pay-per-click**
61:18
**pending**
78:16
**per**
61:20,20 62:2,2,2,3,5 62:6,6,10,11,15,15 62:21,21,24,24
**percent**
74:24
**Perfect**
4:7 70:10
**perfectly**
69:4
**performing**
47:24
**perhaps**
8:16 12:2 69:7
**period**
21:6 51:17
**periodic**
50:13
**person**
23:19,20,21,24 24:4 64:6,17
**personally**
23:8,20 24:4 31:12 42:11 44:6
**PERSONS**
1:6
**person's**
21:13
**pertaining**
5:2
**Peterson**

2:8,9 3:6 5:24 7:3 7:16 8:10,18,23 9:5 11:25 12:5,11 13:11 14:3,16 16:9 18:8 20:18 22:6 23:12 27:16 29:20 35:10 36:2 37:21 38:18 39:7 40:14,20,24 42:10 49:12 63:23 64:12 65:3,10,20,23 66:1,4,11,16,19 67:3 69:2,5 71:2,8 75:14,20 76:16,20
**phone**
17:22 26:3,7,13,14 26:17 59:11,12,14 59:19 64:17 65:2 72:3
**pizza**
70:23,24 71:3,4
**place**
46:17 65:1,8
**placed**
48:8 67:6
**placement**
45:14,14 46:24 48:6 48:9
**plaintiff**
1:8 2:3 20:4,4,7 22:20 23:8 26:8 27:22 28:23 58:4 59:10 60:18,20 64:9 69:14 71:10 72:3
**plaintiffs**
20:11 29:9
**plaintiff's**
31:17 33:6 34:14,17 35:4,23 36:11,21 37:9,17,20 38:3,15 39:13,19 53:6 55:21 59:14,19 60:15,24 61:25 69:25 70:11 70:17 71:16,22,25 72:7,19 73:1
**plans**
25:5 28:10
**platform**
11:3 33:15,17,25 34:9,21 45:12 46:24 47:13,15,17 48:22 51:12 55:6,7 61:10
**platforms**
35:14,25 37:5 46:13 46:18 65:5
**please**
4:9,20 18:20 28:5 32:2 41:10 57:1
**point**
20:16,25 32:6 40:12 56:24 67:23 68:9 74:25
**policies**
38:24 39:5 65:1
**policy**
28:16 39:10 63:7
**portion**
25:4,5 51:21 67:8,11
**position**
69:14 71:10,15,24 72:2,7
**possession**
23:17 32:13
**possible**
20:12 21:1
**practical**
70:8
**preparation**
12:17 15:16 24:22
**prepare**
12:21
**prepared**
6:8 7:23 8:7 10:1,7 10:19,25 11:5,13,21
**PRESENT**
2:14
**preserving**
55:15
**pretty**
49:2 50:6
**previous**
58:13 69:17
**previously**
15:1 33:21 45:24 46:7 67:15
**primary**
45:14 48:9
**prior**
51:14 69:19,19
**privacy**
28:10,15,16 63:7
**probably**
56:23 60:9
**problem**
9:1
**proceed**
4:15
**process**
52:21 64:15 67:21 68:3
**procured**
14:7
**produce**
20:10 22:4 25:17,24 37:2 67:24 68:10
**produced**
15:7,25 22:4 23:17 25:12 29:2,3,14,21 30:21 34:25 35:21 36:5 37:25 38:5,6 38:17 39:2,6 54:19 56:1,4,12,18 57:3 57:13 59:17,18 60:21
**product**
50:18
**production**
29:11 31:8 44:17,23 45:1 52:19 53:10,16 54:3 69:25 71:20
**products**
27:7,8
**programs**
65:5 76:6
**prompted**
27:6
**property**
45:13 47:14 48:3,3,4 51:22
**proposed**
65:12
**propounded**
29:10 80:6
**provide**
16:17 17:22 18:23 24:2,6 29:22 33:1 34:7 38:15 43:25 53:9,16,25 63:22 64:11 69:18
**provided**
14:25 16:10 17:12 23:19,20,22,23,23 24:3,4 26:2,15 27:1 28:25 31:17 32:16 32:25 33:10 34:14 34:17 35:3,8,22 36:7,11,21 37:9,17 37:19 60:25 70:12 70:16,24 71:16,21 71:25 72:3,7
**provides**
16:7 28:7 29:18
**providing**
15:24 19:19 20:8
**Public**
1:25 78:4,22 80:18
**publisher**
45:13 46:14,24 47:13 47:20,25
**purchase**
35:13 61:9
**purchased**
61:6
**purported**
29:5
**put**
7:4 56:23 65:1,8 74:7 75:17
**P.C**
2:3
**p.m**
1:20 77:2

**Q**

**question**



MAGNA LEGAL SERVICES

11:3 13:8 19:17 20:20 23:13 29:1 32:23 37:18 39:17 46:6 50:4 53:13 54:24 55:19 60:22 62:14 72:1 75:13
**questioning** 45:4 55:9 65:16
**questions** 43:24 44:24 45:15 54:8 57:20 65:24 80:6
**quick** 31:14 40:15 66:1 68:19 75:16
**quickly** 57:6
**quite** 37:8,14

**R**

**R** 4:1
**raise** 4:9
**rather** 13:4 23:9 35:24 37:5 43:25
**RE** 79:2
**reach** 26:24
**reached** 27:13
**read** 10:18 18:21 44:15 45:10 48:12 57:2 65:22 73:5,10 74:6 74:8,9,9,13 76:20 80:4
**reading** 18:2
**reads** 51:25
**ready** 28:6 67:10
**real** 31:13 57:5 75:16
**really** 48:17 68:19 73:12,14
**reason** 5:25 15:10,25 17:17 22:15 23:25 30:23 31:11 35:20 39:5 42:9 43:6 44:3 58:18 59:14,19 73:13 79:9
**recall** 68:11 69:25 74:21
**receive** 18:24 19:19 28:8 33:1 61:14,16 63:19 69:15
**received** 60:18 63:18
**receiving** 28:24 63:16
**recess** 41:3 66:8
**recognize** 5:8 24:18 41:18 42:21 43:16
**recommended** 53:17
**record** 4:3,21 8:15 9:4 10:15 10:20,24 11:7,11,14 11:14,20 12:1 13:20 13:20,23 14:1,6,7 33:6 41:1,5 45:12 47:12 65:19 66:6,10 76:19,22 78:12
**records** 3:19 6:15 11:11 12:3 32:16,17,19,25 33:2 33:3,5,13 44:17,18 52:19,19,24 53:4,5 53:22 54:6 55:23 57:9,15 59:18,18
**refer** 37:6 38:7,8,20 48:6 49:17 64:6
**referral** 63:19,19 64:8
**referred** 29:8 49:11
**referring** 21:18 33:5 36:18 39:22 54:4 55:18 56:6
**refers** 13:15 30:4 46:15
**reflect** 9:24
**regarding** 9:15,21 36:10,20 38:14,20,20 39:9,9 54:17 56:13,13
**regards** 21:7
**Registry** 28:21
**regularly** 44:20,20 52:23,25 53:4,21
**reiterating** 36:14
**related** 6:14 38:23 54:20 55:23 69:19,21 78:15
**relating** 38:24
**relation** 14:12 33:23
**relationship** 51:11
**relationships** 51:11
**relevant** 51:17
**relied** 44:21
**relies** 52:25
**remain** 63:8
**repeat** 27:20 53:13
**rephrase** 13:25 32:18 35:1 63:25 64:1
**Reported** 1:23
**Reporter** 1:24 4:2,5,6,14 24:10 41:1,5 65:21,25 66:6,10 76:22 78:1 78:3,22
**represent** 17:15 22:13 29:9 30:20 35:7 41:21 42:2 43:19 58:11,14 58:19 59:13
**representation** 68:3
**representative** 13:3
**represented** 5:22 70:8
**representing** 31:16 34:13 70:8,15
**reproduced** 22:11
**request** 29:11 31:7,8 32:7 37:7 38:22 69:25
**requests** 15:8 29:10 30:22 70:11 71:19,20
**reserve** 55:9
**responded** 31:23 36:22
**response** 15:8 29:4,13,15 30:22 31:22 32:1,10 32:11 36:14,15 38:17 43:25 51:8 53:12 54:18,20 64:13 65:8 72:9,25 75:23
**responses** 3:15 9:22 30:16,21




MAGNA LEGAL SERVICES

31:7,10,21,24,25 36:13 43:20 44:5 54:11 69:24
**responsibilities**
51:9 53:5,22
**responsive**
32:7,12 34:11 35:7 35:21 36:16,23 37:11 38:16 39:1 54:19
**rest**
8:13
**revealing**
12:20
**review**
4:25 10:6 12:17 15:16 24:21 32:2 51:13 53:4,21 63:10
**reviewed**
5:2 31:12 32:2 42:11 44:6 53:5 75:10
**reviewing**
4:25 51:13 76:5
**revoke**
28:24
**RFP**
29:4,15 31:7,14 34:11 35:7,21 36:9 36:19,24 37:1 38:17
**RFPs**
44:1
**right**
4:4,9 5:4 8:23 9:12 10:12 13:24 14:14 17:10,20 18:18 19:11 20:14 22:4 24:21 25:4 28:15 29:14 30:9 32:4,22 33:24 37:8,15 40:17 41:6 43:9 44:7,12 46:8 49:5 50:6,17 58:3 59:4 65:15,21 66:6 68:23 70:3 73:17 74:19 75:22 76:7,14,16,16,19,22
**righty**
76:18
**right-hand**
30:1
**roles**
46:23
**roughly**
6:3 36:5 60:16
**row**
41:9

**S**

**S**
3:9 4:1
**safeguards**
65:7,13
**said**
11:19 13:13 22:2 23:3 33:21 38:25 49:5 52:17 53:3 54:18 55:7 67:23 68:9 69:18 72:18 74:20,22 76:1,4
**sake**
68:3
**same**
10:23 11:17,18 37:1 40:22 45:9,21 50:3 50:22 68:20,20,22 68:22 69:1,2 71:5 72:22 75:1 80:4
**sample**
20:1,9,23 22:5,19 23:1
**saw**
8:10,19 16:11,12 20:11 44:1 61:13 69:15 75:21
**say**
12:11 13:15 27:9 32:25 33:5 34:23 35:2 36:4 39:14,21 40:10 49:18,22 50:5 52:9 53:20 60:9 61:11 65:7 70:20
**saying**
25:9 26:11 33:7 38:8 53:24 56:17 59:22 62:17,22 68:11
**says**
18:23 32:11,12 51:9 51:20,22 55:14,20 59:2 70:15
**scenario**
68:20
**scope**
54:4
**Scoredit**
13:20,24 14:2,8,9,12 14:13,19 18:17,25 19:19 21:17,20 23:7 23:16 24:1 25:19 27:5,18,21 32:22 33:4,18,20 34:5,16 34:24 35:2,24 37:3 37:18 38:4 45:13,20 45:25 46:8,10,20 47:3,7,14 48:3 51:22 52:2,7,10 62:9,21 63:20 64:5 64:7
**Scoredits**
45:14
**Scoredit's**
19:9 27:12 34:24 69:21
**screen**
5:5,5 6:25 9:16,19 14:22 15:3 17:13 66:23 67:6,12,14 70:3 73:2,13 75:17
**screenshot**
7:5
**screenshots**
7:10
**scroll**
5:15 7:19 16:14 36:9 54:11 68:21 69:8 73:4,24 74:12
**scrolling**
10:23 15:13 16:19 51:2
**second**
10:18 14:23 18:17,21 26:5 28:2 48:8,11
**section**
44:13,14 55:17
**see**
5:5,20 6:2,6,11,25 7:20 8:21,21,24 9:13,16,17,19 15:3 16:16 17:1,4,4 18:17,18,21 19:2,6 19:7,11,24 26:4 28:2,7,10 29:25 30:1,10 31:15,18,20 31:21,24 32:7 36:16 36:24 37:12 41:25 42:1 47:23 48:11 53:1,6 54:21 55:23 57:15 58:13,23,25 59:2,5,7,8,9,10 63:6 67:5,7,14 68:24 69:4,9 70:2,5,7 71:19 72:15 73:1,16 73:17,19 74:2 75:4 75:16
**seeing**
69:1,2 70:6,10 73:23
**seeks**
29:5
**seem**
16:21
**seems**
8:3
**seen**
20:4,8 22:20 25:20 67:20 68:17 74:21
**sell**
61:9
**selling**
50:18
**sells**
35:13
**send**
8:16 49:9
**sending**
38:25
**sends**


MAGNA Legal Services

34:21
**sense**
42:8
**sensible**
49:19
**sent**
5:23 22:13 31:8 35:5
38:3 39:13,18
**sentence**
45:11
**September**
58:6,18 60:16
**served**
23:3
**serves**
18:6 25:9
**service**
63:7
**services**
27:8 34:7
**set**
73:1
**setting**
49:2
**several**
19:5 32:4
**share**
5:4,18 14:22 15:2,3
17:13 54:13 66:23
66:24 67:4 70:1
72:24
**sharing**
17:11 24:9 72:13
**Sheet**
79:1 80:8
**shift**
51:4 68:18
**shortly**
5:23 22:13 46:24
**should**
37:5
**show**
10:16 16:11 39:4
60:2
**showed**
31:1 38:2 43:5 61:14
69:22
**showing**
21:7 67:10 73:25
**shown**
9:11 16:25 21:19
48:8,10
**shows**
48:7
**side**
12:6
**signature**
18:23 75:7
**signed**
75:9
**significant**
42:6
**significantly**
35:22
**silly**
9:3
**similar**
31:6 36:19
**SIMILARLY**
1:7
**since**
35:7
**sitting**
7:23 8:6 39:12 44:25
**SITUATED**
1:7
**slash**
62:21
**slides**
67:19,24 69:19
**SMS**
18:24
**SMYRNA**
2:10
**sold**
61:3,7
**Solution**
25:18
**Solutions**
1:10 9:14 13:3,8,15
13:16 14:13 15:9
16:6,16 20:15 21:1
22:23 24:2,12,14
25:13 28:9 29:14,18
32:18,20 33:24 34:3
38:5 39:16,20 40:6
43:21 44:16 47:16
49:23,23 51:15
52:18,24,25 56:9,9
56:11,18 57:13 58:2
58:3,5,15 59:17
60:14,17,19 61:1,4
61:7,24 62:20,23
63:7,18 67:19 68:10
70:12,18 71:11 72:4
72:8 73:21 79:2
**Solutions's**
7:24 9:21 21:15,23
25:25 27:14 29:11
33:3,12 41:22 44:4
44:20 52:23 69:14
71:9,15,24 72:2,6
76:6
**Solution's**
26:21
**some**
9:25 16:20 17:24
23:10 30:22 31:8
58:5 62:25 64:21
65:1 70:11
**someone**
23:9 35:13
**something**
8:14,15 27:14 40:2
47:25 69:7 76:1
**sorry**
4:6 5:13,14,16 6:12
6:17,18 7:3 8:18,25
9:2,3,7,17 10:9,11
12:16 13:24 14:22
16:19 18:22 20:5,13
22:17 23:19,22 24:8
25:16 26:12 27:20
28:3,16 29:3 30:9
30:25 32:18 34:25
38:1 40:18,19 44:5
44:8,11 45:2 49:22
50:23,24 52:18
53:12,14 54:11,12
54:12,18 55:12 58:4
58:23 59:1,18 62:2
62:8,9,17 63:16
64:3,20 72:10 75:24
**sort**
17:25 20:1 25:13
62:25
**sorts**
37:24
**sounded**
49:6
**sounds**
52:5,7 76:9
**so-called**
46:13
**speak**
11:5,21 64:21
**speaking**
72:15
**speaks**
10:1
**specific**
18:15 21:10,13 22:3
27:9 42:25 57:20
**specifically**
18:20 21:19 62:1
70:14
**specificity**
21:6
**specify**
63:8
**speculate**
52:15
**spell**
4:21
**SQL**
44:17,23 45:1 52:19
53:10,16,24 54:3
75:22
**ST**
2:4
**stage**
26:15
**stamp**
6:2


MAGNA LEGAL SERVICES

**standpoint**
12:9
**start**
7:4 9:8 20:5 73:19
**started**
73:18
**starting**
28:2 70:7
**starts**
9:14
**state**
1:25 4:20
**stated**
78:7
**Statement**
44:13
**statements**
9:15,21
**states**
1:1 28:19 32:4,6,6
**still**
66:12 71:6 73:12 76:5,13
**stop**
17:11 24:8 40:12 72:13
**stopping**
56:24
**stored**
12:7
**straight**
71:11
**straying**
57:23
**strike**
5:17 13:25 20:5 28:4 32:18 34:25 38:1 55:13 62:18 63:16 64:3
**structure**
46:4,25 47:2 52:13
**subject**
32:5
**subjects**
10:7
**submission**
44:18
**submit**
49:16,21
**submits**
49:23 52:20
**submitted**
27:23 43:3,21,21 58:4,5,15,17 60:15 60:24 64:18
**submitting**
23:10
**subpoena**
5:1,15 31:4,4
**Subscribed**
80:13
**subsidiary**
34:3 45:25 46:8 47:3
**substance**
80:7
**subtopics**
8:2
**such**
65:9
**suggesting**
64:24
**suggestions**
41:23 44:9
**SUITE**
2:5
**summaries**
50:25
**summary**
3:16 30:3,10 41:14 41:22,25 42:4 43:3 63:13
**supplemental**
3:15 9:22 30:16,21 31:21,25 32:10 36:13,15,23 43:20 44:5 54:10,17,19 69:24 72:25
**supplemented**
31:24
**support**
41:23,24 44:9
**sure**
12:4 20:22 25:18 46:7 52:13,15 56:20 58:8 59:1 65:4,13 66:3,22 72:2 74:19 74:24 76:21,21
**swear**
4:8
**sworn**
4:11 78:9 80:13
**system**
8:11 26:9,11 34:20 35:6 57:21

**T**

**T**
3:9
**take**
6:17 18:20 24:9 28:3 28:5 32:2
**taken**
41:3 66:8 78:6 79:5
**takes**
26:14
**taking**
66:1
**talk**
10:25 70:13
**talking**
21:19 38:9
**talks**
55:15
**TCPA**
18:4 23:3 25:2,9,14 26:1 29:19 49:1,10 49:16,17,18,21,23 50:22
**tech**
12:6
**technically**
14:13 22:11
**technology**
8:4
**telecommunications**
49:8
**telemarketing**
18:7 19:20 28:24 33:1
**telephone**
23:22,23 24:3 31:17 34:14,18 35:5,23 36:11 37:10,17,20 38:15 39:15,19 53:6 69:15 70:17 71:17 71:22,25 72:7
**tell**
10:6 21:14 23:18 57:2,16 73:16
**tells**
42:5
**ten**
40:13 60:16
**ten-month**
60:23
**terms**
63:7 70:18
**testified**
4:12 45:24 46:7 49:7 51:12 53:8,14 67:15
**testify**
6:8,13 7:24 8:7 10:2 10:7,19 11:6,13 51:5 78:9
**testifying**
10:13 12:24 13:2
**testimony**
3:4 5:24 12:18 31:9 53:10,16,25 66:21 69:17
**text**
18:22,24 19:10,22 20:15 21:2,15,16,24 22:24 25:8 28:8 33:11
**than**
13:4 23:9 44:1 54:16 64:9
**thank**
4:4,7,14 7:16,17 12:14 15:24 22:9 25:22 35:19 40:24 40:25 61:17 66:11
**that'll**




MAGNA LEGAL SERVICES

40:19 56:23
**that's**
12:7 17:18 25:4,22 34:7 35:19 40:17 46:15,22 47:22 48:21,22 51:7,25 54:4 55:18 60:8 65:16,18 70:1 74:2 75:19
**their**
20:8 23:8,10 26:13 26:14,17 27:5 28:24 39:22 41:22,23,24 41:24 43:22 46:17 46:23 58:16 60:19 60:25 61:10 62:8
**them**
26:17 31:10 32:21 36:13 46:15 62:25 70:19
**themselves**
23:5 26:13
**then**
8:1,11,14 10:4,9 11:17 14:24 17:4,5 17:7 19:4 25:8 27:6 27:8 31:14,23 32:10 33:16 34:25 36:22 43:8 45:9 46:20 47:20 48:6 52:6,17 55:20 56:23 57:5 59:23 62:5 68:18 71:19 72:20 74:12 74:13 76:4,19
**there**
9:25 11:3 17:24 23:11 31:20,25 40:6 45:15 48:17 49:5 51:25 53:1 58:25 60:9,23 61:6 62:24 64:25 72:10
**therein**
80:6
**thereof**
78:17
**there's**
9:25 31:22,24 42:6 56:15
**these**
8:14 10:5,6,7,13,18 15:2 19:13,23 28:13 29:21 30:20 31:10 31:20,25 36:4,13 37:2,24 38:2,5 39:4 43:19 44:4,24 45:19 46:12,17,25 49:17 50:24 52:10,19 53:4 53:22 55:14 59:10 59:17,18 64:21 65:2 67:19 75:1
**they**
18:13 19:12,19,20,22 22:4 23:6 24:6 27:5 27:6,8 28:20 32:21 33:15 34:17,19,19 35:3,7,25 36:7 45:20 47:1,6 50:24 56:11 60:17,19,25 61:9 63:21 64:6,10 72:22
**they're**
17:1 31:21 32:17 34:8,8 62:10
**thing**
69:9 73:23 74:8
**things**
57:23 66:20
**think**
8:11,18,23 9:5 40:16 55:18 56:23 60:4 65:17 74:5 76:4,7
**third**
13:23 14:1,8,14 33:4 33:13,18,24 37:9,16 37:19 38:4,13,14 39:4 48:8 54:16 71:21
**third-party**
51:12
**thoroughly**
75:10
**those**
10:25 11:21 12:8,21 19:12,21 24:5 27:9 28:16 33:2,12,13 35:6 36:7 44:17 50:13 56:1,4,11,18 59:25 61:15 62:23 65:7
**though**
19:4 25:23 50:12 53:8,15,21 62:14
**thought**
67:23 68:9 74:20
**three**
62:23
**through**
8:13 9:16 10:16,21 15:13 16:14,15 18:2 18:17,21 27:12,13 27:17,21 28:5 29:4 31:13 33:10 43:22 46:17 51:2,3,23 52:7,9,10,21 54:6 73:5,24
**throughout**
50:9
**Tibrio**
45:13,16,17,20 46:9 46:10,10,18 47:2,7 47:14,24 51:23 52:3 52:6,7,9,10 62:9,20
**time**
4:2 6:2 20:17,25 21:6 21:18,20 28:5 32:2 40:19 44:18 50:8 52:20 59:3,24 60:4 61:24,25 63:8 64:19 64:23 68:17 69:22 78:7,12
**times**
36:22 37:10
**timestamp**
24:6
**title**
51:6
**titled**
25:4 44:13 60:3
**today**
4:24,25 7:23 8:6 11:22 12:17,22,25 15:17 24:22 39:13 44:25 51:5 52:16 56:1 62:6,10 65:17
**told**
64:10 73:18
**too**
8:23 36:13 42:14 57:2 73:9
**top**
25:4 26:20 67:7,11 68:20 72:19
**topic**
7:20 8:3,7,19 9:12,13 9:20 10:2 11:8 54:1 56:13,14,14,16
**topics**
5:1,2 6:7,11,14 10:13 10:15,18 11:20,21 11:22
**totally**
9:1 57:24
**tracked**
57:22
**transcript**
78:8 79:7
**transcription**
80:5
**transmitted**
40:5 59:24 60:6
**transparent**
12:2
**trial**
42:8
**true**
33:2 78:11
**trusted**
65:11
**truth**
78:9,9,10
**try**
22:17
**trying**
8:12 50:12 66:19

**turning**
58:21
**two**
56:11
**type**
16:20 26:13 42:4
**typed**
23:8 26:7 78:11
**typically**
35:12 46:13

U

**Uh-huh**
49:20 73:8
**Uh-uh**
58:20
**umbrella**
45:21
**unaffiliated**
14:13 33:24
**Uncontroverted**
44:13
**under**
11:11 21:3 29:19 35:6 37:4,19 45:17 45:21 52:3 62:1
**understand**
15:24 45:4 53:23 55:10 62:16 70:6
**understanding**
13:19 15:22 29:22 47:9 62:19
**understood**
61:19
**uniquely**
49:25
**UNITED**
1:1
**until**
66:4
**up**
8:15 27:3 40:20 58:24 64:21 69:8 70:19 74:7 76:13
**update**
50:9
**updates**
50:13
**upload**
49:1,8
**upon**
44:21 52:25
**upper**
29:25
**UPS**
71:4
**us**
6:17 15:7 23:17 24:9 29:14 31:1 34:22 46:16,19 47:23 48:7 56:23 65:12
**use**
7:25 11:18 43:24 51:14 70:14
**user**
23:5 26:12,24
**utilize**
35:14 49:13 50:3 62:7
**utilizing**
50:21

V

**V**
1:9 4:22 79:2
**vague**
12:3
**valid**
63:9
**vendor**
10:14,20,24 11:7,19 34:13 35:8,12,12 37:15 38:23 39:2 51:10 61:9 70:16 71:16
**vendors**
31:16 35:17,22,24 36:10,21 37:4 40:7
**verbatim**
63:11
**verification**
64:16
**verify**
8:12 23:7 65:1,2
**version**
15:1 22:11,14 33:11
**very**
22:17 36:19 38:11
**Via**
2:1
**Vickers**
1:18 3:4 4:6,9,11,22 4:24 5:6,19 9:2,10 12:9,17 13:5 24:18 30:20 41:18 42:21 43:16 57:15 65:16 66:11 67:5 70:2 72:10 75:5,24 79:4 80:3,11
**Victor**
4:23
**VIDEOCONFER...**
1:17
**view**
18:5 19:13
**visual**
68:2

W

**waive**
65:22
**want**
8:14 12:1 40:17 45:4 47:10,11 48:11 49:3 49:9 50:1,5 51:3 53:23 55:3,3 57:22 66:22 67:11,18 73:4 73:6,10 75:15
**wanted**
55:10 57:4 60:12
**was**
4:12 5:22 6:21 7:13 8:20,24 9:1,2,11 12:2 13:23 14:1,24 15:6,21,25 16:10 17:11 22:3 23:17,20 23:22,23 24:15 25:16,18,22,24 26:7 26:7,8,25 27:25 28:25 30:16 31:4 33:8,9 35:5 39:2 40:10 41:3,14,21 42:17 43:2,12 48:16 50:4,12 55:10 57:3 57:4,9,13 58:5,9,17 59:22 60:5,13,15,21 60:24 61:1,3 62:1,5 62:17,21,24 63:3 65:12 66:8,24,24,25 66:25 68:10,25 69:21 70:1 73:17,18 74:23,25 75:17 76:25 78:6,8
**wasn't**
8:19 27:1
**way**
23:10 30:10 34:2,2 50:19
**we**
4:2 5:16,19 6:18 7:4 7:5,7,7,9,10 8:15,16 9:3,18 12:16 13:13 14:20,24 15:1 16:15 17:12,16 20:5,10 22:7 26:2 30:8 31:8 33:5,8 35:13,14,15 35:16 36:4,5 39:8 40:16 44:1,8 46:14 46:23 47:18,22,25 48:8,9,17,21 49:13 50:8,19 56:24 57:4 57:5 58:12,13,23 61:9,10,14,14,15 62:7 64:23 65:5,11 65:19 66:10 69:22 70:13 76:18
**web**
69:20
**website**
14:19 26:14 27:5,13 27:14 46:21 48:4 67:12
**websites**
35:15 47:19


MAGNA
LEGAL SERVICES

**weird**
22:18
**well**
6:14 25:17,21 28:3 29:3 31:13 46:18 47:24 51:12,13 54:3 60:2 61:8 65:15,23 69:8 70:2 73:24
**went**
71:21
**were**
6:12 8:21,23 10:4,5 11:8 16:2 17:16 20:10 22:7 24:3 28:20 29:21 31:5 33:12 35:21 36:5 37:25 38:3,5,5,17 39:1,6 40:6 48:8,9 58:9 61:5 64:25 65:8 70:11 75:21,22
**weren't**
67:24 69:18
**West**
40:18
**WESTERN**
1:2
**we'll**
9:8 24:11 30:13 31:13,14 41:12 42:14 43:9,9 49:16 49:18 51:2 57:6 64:3 65:17
**we're**
9:4 10:9 50:18
**we've**
21:19 40:9,11 65:13
**what**
6:11 8:19 15:19,22 16:1,2,4,10,11,12 16:24 18:3,12 20:11 21:6,7 24:1,24 25:13,22,25 26:11 29:17 33:9 34:16 36:1 37:18 39:5 41:20 43:9 44:8,22 45:1 46:15,25 47:10 47:13,14,20 48:2,2 48:6,17,19,23 49:3 50:12 51:4,25 55:4 55:10 56:5,13 59:25 60:11 62:5 63:18 66:24,24 67:5 68:4 68:14 69:14,22 70:5 73:16,18,19,19 74:3 74:6,21
**whatever**
49:8 73:13
**what's**
67:4 70:2 73:2
**when**
8:4 16:15 20:8 28:6 33:5 34:19 38:8 39:14,21 49:16,21 49:22,23 60:17,18 60:24,24,25 61:24 62:25 65:5 69:15,17 73:17 74:14 76:5
**whenever**
13:14,14
**where**
9:13 34:21 36:18 46:9 47:18 48:7,24 50:15 56:24 58:14 59:5 63:21 64:3,7 67:9 71:4
**Whereupon**
76:25
**whether**
23:18,19 61:3
**which**
6:3,8 8:1 10:4 13:16 13:24 14:8,24 15:1 15:7,25 17:12 19:19 22:4 23:3,17 26:14 27:7,22 29:5,15 31:5 32:25 33:10 34:6,11 35:3,21 36:12 39:13 43:23 44:1,2 51:11,15 52:2 55:19 56:5 57:3 63:17,18 64:4 64:9 73:25 75:17
**who**
23:20,24 24:4 45:16 46:4 47:3,3 54:23 64:17 65:2 70:24
**whole**
42:3 57:19 67:14 68:13 69:9 73:23,25 74:8 78:9
**wholly**
45:25 46:5,10 47:6
**whom**
46:5 47:3
**why**
22:4 37:2,24 38:2,5 38:16 60:23
**will**
4:7 7:7 46:13,17,23 48:24,25,25 57:24 65:21 76:20
**window**
69:7
**with**
5:4,18 7:1 9:14 12:5 12:6,21 13:13 15:14 17:21,25 20:13 21:5 21:23 25:2,25 27:1 29:7 30:5,24 31:16 31:17 33:11 34:6,13 35:8,14,22,23 36:11 36:21 37:9,9,16,19 38:13 40:14 41:11 45:1 47:18 49:9 51:11,15 53:5,23 54:16 55:2,4,21 56:2,3,15 59:20,25 60:11 61:11,18 62:8 63:20 67:16 69:10 70:2,7,8,16,16,19 71:16,25 73:18,20 73:21
**within**
11:4 20:15 22:22,23 28:14 51:23 52:8,11 62:15 76:6
**without**
12:20 15:13 42:2 55:4
**witness**
2:16,16 4:8,13 12:13 13:14 14:4 16:10 18:9 20:19 22:7 23:13 27:17 29:21 35:11 36:3 37:22 38:19 39:8 42:11 45:5 49:13 64:13 65:4,11,21 71:1,6 76:25
**won't**
45:3 60:10,11
**word**
73:5,5,10,10
**words**
72:20
**work**
47:15
**worked**
7:5
**working**
46:19
**works**
18:13 61:10 76:11
**WORRELL**
2:16
**would**
5:25 10:13 11:11 12:9 15:22 16:24 18:4,13 19:11,12,17 19:20,22 20:4,8,14 20:22,25 21:1,6,9 21:12,20 22:20 23:25 25:20 27:2,4 27:5,6,8,11,12,13 27:17,17,21 29:1 36:3 37:3,4 38:7,19 38:19 44:24 46:18 46:20 50:14,15,15 51:17 52:6 54:7,18 54:24 55:19 57:17 60:7,7,23 61:11,12 61:12,14,15,24 63:8 63:10 67:20 68:16 70:19 71:6 75:9



MAGNA LEGAL SERVICES

76:2
**wouldn't**
34:23 35:6 37:18
**written**
18:24 43:25
**wrong**
8:11 49:6 74:20
**wrote**
58:14

**X**

**X**
3:2,9

**Y**

**yeah**
8:10 9:2,6,7 12:12 13:1 14:6 19:17 23:16 32:9,24 34:2 34:8 36:19 40:3,14 40:14,16,16,20,23 48:5,16 49:1 50:4 55:6,8,18 56:17 59:1,5,8 60:10 63:6 63:13 64:1 65:18 67:14 68:24 69:8 70:7 72:12 73:12,14 73:24 74:1,5,5,18 76:18
**years**
36:5 50:9
**yes**
5:7,9,21 6:10 7:7 9:19 10:3,6,8,22 11:12,23 12:13,19 12:23 13:6 14:11 15:5,15,18 18:19 19:3,8 20:2,10 21:4 21:9,9,22 22:1 24:20,23 25:16 26:18,23 30:2 31:19 36:3 37:22 39:8,18 39:23 40:3 47:9,17 48:21 53:14 54:5 55:1,24 58:10 59:4 66:18 67:2,7,22 68:5,8,12,20,25 69:12,16 70:4 71:12 71:14,23 72:5,17,21 72:23 73:3 75:3,6,8 75:11,25 76:3
**yet**
36:7 56:19
**your**
4:7,9,20,25 5:1,14,24 6:7,11 7:24 10:6,12 11:18 12:18,22 13:4 13:19 14:18,25 15:7 15:16 17:11 18:5 22:2,13 23:17 24:22 25:11,24 29:2,10,13 29:17 30:3,21 31:4 31:7,10,24 32:11 33:10,23 34:11 36:10,14,15,20 38:9 38:14,24 39:5 43:2 43:3,20 44:4 47:15 48:24,25 49:1,10 50:7 51:1,4,6,9,21 52:1 53:13,20,22 54:10,16,17,18,19 55:7,11,12 58:14,21 64:10,15 66:21 67:10 69:17 72:16 75:7,17 76:10
**yours**
38:23
**yourself**
74:7
**you'd**
28:15 35:11 58:12
**you'll**
31:21,24
**you're**
8:6 11:13 20:14 21:19 25:9 26:11 28:6 35:20 36:18 37:3 38:8,9 39:21 40:20 45:7 49:2 52:14,16 55:2 56:6 58:8 59:9 62:17 66:11 67:15 69:10 70:6,10 73:23 74:15
**you've**
5:14 51:5 53:24,25 54:16

**Z**

**Zeeto**
14:9 33:19,23 34:5 34:17 35:24 37:3,18 38:4 40:3,5,8 45:13 45:17,18,20,25 46:8 46:15,16 47:2,5,13 47:24 48:7,22 51:11 52:1,5,6,8 54:20 55:21 56:2,3,8,16 61:4,5,8,11 62:8,20 63:2 70:19 71:16,25 72:7
**Zeeto's**
34:24 35:3 51:23 52:11
**Zeeto-owned**
33:20
**ZIP**
16:17
**zoom**
2:1 59:1 69:6

**0**

**0008**
57:14
**0009**
15:9
**0014**
17:17
**0015**
22:14
**0021**
15:9
**0038**
3:14 24:12,15
**02043**
2:5
**04**
3:5 80:4
**06**
3:12
**065**
48:14,19
**07**
3:13
**08/24/2026**
78:23

**1**

**1**
78:8
**1,000**
61:14
**1:15**
1:20 76:23 77:2
**10**
10:16,21 16:16 58:6 58:18
**10th**
60:16
**10:56**
1:20 4:2
**100**
74:24
**11**
9:16 17:1 37:7 38:12 71:20
**12**
7:20 8:7 9:11,12,13 9:17,20 17:4 38:11
**13**
17:7 48:15
**14**
3:13 6:14 7:10,13 10:4,6 17:10,21
**15**
3:13 7:10,13 10:6
**1541**
59:3,24
**16**
6:14 10:4,6
**17**
29:4,7,11,15 74:7

**2**

**2**



MAGNA LEGAL SERVICES

44:12
**20**
80:14
**2024**
15:23 16:11 20:11,16 22:7 25:18 27:25 58:6,9,18 60:16 61:24
**2025**
58:25 59:24
**2026**
1:19 6:3 75:5 79:5
**21**
33:10
**24**
1:19 3:14 6:3 79:5
**2400**
2:5
**25**
10:23 11:1,4
**25C**
11:2
**25-cv-607-BCW**
1:3
**2650**
2:9

**3**

**3**
5:16 44:12 59:24
**3rd**
58:24 60:13
**30**
3:15 11:20,22
**30(b)(6)**
5:15 31:4
**31**
5:1 11:20,22
**32168**
2:10
**347-2682**
26:4
**350**
2:4
**386**
2:10

**4**

**4**
38:22
**41**
3:16
**42**
3:17
**428-2464**
2:10
**43**
3:18
**45**
6:3
**485-0018**
2:6

**5**

**5**
45:10 66:4
**55**
66:4
**57**
3:19

**6**

**6**
7:20 31:14,15 34:11 35:7,21 37:2 51:20 70:14 75:4
**617**
2:6
**641**
26:4
**66**
3:6

**7**

**7**
9:16 36:9,19,24
**7/3/2025**
59:3
**7:14**
6:3
**76**
80:4

**8**

**8**
10:16,20 54:15

**9**

**9**
16:20 33:10 40:17



MAGNA LEGAL SERVICES