**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JEFFERY BLUBAUGH, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTHCARE SOLUTIONS INSURANCE AGENCY LLC,<br><br>Defendant. | | CASE NO.: 4:25-cv-00607-BCW<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

# PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND SUGGESTIONS IN SUPPORT THEREOF

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. FACTS ........ 3

A. Healthcare Solutions' Outbound Telemarketing Operation. ........ 3

B. Healthcare Solutions Relies on a Single, Uniform Category of "Lead" Records as Its Only Basis for Consent, and Has Never Screened Its Calling Database Against the National Do Not Call Registry. ........ 3

C. Healthcare Solutions' Own Call Records Enable Classwide Identification of Every Call at Issue. ........ 5

D. Plaintiff's Experience Is Typical of the Class. ........ 6

III. APPLICABLE LAW ........ 7

IV. THE CLASS ........ 8

V. ARGUMENT ........ 9

A. Numerosity ........ 9

B. Commonality. ........ 10

C. Typicality. ........ 11

D. Adequacy. ........ 11

E. Predominance. ........ 12

F. Superiority. ........ 16

VI. CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 11, 17
*Andrews v. Bechtel Power Corp.*,
780 F.2d 124 (1st Cir. 1985) .......... 12
*Backer L. Firm v. Costco Wholesale Corp.*,
321 F.R.D. 343 (W.D. Mo. 2017) .......... 8, 12, 17
*DaSilva v. Border Tr. of MA, Inc.*,
296 F. Supp. 3d 389 (D. Mass. 2017) .......... 12
*Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*,
343 F.R.D. 581 (E.D. Mo. 2023) .......... 8, 13, 15
*Ford v. TD Ameritrade Holding Corp.*,
115 F.4th 854 (8th Cir. 2024) .......... 13
*Hand v. Beach Ent. KC, LLC*,
456 F. Supp. 3d 1099 (W.D. Mo. 2020) .......... 7–17
*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) .......... 2, 17
*Manno v. Healthcare Revenue Recovery Grp., LLC*,
289 F.R.D. 674 (S.D. Fla. 2013) .......... 16
*Mantha v. QuoteWizard.com, LLC*,
347 F.R.D. 376 (D. Mass. 2024) .......... 17
*Moore v. Club Exploria, LLC*,
No. 19 C 2504, 2023 U.S. Dist. LEXIS 144183 (N.D. Ill. Aug. 17, 2023) .......... 5, 6
*Postawko v. Missouri Dep't of Corr.*,
910 F.3d 1030 (8th Cir. 2018) .......... 11
*Powers v. Credit Mgmt. Servs., Inc.*,
776 F.3d 567 (8th Cir. 2015) .......... 10
*Rattray v. Woodbury Cty., Iowa*,
614 F.3d 831 (8th Cir. 2010) .......... 11
*Saggio v. Medicredit, Inc.*,
351 F.R.D. 141 (E.D. Mo. 2026) .......... 8
*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
821 F.3d 992 (8th Cir. 2016) .......... 7, 9, 10, 14
*Stuart v. State Farm Fire & Cas. Co.*,
910 F.3d 371 (8th Cir. 2018) .......... 14
*Thrower v. Citizens Disability, LLC*,
2022 WL 3754737 (D. Mass. Aug. 30, 2022) .......... 11
*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 10

*Webb v. Exxon Mobil Corp.*,
856 F.3d 1150 (8th Cir. 2017) .......................................................................................... 10

**Statutes**

47 U.S.C. § 227(c)(2)-(3)................................................................................................. 7
47 U.S.C. § 227(c)(5)............................................................................. 1, 2, 7, 8, 10, 16, 17

**Regulations**

47 C.F.R. § 64.1200(c)(2)......................................................................................... 7, 15
47 C.F.R. § 64.1200(c)(2)(i)-(iii)............................................................................. 7, 15
47 C.F.R. § 64.1200(e)................................................................................................. 7

**Rules**

Fed. R. Civ. P. 23(a) ............................................................................................. 1, 2, 8
Fed. R. Civ. P. 23(a)(1)................................................................................................. 9
Fed. R. Civ. P. 23(a)(4)............................................................................................... 11
Fed. R. Civ. P. 23(b)(3)................................................................................ 1, 2, 8, 12, 17

**Other Authorities**

In re Rules & Regulations Implementing the TCPA, 18 F.C.C. Rcd. 14014 (2003)................ 7, 13
William B. Rubenstein, 2 Newberg on Class Actions § 4:87 (5th ed.) ....................................... 17

Pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), Plaintiff Jeffery Blubaugh respectfully moves the Court to certify the National Do Not Call Registry Class defined below, to appoint him as Class representative, and to appoint Anthony I. Paronich of Paronich Law, P.C. as Class counsel. The grounds for this Motion are set forth in the following Suggestions in Support.

## I. INTRODUCTION

Defendant Healthcare Solutions Insurancy Agency LLC ("Healthcare Solutions") placed telemarketing calls soliciting Medicare and other insurance products to consumers nationwide without regard to whether their telephone numbers were registered on the National Do Not Call Registry, and without any process in place to screen its calling lists against that Registry before dialing. This case presents a straightforward application of Rule 23 to a single company's uniform telemarketing practice, one that implicated the TCPA's National Do Not Call Registry provision, 47 U.S.C. § 227(c)(5), in exactly the same way for every person it touched.

The exact private right of action at issue here — for violations of the TCPA's National Do Not Call Registry provision, 47 U.S.C. § 227(c)(5) — is uniquely suited to class-wide adjudication. As the Fourth Circuit explained in affirming a TCPA Do Not Call class judgment after trial:

> The private right of action in § 227(c)(5) offers many advantages for class-wide adjudication. It requires a plaintiff to initially show two things: a number on the Do-Not-Call registry, and two calls made to that number in a year. The damages, moreover, can be set at any amount up to $500 without any actual proof of loss. Other relevant issues, such as the existence of a business relationship between the

> solicitor and the recipient of the call, are likely to be proven by records kept by the defendant company. The problems that so often plague class actions under Rule 23(b)(3) are wholly absent from this scheme.

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 676 (2019). This action meets every one of Rule 23(a) and (b)(3)'s requirements for exactly the reasons the Fourth Circuit identified: the Class is objectively defined and ascertainable from Healthcare Solutions' own records; it is so numerous that joinder is impracticable; Plaintiff's claim is the same as every Class member's claim; Plaintiff and his counsel are adequate to represent the Class; and the common questions — did Healthcare Solutions call Registry-listed numbers more than once, did it have consent, and did its failure to screen its calling database violate § 227(c)(5) — can be answered through the same classwide evidence for every member and predominate over any individual question.

Healthcare Solutions places all of its outbound calls through a single dialing platform, and it treats a single, uniform category of third-party "lead" records as its only basis for consent to call any number in its database, regardless of whether that number is registered on the National Do Not Call Registry. Healthcare Solutions has admitted, in sworn discovery, that it "**did not utilize a process to scrub telephone numbers against the National DNC Registry before placing outbound calls**," and that it had no written do-not-call compliance policy of any kind until January 1, 2026. As a result, Plaintiff Jeffery Blubaugh and thousands of others received repeated telemarketing calls despite having numbers registered on the Registry and despite never consenting to receive Healthcare Solutions' calls.

Plaintiff's expert, Aaron Woolfson, applied a standardized, reproducible methodology to Healthcare Solutions' own call records to identify the precise population of numbers and calls at

issue: 144,892 calls placed to 1,852 unique telephone numbers that were registered on the National Do Not Call Registry for more than thirty days and called two or more times within a twelve-month period, after excluding the small subset of numbers associated with a completed insurance purchase. Because Plaintiff's claim and the claims of the proposed Class arise from the same uniform practice, rest on the same legal theory, and can be established through the same common evidence, Rule 23's requirements are satisfied and the Court should certify the Class.

## II. FACTS

### A. Healthcare Solutions' Outbound Telemarketing Operation.

Healthcare Solutions assists consumers with evaluating and enrolling in Medicare-related insurance products. (ECF No. 32-3 ¶ 4.) To generate business, Healthcare Solutions places outbound telemarketing calls soliciting these products through a single outbound calling platform, Convoso. (ECF No. 32-2 ¶ 4.) Healthcare Solutions' Chief Technology Officer, Brad Morgan, is responsible for Healthcare Solutions' telephony systems, outbound calling systems, and internal do-not-call procedures. (Ex. 5, Verification of Brad Morgan.) Healthcare Solutions maintains its outbound call records within Convoso in standardized, exportable form, including the telephone number called, the date and disposition of each call, and the campaign under which it was placed. (ECF No. 32-2 ¶¶ 4, 7–8.)

### B. Healthcare Solutions Relies on a Single, Uniform Category of "Lead" Records as Its Only Basis for Consent, and Has Never Screened Its Calling Database Against the National Do Not Call Registry.

Healthcare Solutions does not contend that it obtained consent to call any number in its database on an individualized basis. Asked in discovery to identify the basis for consent to call every number appearing in Plaintiff's expert's analysis, Healthcare Solutions responded that the numbers "were supplied through lead-generation records reflecting requests or authorization to

be contacted by Defendant concerning insurance products or services," and that the "bases for Defendant's consent contentions include the lead data, consent language and associated source information previously produced." (Ex. 5, Interrog. No. 6.) Healthcare Solutions has confirmed that this is the same, uniform lead and consent record produced for every number at issue. (Id., Interrog. No. 3 (same lead and consent records "previously produced as HEALTHCARE SOLUTIONS 0007" for every Exhibit 11 number).)

Healthcare Solutions has also admitted that it did not screen these leads against the National Do Not Call Registry before calling them. Healthcare Solutions' own Chief Technology Officer testified under oath that Healthcare Solutions "did not utilize a process to scrub telephone numbers against the National DNC Registry before placing outbound calls." (Ex. 7 39:1–12; 58:15–25; Ex. 4, Interrog. No. 11.) Healthcare Solutions likewise had no written do-not-call or TCPA compliance policy of any kind until January 1, 2026, relying instead on undocumented verbal training, and has never required its agents to pass any compliance test on Registry requirements. (Ex. 8 26:3–9, 32:24–33:15; Ex. 7 39:13–25, 40:1–3.) Nor could Healthcare Solutions' own Chief Technology Officer say whether Healthcare Solutions ever audited the third-party vendors that supplied its leads to confirm that those leads excluded Registry-listed numbers. (Ex. 7 46:8–24.)

Nor does Healthcare Solutions contend that any number at issue was in fact unregistered. Asked to identify any number in Plaintiff's expert's analysis that it contends was not registered on the National Do Not Call Registry when called, Healthcare Solutions responded that it "does not presently contend that any telephone number... was not registered on the National Do Not Call Registry at the time it was called." (Ex. 5, Interrog. No. 1.) Nor can Healthcare Solutions identify any number it contends was non-residential: Healthcare Solutions admitted that its

"internal records do not contain sufficient information to determine the historical residential, business, or mixed use of each telephone number" at issue. (Id., Interrog. No. 2.)

### C. Healthcare Solutions' Own Call Records Enable Classwide Identification of Every Call at Issue.

Plaintiff's retained expert, Aaron Woolfson, has over twenty-five years of experience developing and analyzing telephone systems and databases, has been qualified as an expert on this precise topic in numerous state and federal courts, and has had his methodology for identifying TCPA class members credited by courts granting class certification in other cases. (Ex. 3 ¶¶ 7–22.) *See, e.g., Moore v. Club Exploria, LLC*, No. 19 C 2504, 2023 U.S. Dist. LEXIS 144183, at *15 (N.D. Ill. Aug. 17, 2023) (accepting Mr. Woolfson's aggregate methodology to certify a TCPA class).

Mr. Woolfson analyzed the call detail records ("CDRs") Healthcare Solutions produced in this litigation, together with the national Do Not Call Registry, using a standardized SQL-based methodology to identify, from Healthcare Solutions' own records, every call placed to a number that had been registered on the Registry for more than thirty days and called two or more times within a 365-day period. (Ex. 3 ¶¶ 2, 24–33.) He began with 312,968 calls placed between May 19, 2025 and May 19, 2026, and, applying a series of mechanical, objective filters — removing records with no dialed number, duplicative records, non-TCPA-eligible area codes, and dispositions or durations outside a defined qualifying set — narrowed that population to 271,788 calls. (Id. ¶¶ 34–36.) Tagging those records against the national Do Not Call Registry and excluding calls placed to unregistered numbers, calls placed before a number had been registered for thirty days, and numbers called only once within 365 days, Mr. Woolfson identified a population of 147,651 calls placed to 1,925 unique telephone numbers, including nine calls to Plaintiff's own number. (Id. ¶¶ 37–38.) Mr. Woolfson then supplemented that

analysis at Plaintiff's request, applying the same SQL-based methodology to carve out the 73 telephone numbers associated with a completed insurance purchase — the same subgroup excluded from the Class definition below — which removed 2,759 calls and left a final population of 144,892 calls placed to 1,852 unique telephone numbers, still including nine calls to Plaintiff's own number. (Ex. 9 ¶¶ 3–7 & Ex. A.) The number of qualifying calls to individual numbers in this final population ranges as high as 463 calls to a single Registry-listed number. (Id. Ex. A.)

This is the same fully mechanical, reproducible process courts have credited in certifying comparable classes. *See Moore v. Club Exploria, LLC*, 2023 U.S. Dist. LEXIS 144183, at *15. Because Class membership here turns entirely on objective data fields already maintained in Healthcare Solutions' own records — the telephone number called, the date of each call, and the number's Registry-registration status — identifying the Class does not require any individualized inquiry, testimony, or credibility determination.

### D. Plaintiff's Experience Is Typical of the Class.

Plaintiff Jeffery Blubaugh's telephone number is a personal, residential cellular number that has been registered on the National Do Not Call Registry since July 2, 2024. (Ex. 1 ¶¶ 4–6.) He never provided that number to Healthcare Solutions and never consented to receive its calls. (Id. ¶ 7.) Despite this, Healthcare Solutions' own Convoso records reflect calls to Plaintiff's number between July 3 and July 8, 2025, including a July 8, 2025 call in which Plaintiff was solicited to purchase a health insurance plan. (Id. ¶¶ 8–13.) Mr. Woolfson's independent analysis of Healthcare Solutions' own records confirms nine qualifying calls to Plaintiff's number during this same period. (Ex. 3 ¶ 38.) Plaintiff's number, like every other number in the Class population Mr. Woolfson identified, was called by Healthcare Solutions' own representatives,

through the same Convoso platform, based on the same uniform category of lead-consent record, without any Registry screening.

## III. APPLICABLE LAW

Section 227(c) of the TCPA directs the FCC to protect residential telephone subscribers by promulgating regulations governing the National Do Not Call Registry. 47 U.S.C. § 227(c)(2)–(3); 47 C.F.R. § 64.1200(c)(2). Section 227(c)(5) creates a private right of action for any person who receives more than one telephone solicitation within a twelve-month period to a number registered on the Registry for more than thirty days. 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2), (e). Numbers registered on the Registry are presumed residential. *In re Rules & Regulations Implementing the TCPA*, 18 F.C.C. Rcd. 14014, 14039 (2003). A defendant may raise prior express invitation or permission as an affirmative defense, on which the defendant bears the burden of proof. 47 C.F.R. § 64.1200(c)(2)(i)–(iii); *see Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020).

The Western District of Missouri has applied binding Eighth Circuit authority to hold that cellular telephone users qualify as "residential telephone subscribers" for purposes of the national Registry regulations, defeating any argument that cell-phone recipients fall outside the statute's protections. *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099 (W.D. Mo. 2020).

That binding authority is direct. In *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, the Eighth Circuit held that a defendant's own transmission records supply the objective criteria needed to identify class members and to certify a TCPA class, because "[a] common contention, capable of classwide resolution, is whether class members received" a communication that violated the TCPA. Sandusky, 821 F.3d 992, 997–98 (8th Cir. 2016). "The best objective indicator of the 'recipient' … is the person who subscribes," as shown by the

defendant's own records. Id. at 997. The same is true here: Healthcare Solutions' own call records, cross-referenced against the National Registry, objectively identify every call and every Class member at issue. *See Saggio v. Medicredit, Inc*., 351 F.R.D. 141, 146 (E.D. Mo. 2026) (applying *Sandusky* to certify a TCPA class identified through the same reverse-lookup and call-log methodology Mr. Woolfson used here).

Because damages are statutory and calculated per violation, individualized damages calculations do not defeat class treatment. 47 U.S.C. § 227(c)(5). Courts in this Circuit have accordingly certified National Do Not Call Registry classes where, as here, a uniform calling practice and a defendant's own business records permit classwide proof of liability. *See Hand*, 456 F. Supp. 3d 1099 (certifying a Do Not Call class under Rule 23(a) and (b)(3)); *Douglas Phillip Brust, D.C., P.C. v. Opensided MRI of St. Louis LLC*, 343 F.R.D. 581 (E.D. Mo. 2023) (certifying a TCPA class based on defendant's common course of conduct); *Backer L. Firm v. Costco Wholesale Corp.*, 321 F.R.D. 343 (W.D. Mo. 2017) (certifying a TCPA class, finding individual adjudication "unrealistic and unnecessarily repetitive").

## IV. THE CLASS

Plaintiff seeks to certify the following Class, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

> **National Do Not Call Registry Class**: All persons within the United States (1) whose telephone numbers appear in Healthcare Solutions' call records produced in this matter; (2) whose telephone numbers were registered on the National Do Not Call Registry for at least thirty-one days; (3) who received more than one telephone solicitation call from Healthcare Solutions, or a third party acting on Healthcare Solutions' behalf, within a twelve-month period; (4) within the four years preceding the filing of the Complaint; and excluding (5) any telephone number for which Healthcare Solutions' records reflect that the associated individual purchased an insurance policy from Healthcare Solutions.

This definition is drawn directly from the Complaint's own class allegations, Compl. ¶ 34, and excludes the small subset of numbers — approximately 73 of 1,925, or roughly 3.8% — for which Healthcare Solutions' own records reflect a completed insurance purchase, removing at the threshold the only subgroup for which Healthcare Solutions has identified any transaction beyond the uniform lead record described above. (Ex. 5, Interrog. No. 5; Ex. 6, Resp. to Req. for Produc. No. 2.) Mr. Woolfson has independently applied that same exclusion to his own analysis, confirming a final Class population of 144,892 qualifying calls to 1,852 unique telephone numbers. (Ex. 9 ¶¶ 5–7.)

The Class is ascertainable because membership turns entirely on objective criteria drawn from Healthcare Solutions' own records — a telephone number's presence in Healthcare Solutions' call records, its Registry-registration status, and the number and timing of qualifying calls — as Mr. Woolfson's analysis has already demonstrated on a number-by-number basis. See *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 997 (8th Cir. 2016) ("fax logs showing the numbers that received each fax are objective criteria that make the recipient clearly ascertainable"); *Hand v. Beach Ent. KC, LLC*, 456 F. Supp. 3d 1099, 1138–39 (W.D. Mo. 2020) (finding a class of recipients ascertainable using the defendant's own records); Ex. 3 ¶¶ 34–38.

## V. ARGUMENT

### A. Numerosity.

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Mr. Woolfson's analysis of Healthcare Solutions' own call records identified 1,852 unique telephone numbers meeting the Class's criteria, receiving a total of 144,892 qualifying calls. (Ex. 3 ¶ 38; Ex. 9 ¶¶ 6–7.) That is comparable to, or larger than, the populations courts in this Circuit have found sufficient to satisfy numerosity in materially

similar National Do Not Call Registry cases. See Hand, 456 F. Supp. 3d 1099 (numerosity satisfied where a sampling of defendant's records identified at least 4,860 individual numbers). Joinder of a Class this size, dispersed nationwide, is plainly impracticable.

**B. Commonality.**

Commonality requires that class members' claims depend on a common contention "capable of classwide resolution." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The common questions here include: (1) whether Healthcare Solutions called National Do Not Call Registry-registered numbers more than once within a twelve-month period; (2) whether Healthcare Solutions had consent to place those calls; (3) whether Healthcare Solutions' failure to screen its calling database against the Registry violated 47 U.S.C. § 227(c)(5); and (4) whether Class members were injured as a result. Each of these questions will be resolved the same way for the entire Class on the same evidence: Healthcare Solutions' own call records, its own sworn discovery admissions regarding its lead sourcing and its absence of any Registry-screening process, and Mr. Woolfson's classwide analysis of that data. *See Webb v. Exxon Mobil Corp*., 856 F.3d 1150, 1156 (8th Cir. 2017) (commonality satisfied where "determination of [a contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"); *Powers v. Credit Mgmt. Servs., Inc*., 776 F.3d 567, 571 (8th Cir. 2015) ("Commonality requires a showing that class members have suffered the same injury."); *Hand*, 456 F. Supp. 3d at 1140–41 (commonality satisfied because whether the calls "contain the same or similar language" and "appear to have been sent for the same purpose" "will resolve an issue that is central to each class members' claims in one stroke"); *Sandusky*, 821 F.3d at 998 ("[a] common contention, capable of classwide resolution, is whether class members received" a communication violating the TCPA).

Any individualized determination of whether a particular class member's number was submitted to Healthcare Solutions "can be made through a simple analysis of [Healthcare Solutions'] own internal data" where, as here, "all signs … point to general uniformity among consent forms" for the entire Class. *Thrower v. Citizens Disability, LLC*, No. 20-10285, 2022 WL 3754737, at *5 (D. Mass. Aug. 30, 2022).

**C. Typicality.**

Typicality is satisfied where the class representative's claim arises from the same course of conduct and the same legal theory as the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997); *Postawko v. Missouri Dep't of Corr*., 910 F.3d 1030, 1039 (8th Cir. 2018) ("Typicality is fairly easily met so long as other class members have claims similar to the named plaintiff."). Plaintiff's claim is typical: like every Class member, his residential number was registered on the National Do Not Call Registry, and Healthcare Solutions called it more than once within a twelve-month period, through the same Convoso platform, based on the same lead-consent theory Healthcare Solutions applies to the entire Class, without any Registry screening. (Ex. 1 ¶¶ 4–13; Ex. 3 ¶ 38.) Plaintiff's injury — repeated, unconsented telemarketing calls to a Registry-listed number — is the same injury suffered by every Class member as a result of the same uniform practice. See *Hand*, 456 F. Supp. 3d 1099 (typicality satisfied where the named plaintiff's claims "arise from the same course of conduct" as the class).

**D. Adequacy.**

Rule 23(a)(4) asks whether the class representative and class counsel will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4); *Rattray v. Woodbury Cty., Iowa*, 614 F.3d 831, 835 (8th Cir. 2010) (adequacy "ensure[s] due process for absent class members, who generally are bound by a judgment rendered in a class action"). The standard

requires a two-part showing: that the representative's interests do not conflict with the class's, and that counsel is qualified, experienced, and able to vigorously conduct the litigation. *See DaSilva v. Border Tr. of MA, Inc.*, 296 F. Supp. 3d 389, 405 (D. Mass. 2017) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)). Plaintiff has no interest antagonistic to the Class: his claim — that Healthcare Solutions called his Registry-registered number more than once without consent — is identical in kind to every Class member's claim, and he seeks the same statutory relief available to the Class. (Ex. 1 ¶¶ 14–18.) Proposed Class counsel, Anthony I. Paronich of Paronich Law, P.C., has substantial experience litigating TCPA class actions and has committed the resources necessary to prosecute this action through class notice and trial. (Ex. 2 ¶¶ 2, 12–13.)

Courts in this Circuit have found adequacy satisfied on materially identical showings. In *Hand*, the court held that the named plaintiff's counsel had "extensive experience prosecuting TCPA class actions" and would "competently and vigorously represent" the class, that the plaintiff had "demonstrated his ability and willingness to prosecute the claim," and that because his "interests are sufficiently similar to those of the class," it was "unlikely that their goals and viewpoints will diverge." *Hand*, 456 F. Supp. 3d at 1143. The same is true of Plaintiff and his counsel here. *See also Backer L. Firm v. Costco Wholesale Corp.*, 321 F.R.D. 343 (W.D. Mo. 2017) (adequacy satisfied where the class involved common questions of law arising under the same federal statute).

**E. Predominance.**

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "An individual question is one on which evidence varies from member to member; a common

question is one where the same evidence suffices for each member to make a prima facie showing." *Ford v. TD Ameritrade Holding Corp.*, 115 F.4th 854, 859 (8th Cir. 2024). Predominance is readily satisfied here because the central liability question — whether Healthcare Solutions called Registry-registered numbers more than once without a valid basis to do so — is answered the same way for the entire Class on Healthcare Solutions' own records. *See Douglas Phillip Brust*, 343 F.R.D. 581 (predominance satisfied where "facts related to [defendant]'s common course of conduct" exist and "claims are brought under the same federal statute and based on the same legal theories").

Any consent defense Healthcare Solutions might raise is amenable to the same classwide resolution. Healthcare Solutions does not contend that it obtained individualized consent from any Class member; instead, it has taken the position, applicable to every number in Plaintiff's expert's analysis, that all of the numbers "were supplied through lead-generation records reflecting requests or authorization to be contacted by Defendant," pointing to the same single production — HEALTHCARE SOLUTIONS 0007 — for every number at issue. (Ex. 5, Interrog. Nos. 3, 6.) Because Healthcare Solutions' own consent theory rests on a single, uniform category of record applied uniformly across the Class, any consent defense presents, in the words of this Circuit's leading authority, "a pattern of alleged consent that is uniform across the class and amenable to class-wide resolution." *Hand*, 456 F. Supp. 3d 1099. Residential use is established on the same classwide basis. Registered wireless numbers are presumed residential, though the FCC has cautioned that "further proof may be required" to confirm that a subscriber uses a wireless number the way a residential landline would be used. *In re Rules & Regulations Implementing the TCPA*, 18 F.C.C. Rcd. 14014, 14039 (2003). *Hand* found that presumption satisfied on a classwide basis for materially the same reasons present here. First, Healthcare

Solutions has identified no evidence that any number in the proposed Class was used exclusively for a business purpose: it "does not presently contend that any telephone number … was not registered on the National Do Not Call Registry at the time it was called," and it admits that its "internal records do not contain sufficient information to determine the historical residential, business, or mixed use of each telephone number." (Ex. 5, Interrog. Nos. 1–2.) Second, the nature of Healthcare Solutions' own customer-acquisition program confirms personal, not business, use: Healthcare Solutions' lead records identify individual consumers by first and last name, date of birth, gender, and residential address — not businesses — and concern Medicare Advantage and other individual health-insurance products that only a natural person, not a business, can purchase. (ECF No. 32-3, Ex. A.) Third, the calls themselves were directed at individuals: Healthcare Solutions' own representatives called each number to ask the individual consumer about his or her personal age and insurance coverage. (ECF No. 32-2 ¶ 8.) That common evidence, together with the FCC's presumption that Registry-listed wireless numbers are residential, establishes residential use on a classwide basis absent contrary evidence concerning a particular number — evidence Healthcare Solutions has not identified for even one of the 1,852 numbers at issue. See Hand, 456 F. Supp. 3d at 1151–52 (residential-subscriber issue did not predominate where the defendant's marketing program and messages were directed at individuals and the defendant offered no more than speculation that some numbers might be business-associated); Sandusky, 821 F.3d at 997–98 (the speculative possibility that some subscribers were not the intended recipients "does not preclude certification"); *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 375 (8th Cir. 2018) (an affirmative defense peculiar to some class members does not defeat certification).

The reliability of that uniform consent record is itself a common question, not an individualized one. Healthcare Solutions' own corporate designee has conceded that Healthcare Solutions cannot produce what any consumer — Plaintiff included — actually saw or submitted, and that the underlying lead and consent records trace to the same third-party marketing platform for every number in the database. Because that authentication defect is a property of Healthcare Solutions' own recordkeeping system, not of any individual class member's interaction with Healthcare Solutions, it will be proven or disproven once, for the whole Class, on the same evidence.

A defendant "cannot manufacture individualized issues by claiming individual testimony is required to corroborate what is otherwise a common theory," particularly where, as here, the defendant has not retained the underlying records reflecting what any individual consumer actually saw or provided. *Hand*, 456 F. Supp. 3d 1099.

Healthcare Solutions' regulatory safe-harbor defense, 47 C.F.R. § 64.1200(c)(2)(i), is likewise a common question, not an individualized one, because it turns entirely on Healthcare Solutions' own companywide policies and practices — not on any individualized interaction with any Class member. Healthcare Solutions has admitted, in sworn discovery and at deposition, that it did not utilize a process to scrub telephone numbers against the National DNC Registry before placing outbound calls, and that it had no written do-not-call or TCPA compliance policy of any kind until January 1, 2026 — after every call at issue in this case. (Ex. 7 39:1–12, 39:13–25, 58:15–25; Ex. 8 26:3–9.) These are companywide facts, established once, on the same discovery responses and deposition testimony, for the whole Class. Whether that record satisfies the safe harbor's five mandatory elements is accordingly a single, common question that will be answered the same way for every Class member. *See Douglas Phillip Brust*,

343 F.R.D. at 592 (predominance satisfied where the affirmative defense turned on the defendant's own uniform practices).

Nor does the small subset of numbers associated with a completed insurance purchase defeat predominance. Those numbers — 73 of the original 1,925, or roughly 3.8% — have already been excluded from the Class definition above and from Mr. Woolfson's own final calculation, removing the only subgroup for which Healthcare Solutions has identified any transaction beyond the uniform lead record. *See Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 689 (S.D. Fla. 2013) ("Common questions of law and fact predominate here because... any persons who may have been subject to an individualized consent defense were excluded during numerosity discovery.").

Just as cross-referencing a defendant's own credit-card records against a class list to identify an established-business-relationship subgroup is "precisely the type of objective analysis that makes an issue capable of class-wide resolution," *Hand*, 456 F. Supp. 3d 1099, the same objective, record-based cross-reference here — Healthcare Solutions' own policy-purchase records against the Class list — is what allowed the 73-number subgroup to be identified and excluded at the threshold.

Finally, standing does not present an individualized question. Every Class member suffered the same injury Congress sought to remedy through Section 227(c)(5): the receipt of unwanted telemarketing calls to a number the recipient had registered on the Registry precisely to avoid such calls. That injury is established through the same common evidence — Healthcare Solutions' own call records, cross-referenced against the Registry — for every Class member alike.

**F. Superiority.**

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Because the statutory damages available under Section 227(c)(5) are relatively small on a per-violation basis, individual Class members have little financial incentive to bring their own suits. *Backer L. Firm*, 321 F.R.D. 343 (individual adjudication of TCPA claims "unrealistic and unnecessarily repetitive," and economically unfeasible to litigate individually); *see also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019) ("[F]ew individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy[.]"). Resolving the Class's claims in a single forum also avoids the risk of inconsistent adjudications of the same underlying practice and provides "flexibility, control, and consistency that would not exist with individual litigation." *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024). A class action is the superior method of adjudicating these claims.

Indeed, TCPA claims like these are "negative value suits" in which filing fees and litigation costs may exceed the $500 statutory penalty for many individual claimants. *Hand*, 456 F. Supp. 3d 1099.

If this class action is not allowed to proceed, the likely result is no relief at all for the vast majority of the Class. *See* William B. Rubenstein, 2 *Newberg on Class Actions* § 4:87 (5th ed.) (superiority satisfied in small-claims cases because "[i]n such cases, there will either be a class action or there will be no litigation"); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) ("[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court certify the Class, appoint him as Class representative, appoint Anthony I. Paronich of Paronich Law, P.C. as Class counsel, and grant such further relief as is just.

Dated: September 21, 2026

Respectfully submitted,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

M. Cory Nelson, MO # 63357
MCN Law LLC
8600 W. 110th Street, Suite 214
Overland Park, KS 66210
Tel: 913-358-5800
mcorynelson@mcnlawllc.com
Local Counsel for Plaintiff and the putative Class

*Counsel for Plaintiff and the Proposed Class*