IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

CASE NO.: 4:25-cv-00607-BCW

JEFFERY BLUBAUGH, individually and on behalf of a class of all persons and entities similarly situated,

Plaintiff,

vs.

HEALTHCARE SOLUTIONS INSURANCY AGENCY LLC,

Defendant.
_______________________________________________/

**DEFENDANT HEALTHCARE SOLUTIONS INSURANCY AGENCY LLC'S REPLY SUGGESTIONS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant HEALTHCARE SOLUTIONS INSURANCY AGENCY LLC ("HSI"), by and through undersigned counsel, submits this Reply in support of its Motion for Summary Judgment and states as follows:

**INTRODUCTION**

Plaintiff did not respond to any of HEALTHCARE SOLUTIONS INSURANCY AGENCY LLC's ("HSI") 23 numbered facts. He instead filed a narrative opposition that neither admits nor controverts those facts and presents no separately numbered additional facts. Under Local Rule 56.1, HSI's properly supported facts are therefore admitted. Those admissions establish that HSI received and maintained a contemporaneous, individualized lead record containing Plaintiff's detailed information; that HSI's records associate that lead with a disclosure naming HSI, displaying Plaintiff's telephone number, and expressly authorizing calls even if the number

appeared on the National Do-Not-Call Registry; and that the lead would not have been transmitted to HSI unless the consumer affirmatively selected HSI's offer and submitted the associated information and consent. HSI's Statement of Uncontroverted Material Facts ("SUMF") ¶¶ 3-12.

Plaintiff's scattered factual assertions do not cure that default. Even if the Court considers them, they do not undermine the dispositive record. Plaintiff attacks an illustrative 2026 consumer journey, but HSI expressly said that exhibit was not a recreation of the 2024 session. Exhibit B is different: it is the HSI-specific creative and disclosure that HSI's records associate with Plaintiff's lead; when Plaintiff's counsel marked that document as Deposition Exhibit 5, Vickers identified it as the HSI advertisement and TCPA opt-in and testified that the consumer would have seen and opted in to that offer. Plaintiff's authorities involved unsupported documents passed through chains of lead brokers, disclosures that omitted the defendant, or facially defective leads. None involved the direct, integrated record and seller-specific disclosure here. The two grounds for judgment are complementary. If Plaintiff made the submission reflected in HSI's record, the calls were authorized. If someone else made it, HSI's reliance on that individualized consent-bearing record is the alleged error addressed by *Johansen v. Efinancial LLC*.

## I. PLAINTIFF'S FAILURE TO COMPLY WITH LOCAL RULE 56.1 LEAVES HSI'S FACTS ADMITTED

Local Rule 56.1(b)(1) required Plaintiff to begin his opposition by admitting or controverting each numbered paragraph in HSI's statement and to support every denial under Rule 56(c). It provides that facts not specifically controverted are "deemed admitted for the purpose of summary judgment." If Plaintiff relied on additional facts, Rule 56.1(b)(2) required a concise list of separately numbered, properly supported paragraphs. Plaintiff did neither. See Doc. 50.

The Eighth Circuit enforces this District's rule according to its terms. In *Jones v. United Parcel Service, Inc.*, the court affirmed the decision to disregard a noncompliant factual

submission and, as a consequence, to deem the movants' facts admitted. 461 F.3d 982, 989-91 (8th Cir. 2006). Likewise, *Libel v. Adventure Lands of America, Inc.* held that a court need not scour briefs and exhibits for disputes that the nonmovant failed to present as the local rule requires. 482 F.3d 1028, 1032-33 (8th Cir. 2007).

A recent decision from this District is particularly instructive. In *Smith v. Collins*, the opposition opened with an eight-page narrative rather than the required responses to numbered facts. The court disregarded that narrative and other noncompliant facts, while still deciding whether the properly presented record warranted judgment. No. 4:23-CV-00025-DGK, 2026 U.S. Dist. LEXIS 58927, at *3-7 (W.D. Mo. Mar. 20, 2026). Plaintiff's submission is more deficient: it never responds to HSI's numbered facts at all. The proper consequence is to deem SUMF ¶¶ 1-23 admitted and decline to reconstruct unnumbered disputes from Plaintiff's prose.

The page violation reinforces, but does not replace, that result. Local Rule 7.0(d)(1)(B) allows 15 pages for opposing suggestions. Doc. 50 runs from internal page 1 through internal page 20. Even excluding the four full pages labeled "Factual Background" (internal pages 2-5) leaves 16 counted pages; if that noncompliant narrative does not qualify as an excluded statement of facts under Local Rule 7.0(d)(2), the filing is five pages over. Plaintiff sought no leave, although the Scheduling Order states that noncompliant summary-judgment filings "shall be stricken" and that excess-page requests are not commonly granted. Doc. 11 ¶¶ 3, 12. The factual narrative cannot both evade Rule 56.1 and expand the page allowance. *Smith* rejected the same use of an improper narrative to enlarge an opposition. 2026 U.S. Dist. LEXIS 58927, at *4-6. HSI does not seek judgment merely because the brief is long; it asks the Court to enforce Rule 56.1, disregard the noncompliant narrative, and decide the motion on the admitted facts and governing law.

That consequence matters directly to consent. SUMF ¶¶ 3-6 establish the creation,

maintenance, and contents of Plaintiff's individualized lead record. SUMF ¶¶ 7-10 establish that HSI's records associate the lead with an HSI-specific disclosure that named HSI, displayed Plaintiff's number, and authorized calls to that number even if it appeared on the National Registry. And SUMF ¶¶ 11-12 establish the objective operation of the opt-in process: the lead would not have been transmitted to HSI unless the consumer affirmatively selected HSI's offer and submitted the associated information and consent. Plaintiff's generalized denial does not erase those admitted facts.

## II. THE ADMITTED RECORD ESTABLISHES PRIOR EXPRESS INVITATION OR PERMISSION

### A. The HSI-specific disclosure associated with Plaintiff's lead is a signed, seller-specific electronic agreement

Section 64.1200(c)(2) does not prohibit every promotional call to a registered number. The FCC has explained that a call made with prior express invitation or permission falls outside the prohibited category, provided the permission is evidenced by the written seller-specific agreement required by subsection (c)(2)(ii). *Dynasty Mortgage, L.L.C.*, Notice of Apparent Liability for Forfeiture, 20 FCC Rcd. 4901, 4903 ¶ 3 & n.11 (2005); *Dynasty Mortgage, L.L.C.*, Forfeiture Order, 22 FCC Rcd. 9453, 9454-55 ¶ 3 & n.6 (2007). A website submission can constitute the signed written agreement. *Johansen v. Efinancial LLC*, 2021 U.S. Dist. LEXIS 251092, at *21-22 (W.D. Wash. June 11, 2021), report and recommendation adopted, 2022 U.S. Dist. LEXIS 8798, at *7-9 (W.D. Wash. Jan. 18, 2022).

The admitted facts satisfy each requirement. HSI's contemporaneous record contains Plaintiff's name, telephone number, email address, birth date, home address, and Medicare Advantage interest. SUMF ¶¶ 3-6; Vickers Decl. ¶¶ 8-13 & Ex. A. HSI's records associate that

lead with Creative ID B10242316 and its accompanying disclosure.[1] The disclosure names "Healthcare Solutions" and states that submitting the consumer's information electronically signs an agreement authorizing calls, texts, and emails about Medicare plans at the displayed number, including calls using an autodialer or prerecorded message and calls made while the number is on the National Registry. SUMF ¶¶ 7-10; Vickers Decl. ¶¶ 14-16 & Ex. B. A lead record would not have been transmitted to HSI unless the consumer checked the initial consent box and separately clicked "Yes" with the HSI offer and disclosure. SUMF ¶ 11; Vickers Decl. ¶ 17.

Plaintiff's seller-identification argument addresses the wrong exhibit. Exhibit C is a July 2026 test offered only to illustrate the current ScoredIt structure; Vickers expressly stated that it was not a recreation of the 2024 session and that the HSI offer did not appear during that test. Vickers Decl. ¶¶ 19-20. Exhibit B is the HSI-specific creative and disclosure that HSI's records associate with Plaintiff's lead. Id. ¶ 14. After Plaintiff's counsel marked HSI 0038 as Deposition Exhibit 5, Vickers identified it as the HSI advertisement and TCPA opt-in and testified that "the consumer would have also seen this and opted in to this offer as well." Doc. 50-4, Vickers Dep. 24:11-25:21. Vickers separately clarified that his inability to reproduce the "exact" material referred to "the exact journey," "the exact imagery," "the exact path," and "the exact content" the individual would have seen. Id. at 68:9-17. Because Exhibit B names HSI, Plaintiff's reliance on cases involving generic disclosures or disclosures that omitted the calling defendant is misplaced.

The other attacks do not change the agreement's content or operation. Section 64.1200(c)(2)(ii) requires the agreement to include the number; it does not require the consumer

[1] At Vickers's later deposition, documents already in HSI's summary-judgment record received different exhibit numbers: the HSI-specific Medicare Advantage creative/consent document filed as Vickers Declaration Exhibit B (HSI 0038) was marked Deposition Exhibit 5, while the illustrative ScoredIt consumer journey filed as Declaration Exhibit C (HSI 0009-0021) was marked Deposition Exhibit 2. Vickers Decl. ¶¶ 14, 19-20 & Exs. B-C; Doc. 50-4, Vickers Dep. 15:6-23, 24:11-25:10.

to retype the number on the final screen. Exhibit B displays Plaintiff's number, which the process carried forward from the information submitted earlier. Vickers Decl. ¶ 16; Vickers Dep. 26:3-18. And whether the identifier on Exhibit B is called a "creative ID" or an FMO "compliance code" is nomenclature, not evidence that the disclosure was unconnected to the submission. Vickers Dep. 30:3-7. The controlling evidence is Vickers's declaration that HSI's records associate the HSI-specific disclosure with Plaintiff's lead, coupled with the uncontroverted operation of the transmission process. Vickers Decl. ¶¶ 14-17; SUMF ¶¶ 7-11.

**B. Vickers laid a sufficient foundation for the integrated lead record**

Plaintiff's hearsay and authentication objection conflicts with controlling Eighth Circuit law. A qualified witness under Rule 803(6) need not personally create a record, participate in its creation, or know the identity of the person who recorded the information. *Brawner v. Allstate Indemnity Co.*, 591 F.3d 984, 987-88 (8th Cir. 2010). A record received from another entity may qualify when it is integrated into the recipient's records, the recipient relies on its accuracy, and the other elements of Rule 803(6) are met. *Id.* at 988. Rule 901 likewise requires only evidence sufficient to support a finding that the item is what the proponent claims. Fed. R. Evid. 901(a).

Vickers supplied that foundation. As HSI's Chief Marketing Officer, he oversees marketing operations and the Zeeto relationship and reviews and approves creatives and consent language. Vickers Decl. ¶¶ 2-7. He testified that HSI's Azure records are captured at or near the submission, maintained in HSI's production environment in the ordinary course, and regularly relied on in HSI's business; he accesses and reviews them as part of his duties. Id. ¶¶ 8-13. He identified Exhibit A as a true export of the record HSI previously produced and Exhibit B as the HSI creative and disclosure that HSI's records associate with that lead. Id. ¶¶ 10, 14. That is materially more than a witness who merely knows how to access someone else's database. Cf. *United States v. Kimble*,

54 F.4th 538, 545-46 (8th Cir. 2022) (officer's routine access to a state database did not establish how the state's record was created or maintained).

Nor is this a layered broker chain. Vickers testified that Zeeto transmitted the information directly to HSI, without another marketing company, vendor, or lead generator in between. Vickers Dep. 40:4-8. HSI did not buy a list of purportedly consented leads; its uncontroverted evidence is that consumer-submitted information traveled through the Zeeto/ScoredIt platform with HSI's own approved creative and consent information preserved in HSI's contemporaneous record. SUMF ¶ 12; Vickers Decl. ¶¶ 6-8, 18. HSI maintained and relied on that record in its business, and its outbound operation was designed to call only numbers associated with consumer-submitted leads bearing consent. Vickers Decl. ¶¶ 8-9; Morgan Decl. ¶ 10. That is the integrated-record foundation *Brawner* recognizes, not the mere outside-database access rejected in *Kimble*.

Plaintiff's authorities underscore the distinction. *Hoy* involved documents from Inbounds/Data Prosper, ArcaMax, and Verisk, no declarant who laid any Rule 803(6) foundation, a disclosure that did not name the defendant, and a lead containing eligibility and identity defects. *Hoy v. Medicare Health Advisors LLC*, No. 4:25-cv-00207-RGE-HCA, 2026 U.S. Dist. LEXIS 201965, at *18-22 (S.D. Iowa Aug. 7, 2026). *Hossfeld* involved a spreadsheet passed from KP Leads through Atlantic and Transfer Kings; the alleged originating platform found no matching record and denied any relationship with KP Leads. 726 F. Supp. 3d 852, 872-75 (N.D. Ill. 2024). And *Mattson* involved SaveBig/MinuteMortgageQuotes, QuinStreet, and the defendant, a contract disclaiming the source's accuracy, and no evidence that the defendant appeared among the sellers authorized to call. 2020 U.S. Dist. LEXIS 197955, at *8-13 (D. Or. Oct. 25, 2020). Here there is a qualified HSI witness, direct transmission, integration and reliance, and a disclosure that expressly names HSI.

**C. Plaintiff's remaining assertions do not create a properly presented material dispute**

Plaintiff's filed declaration states that he was not an HSI customer and "never consented." Doc. 50-1 ¶ 7. Customer status is irrelevant because the rule asks whether the subscriber gave permission, not whether he bought a product. And the declaration does not specifically address the submitted information, ScoredIt path, checkbox, separate "Yes" selection, or HSI-specific disclosure associated with the lead. HSI does not purport to characterize testimony from Plaintiff's deposition, which was not among the materials Plaintiff filed in opposition. The point is narrower: the declaration Plaintiff chose to file does not controvert HSI's numbered facts in the manner Local Rule 56.1 requires, and those facts therefore remain admitted.

The IP-geolocation field is also immaterial. It reports an automated location associated with the IP address; it does not identify the user who submitted the lead. It is one field within a record that separately contains Plaintiff's name, number, email, birth date, address, and Medicare interest. Vickers Decl. ¶¶ 11-12 & Ex. A. A disputed location label does not render the entire integrated record unauthenticated, particularly when Plaintiff did not properly controvert the facts establishing the record's creation, maintenance, and association with the HSI disclosure. SUMF ¶¶ 3-12.

Finally, the discovery responses do not establish that the lead record was fabricated, unauthenticated, or unconnected to Exhibit B. RFP Nos. 6 and 7 used the terms "vendor" and "provided," and Vickers explained that HSI uses "vendor" to mean a seller of leads, while HSI treated Zeeto as a marketing platform paid for impressions and clicks. Vickers Dep. 34:10-35:17. He acknowledged that RFP No. 11's broader reference to a third party that "provided" Plaintiff's number could include Zeeto, id. at 37:7-23. On redirect, he explained the distinction underlying HSI's terminology: HSI's position is that the consumer supplied the information and Zeeto

transmitted it directly to HSI. Id. at 40:4-8, 71:9-18, 72:2-12. Whatever ambiguity that terminology created in the discovery responses, it does not refute Vickers's sworn testimony that HSI's contemporaneous record associates Plaintiff's lead with the HSI-specific disclosure in Exhibit B. Vickers Decl. ¶¶ 8-18.

With HSI's facts admitted, the record establishes a signed written agreement authorizing this seller to call this number. That permission independently removes the challenged calls from the prohibition in § 64.1200(c)(2). If Plaintiff made the submission, summary judgment should be granted on that ground. If he did not, the same individualized record explains why HSI called and frames the distinct safe-harbor question: whether HSI made a reasonable error by relying on a consent-bearing record generated through a consent-only intake process. *Johansen* answers that question in HSI's favor.

## III. IF PLAINTIFF DID NOT SUBMIT THE FORM, JOHANSEN SUPPORTS SAFE-HARBOR JUDGMENT ON THIS ADMITTED RECORD

If the Court assumes that someone other than Plaintiff submitted the information, the resulting calls were made in error within the meaning of § 64.1200(c)(2)(i). HSI did not infer consent from a bare number or a generic lead. Its operation was designed to call only numbers supported by consumer-submitted consent records, and the individualized record for Plaintiff's number included the HSI-specific written authorization in Exhibit B. SUMF ¶¶ 2-12, 14; Morgan Decl. ¶¶ 10, 18. *Johansen* held that a caller's reasonable but mistaken belief based on a consent-only intake process is an "error," even if a third party submitted the request. 2021 U.S. Dist. LEXIS 251092, at *29-32; 2022 U.S. Dist. LEXIS 8798, at *12-16. That is the alternative presented here.

HSI did not compare consent-bearing leads against the National Registry. Doc. 50-3, Supp. Resp. to Interrog. No. 11. That is why HSI relies on *Johansen's* substantial-compliance analysis rather than claiming literal compliance with every listed procedure. *Johansen* rejected the

argument that the absence of Registry access necessarily defeated the defense. The court applied substantial compliance because the requirements were procedural and the caller's consent-only process, personnel training, and internal do-not-call system fulfilled the TCPA's purpose; because the company called only consumers who requested information and consented, Registry access would not have screened out the calls it intended to place. 2021 U.S. Dist. LEXIS 251092, at *33-36. The district judge overruled the specific objection that lack of Registry access barred the defense and adopted that analysis. 2022 U.S. Dist. LEXIS 8798, at *13-16.

The admitted facts support the same conclusion. HSI's operation was designed to call only consumer-submitted numbers with consent records. SUMF ¶ 14. During the calls, HSI maintained an internal do-not-call list; HSI's evidence also includes a written training slide accurately reflecting the procedures agents and fronters were taught at onboarding and through ongoing reinforcement. Id. ¶¶ 17-20, 23. Selecting the DNC disposition suppressed further calls and texts indefinitely; HSI's internal list contains more than 2.7 million records. Id. ¶¶ 19, 22. Once Plaintiff's number was designated DNC, HSI made no further contact. Id. ¶ 21. Plaintiff's reliance on a later, more formal policy therefore does not negate the procedures in place when the calls occurred.

Nor do ten call records convert the alleged submission error into deliberate noncompliance. Eight were 12-second answering-machine detections with no agent, voicemail, or message; only one outbound leg connected and transferred to an agent. SUMF ¶¶ 15-16. HSI's outbound operation was designed to call only numbers associated with consumer-submitted leads bearing consent, and all contact ceased after the internal DNC designation. Id. ¶¶ 14, 21. Under *Johansen*, if the record did not reflect Plaintiff's act, HSI's reliance on the detailed, seller-specific consent record was an identifiable and reasonable error within procedures designed to prevent unsolicited calls.

## CONCLUSION

For these reasons, HSI respectfully requests that the Court grant its Motion for Summary Judgment and enter judgment in HSI's favor on Plaintiff's individual claim.

Dated October 2, 2026.

HEALTHCARE SOLUTIONS
INSURANCY AGENCY LLC,
Defendant
By: /s/ *James A. Peterson*
James A. Peterson, Esq.
(admitted pro hac vice)
PETERSON LEGAL P.A.
5079 North Dixie Highway, Suite 105
Oakland Park, Florida 33334
Telephone: (754) 444-8076
James@PetersonLegal.com

and

Nimrod T. Chapel, Jr., MO 46875
Chapel Law Group LLC
311 W Dunklin
Jefferson City, MO 65101
Phone 573-303-0405
Email: nimrod@chapellaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2026, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to the following attorneys registered with the CM/ECF system:

Maxwell Cory Nelson
MCN Law LLC
8600 W. 110th Street
Suite 214
Overland Park, KS 66210
913-358-5800
E-Mail: mcorynelson@mcnlawllc.com

Anthony Paronich, Esq.
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
E-Mail: anthony@paronichlaw.com

*/s/ James A. Peterson*
James A. Peterson, Esq.