IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

CASE NO.: 4:25-cv-00607-BCW

JEFFERY BLUBAUGH, individually and on behalf of a class of all persons and entities similarly situated,

Plaintiff,

vs.

HEALTHCARE SOLUTIONS INSURANCY AGENCY LLC,

Defendant.

_______________________________________________/

**DEFENDANT'S SUGGESTIONS IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

## TABLE OF CONTENTS

INTRODUCTION ..... 1

I. Plaintiff has not shown that common issues predominate over the material liability inquiries his method leaves unresolved ..... 1

A. The common process permits a disclosure ruling but does not answer every permission question ..... 2

B. Removing purchasers does not resolve all later communications or their timing ..... 3

II. Blubaugh has not shown that his response to HSI's consent defense is typical of the proposed class ..... 6

A. The disputed identity and participation of the lead submitter are central to his claim ..... 6

B. Berman and Clark persuasively address the same representative mismatch ..... 7

C. Hand limits the objection to the role the participation dispute will actually play ..... 8

D. The narrower representative-scope objection reinforces the Rule 23 inquiry ..... 9

III. Woolfson's disclosed method does not establish that every retained record is a qualifying call ..... 10

IV. The present subscriber evidence leaves an additional gap in the proposed common proof ..... 12

V. The expert population extends beyond the class Plaintiff moved to certify ..... 13

CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Cases**

Alpern v. UtiliCorp United, Inc., 84 F.3d 1525 (8th Cir. 1996) .............................................. 6, 7

Berman v. Freedom Financial Network, LLC, 400 F. Supp. 3d 964 (N.D. Cal. 2019)............ 7, 9

Blum v. Yaretsky, 457 U.S. 991 (1982) .......................................................................... 9

Clark v. Via Renewables, Inc., No. 24-cv-00568-JSC, 2025 U.S. Dist. LEXIS 207550 (N.D. Cal. Oct. 21, 2025) ........................................................................................... 7, 8, 9, 10

Ford v. TD Ameritrade Holding Corp., 115 F.4th 854 (8th Cir. 2024) .............................. 1, 5, 11

Golan v. Veritas Entertainment, LLC, 788 F.3d 814 (8th Cir. 2015)........................................... 7

Hand v. Beach Entertainment KC, LLC, 456 F. Supp. 3d 1099 (W.D. Mo. 2020)............ 4, 8, 12

In re Milk Products Antitrust Litigation, 195 F.3d 430 (8th Cir. 1999) ....................................... 6

Romano v. Torch Electronics, LLC, No. 2:23-cv-04043-BCW, 2023 U.S. Dist. LEXIS 232269 (W.D. Mo. Nov. 22, 2023)...................................................................................................... 5

Sandusky Wellness Center, LLC v. Medtox Scientific, Inc., 821 F.3d 992 (8th Cir. 2016) ....... 11

**Rules and Regulations**

Fed. R. Civ. P. 23 ........................................................................................................ passim

47 C.F.R. § 64.1200 ........................................................................................................ 2, 3, 5

## INTRODUCTION

Plaintiff's proposed common proof does not establish that common questions predominate over the material liability inquiries remaining within the same-lead-journey cohort. Defendant Healthcare Solutions Insurancy Agency LLC ("HSI") has supplied evidence of the HSI-specific disclosure and affirmative-selection process. Vickers Decl. ¶¶ 7–17 & Ex. B, ECF No. 32-3. That evidence permits common adjudication of the process and disclosure's legal sufficiency. It does not itself resolve who authorized a disputed submission or the nature and timing of subsequent communications. Removing insurance purchasers likewise does not resolve asserted inquiry-based relationships. ECF No. 51-5, Interrog. Nos. 3–6; ECF No. 51-9 ¶¶ 4–8. Plaintiff must show how those questions will be adjudicated and why the common issues predominate.

The distinction is between correcting a population mechanically and resolving liability. Woolfson supplied SQL and reconciled the purchaser exclusion, but his disclosed method does not demonstrate an active call-direction exclusion or resolve all communications material to permission. Those are limitations in the showing, not proof of a quantified overcount. Subscriber identification and the inclusion of calls outside the proposed period are additional proof deficiencies. Separately, Blubaugh's denial of encountering the HSI disclosure, despite confirming his identifying information in the lead record, raises a narrower typicality and representative-scope concern. Blubaugh Dep. 72:12–73:12, 76:16–78:20 (Ex. A). HSI requests denial of certification under Rule 23(b)(3), with Rule 23(a)(3) providing the more direct basis for its separate representative objection.

### I. Plaintiff has not shown that common issues predominate over the material liability inquiries his method leaves unresolved

Predominance requires comparison of the common and individual issues under the actual claim and defenses. *Ford v. TD Ameritrade Holding Corp.*, 115 F.4th 854, 859–60 (8th Cir. 2024).

Individual records do not themselves defeat certification. Date restrictions, purchaser matching, and correction of a demonstrated coding problem may be mechanical. The question is whether Plaintiff has shown how common proof resolves the legally material facts within those records.

### A. The common process permits a disclosure ruling but does not answer every permission question

HSI's argument concerns unresolved liability questions within the same-journey cohort. Vickers testified that active campaigns used the same TCPA language. Vickers Dep. 50:3–22, ECF No. 50-4. The historical HSI advertisement and disclosure are separately preserved as Exhibit B to his declaration. The July 2026 screenshots in Exhibit C illustrate the ScoredIt process; they do not recreate Blubaugh's September 2024 session and did not display HSI's offer during that test. ECF No. 32-3 ¶¶ 19–20. Vickers expressly distinguished those illustrative screens from the HSI-specific disclosure. ECF No. 50-4, 67:18–69:22.

Plaintiff's assertion that HSI cannot produce what any consumer saw overlooks this distinction. ECF No. 51 at 15. The preserved disclosure and described selection process permit common questions concerning what permission that process could obtain. The permission exception requires a signed written agreement between consumer and seller, identifying the seller and the telephone number. 47 C.F.R. § 64.1200(c)(2)(ii). Vickers describes an initial consent checkbox and a separate affirmative HSI selection required before transmission. ECF No. 32-3 ¶¶ 7, 14–17. This is evidence supporting HSI's defense, although it is not an admission of assent by every recipient.

The significance of participation depends on the common ruling. If the Court finds the disclosure legally insufficient even when a consumer completed the process, identifying the submitter may not be necessary to reject permission based on that disclosure. But if the process can obtain valid permission, a recipient's denial of submission presents a different factual question.

Vickers acknowledged that HSI did not independently verify that the telephone number belonged to the submitter. ECF No. 50-4, 64:15–23. That does not establish false leads or a systemwide failure. It leaves attribution disputed where the recipient contests it, as Blubaugh does. Ex. A, 41:6–15, 72:12–73:12.

HSI bears its burden on permission and supports the defense with the declaration, preserved creative, and identified lead records. ECF No. 32-3 ¶¶ 7–17; ECF No. 51-5, Interrog. Nos. 3, 6. Plaintiff cannot substitute Blubaugh's personal account for common proof of nonparticipation. Nor does his individual dispute establish how frequently attribution will be contested. Its classwide significance must be assessed alongside the other supported defenses. Even a common ruling against the online disclosure would not determine whether later inquiries or applications created an established business relationship, or whether a subsequent do-not-call request terminated it. Those questions require a separate showing.

**B. Removing purchasers does not resolve all later communications or their timing**

Woolfson removed 73 purchaser-associated numbers and 2,759 calls, reducing his population to 1,852 numbers and 144,892 calls. ECF No. 51-9 ¶¶ 4–7. That exclusion addresses the identified purchase group. It does not establish that the remaining persons made no inquiries or requests for contact. An established business relationship can arise from a qualifying inquiry or application within three months before a call, without a purchase; a seller-specific do-not-call request terminates that relationship. 47 C.F.R. § 64.1200(f)(5), (f)(5)(i), (f)(15)(ii).

HSI's verified discovery response identifies 5,983 records bearing the INBOUND call-type value in the produced call records, and separately identifies inquiries, applications, and inbound communications among its asserted consent bases. ECF No. 51-5, Interrog. Nos. 4, 6. The 5,983 figure is a record count, not a count of consumers, qualifying inquiries, or surviving class members.

Indeed, Morgan's declaration shows that an inbound-coded record can be an internal transfer: Blubaugh's approximately 95-second outbound connection generated an approximately 255-second inbound conversation with the licensed agent. ECF No. 32-2 ¶¶ 7–9 & Ex. A.

Those sources prevent both shortcuts. HSI cannot treat every inbound record as a consumer's independent request; Plaintiff cannot show that the purchase exclusion resolved later-contact issues simply by subtracting purchasers. The material facts are whether a communication constituted an inquiry or application concerning HSI's services, whether the call fell within the resulting period, and whether a do-not-call request had terminated the relationship. A count of inbound-coded rows cannot answer those questions. Woolfson's supplement performs the purchase carveout and leaves further work concerning do-not-call and wrong-number annotations for a possible amended report. ECF No. 51-9 ¶¶ 5–8.

*Hand v. Beach Entertainment KC, LLC*, 456 F. Supp. 3d 1099, 1148–51 (W.D. Mo. 2020), found purchase cross-referencing manageable and addressed a method excluding specified positive text responses. HSI does not argue that database matching itself defeats certification. Once a qualifying inquiry or opt-out has been identified, comparing dates may be mechanical. What remains unexplained is how the proposed common proof determines the character of the communication in the first place. An inbound label cannot distinguish a new inquiry from Morgan's described transfer. Morgan also describes internal DNC designations and suppression, including a July 13, 2025 designation for Blubaugh. ECF No. 32-2 ¶¶ 11–15. Those facts do not establish widespread revocations or violations. They show why a disposition label must be connected to the relevant event and date before it can establish liability.

These questions determine whether otherwise similar calls were authorized; they are not simply variations in damages. The common evidence can establish the process, permit adjudication

of the disclosure, and support DNC matching. It does not make the purchase carveout an adjudication of every remaining inquiry-based defense. Nor does Plaintiff's challenge to HSI's Registry-screening practices dispose of the separate permission exception: the safe harbor in § 64.1200(c)(2)(i) and permission under § 64.1200(c)(2)(ii) are distinct. ECF No. 51 at 15–16. Plaintiff has not shown that the retained population can be adjudicated on the disclosure question alone.

The required comparison demands a workable method addressing the individualized inquiries actually necessary, rather than assurances that variations are manageable. See *Romano v. Torch Electronics, LLC*, No. 2:23-cv-04043-BCW, 2023 U.S. Dist. LEXIS 232269, at *12–15 (W.D. Mo. Nov. 22, 2023) (denying certification where plaintiffs failed to articulate a classwide damages method and the necessary individualized assessments defeated predominance and superiority). Here, the concern is determining liability, not calculating individual gambling losses as in *Romano*. The proposed method must explain how the supported permission and relationship defenses will be adjudicated and why the remaining individual inquiries are subordinate to the common issues.

Plaintiff's superiority argument emphasizes the cost of individual suits and the efficiencies of resolving common questions once. ECF No. 51 at 17. Those efficiencies do not demonstrate that common issues predominate in adjudicating the entire damages class. *Ford* instructs that even issue certification under Rule 23(c)(4) must materially advance the litigation in light of the individual questions remaining. 115 F.4th at 861. The question is what a disclosure ruling would resolve and what material adjudication would remain, including inquiry-based defenses and identification of qualifying calls. Plaintiff's proposal does not supply that comparison merely by identifying a common form.

## II. Blubaugh has not shown that his response to HSI's consent defense is typical of the proposed class

### A. The disputed identity and participation of the lead submitter are central to his claim

Typicality permits factual differences when the claims arise from the same course of conduct and invoke the same legal theory. *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). A unique defense threatening to play a major role can nevertheless defeat typicality. *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437 (8th Cir. 1999). The question is the difference's materiality.

Here it does. Blubaugh declares that he never provided his number to HSI or consented to its calls. ECF No. 51-1 ¶ 7. His deposition testimony about online submissions was qualified: "No, not that I recall," and "No, I can't recall doing it." Ex. A, 41:6–15. When shown HSI's advertisement, however, he said he had never seen it; he likewise denied having seen its consent language. *Id.* 72:12–17, 73:7–12. His position thus concerns whether he participated in the relevant transaction, not simply whether a transaction he remembers completing satisfied the law.

That position confronts a specific contemporaneous record. Vickers identifies a September 10, 2024 submission containing Blubaugh's name, telephone number, email, birth date, address, and Medicare Advantage interest, with ScoredIt, Tibrio, and Zeeto source information. ECF No. 32-3 ¶¶ 8–14 & Ex. A. Blubaugh confirmed his name, telephone number, email, sex, birth date, city, and ZIP code; his address was correct except for an omitted lot number. Ex. A, 76:16–78:20. Those confirmations require evaluating the connection between this submission and Blubaugh; they do not conclusively establish assent.

Vickers supplies the process evidence against which that denial must be evaluated. He states that transmission required an initial consent checkbox and a separate affirmative selection of HSI's offer; HSI's disclosure named HSI, incorporated the supplied telephone number,

addressed calls despite National Do Not Call Registry registration, and described electronic signature and revocation. ECF No. 32-3 ¶¶ 7, 14–17 & Ex. B. HSI also identified lead records for the numbers in Woolfson's original population, reflecting requests or authorization for insurance-related contact. ECF No. 51-5, Interrog. Nos. 3, 6. HSI does not ask the Court to assume that every other proposed member personally opted in. The question is whether his participation dispute will become a major focus distinct from the legal sufficiency of an actual participant's permission.

If Blubaugh establishes that he neither submitted nor authorized the lead, he can overcome HSI's permission defense without proving that its disclosure was legally deficient. A consumer who did make the affirmative selections cannot prevail on that ground. Conversely, a finding that HSI's process could obtain valid permission would leave Blubaugh's personal denial unresolved. That difference concerns the existence of permission, not damages calculations or an incidental variation. The provenance and authorization of his lead may therefore become a major focus of his claim.

*Golan v. Veritas Entertainment, LLC*, 788 F.3d 814, 821 (8th Cir. 2015), illustrates the necessary distinction. There, hearing a shortened answering-machine message rather than the full script did not create a unique defense because the calls' common promotional purpose controlled the claim. Here, the difference bears directly on whether a particular consumer authorized HSI's contact. *Alpern*'s tolerance for factual variation does not require disregarding a difference material to the defense that the representative must overcome.

**B. Berman and Clark persuasively address the same representative mismatch**

*Berman v. Freedom Financial Network, LLC*, 400 F. Supp. 3d 964, 986–88 (N.D. Cal. 2019), denied certification under typicality and adequacy despite a common TCPA injury and course of conduct: the representative denied visiting the lead websites while challenging the

sufficiency of consent obtained there. Although the case also involved arbitration agreements, its reasoning separately addressed express consent and representation of actual registrants on signature and disclosure issues. *Id.* at 987–88.

*Clark v. Via Renewables, Inc.*, No. 24-cv-00568-JSC, 2025 U.S. Dist. LEXIS 207550, at *18–21 (N.D. Cal. Oct. 21, 2025), likewise denied certification under typicality and adequacy where the plaintiff denied visiting the lead website or supplying his information but sought to challenge disclosures applicable to consumers who did. Its evidence included a session replay and varying webforms. *Id.* at *16–17. HSI relies on its representative analysis, not its varied-form predominance reasoning. Both decisions are persuasive, not controlling.

Blubaugh's qualified recollection is not *Clark*'s categorical website denial or a specific denial of visiting ScoredIt. His denial of encountering HSI's disclosure and confirmation of his lead information nevertheless create the participation dispute. Ex. A, 41:6–15, 72:12–73:12, 76:16–78:20. Neither a categorical label nor a finding that he lacks credibility is necessary to apply Rule 23(a)(3).

**C. Hand limits the objection to the role the participation dispute will actually play**

In *Hand*, defendants had an individualized database entry for *Hand* and evidence supporting their account of collecting contact information through contest cards. The court nevertheless found typicality: *Hand* could contest whether defendants collected information as claimed or whether that method supplied legally sufficient permission, consistently with absent members' interests. 456 F. Supp. 3d at 1142–43. Its conclusion did not rest on an absence of individualized records. The court expressly considered a record containing *Hand*'s accurate name, gender, email, and telephone number, but an inaccurate birthday. *Id.* at 1143–44.

HSI therefore does not contend that a denial of participation or a corresponding lead record

automatically defeats typicality. Vickers links the historical HSI creative to Blubaugh's lead and describes a separate affirmative HSI selection required for transmission; Blubaugh confirms the lead's identifying information while denying that he encountered the disclosure. ECF No. 32-3 ¶¶ 8–17 & Exs. A–B; Ex. A, 72:12–73:12, 76:16–78:20. Those facts frame a concrete participation dispute; they do not establish assent by every absent member.

The narrower objection is that adjudicating who performed or authorized Blubaugh's submission may become a major focus of his individual claim without resolving the legal effect of actual participation by others. Plaintiff may advance alternative disclosure arguments; the Court must assess whether that common challenge makes the participation dispute incidental or whether the dispute materially impairs typicality. *Berman* and *Clark* support examining that mismatch. HSI relies on Rule 23(a)(3), not an inference that the dispute independently establishes inadequate representation.

**D. The narrower representative-scope objection reinforces the Rule 23 inquiry**

HSI separately preserves the narrower representative-scope objection: Blubaugh's personal injury and denial of encountering the disclosure do not automatically establish his ability to represent consumers whose claims require adjudicating the legal effect of a process they actually encountered. *Blum v. Yaretsky*, 457 U.S. 991, 999–1002 (1982), limits representation of persons injured by distinct conduct that the named plaintiffs did not experience. HSI does not contend that Blubaugh lacks Article III standing to pursue his individual TCPA claim or that he cannot challenge HSI's consent defense as applied to him. The objection concerns the additional scope of representation he seeks.

Standing and typicality remain analytically distinct. *Berman* rejected the defendants' Article III causation argument at summary judgment and later denied certification under Rule 23.

400 F. Supp. 3d at 982, 985, 987–88. *Clark* used standing terminology within its typicality and adequacy analysis while allowing the individual claim to proceed. 2025 U.S. Dist. LEXIS 207550, at *19–21, *25. Neither holding requires dismissal of Blubaugh's individual claim. Rule 23(a)(3) remains the principal and more direct basis for HSI's representative objection; the scope principle reinforces that limitation rather than replacing the Rule 23 analysis.

## III. Woolfson's disclosed method does not establish that every retained record is a qualifying call

The issue is the fit between the analysis and the proposed class, not whether SQL can analyze call records. Woolfson reports starting with 312,968 records, removing missing numbers, duplicates, nonqualifying numbers, and records outside selected duration and disposition criteria, and applying DNC and repeated-call filters. ECF No. 51-3 ¶¶ 23, 29–38. His SQL and purchaser-exclusion explanation are disclosed. Woolfson Report Ex. 8, pp. 1–5 (Ex. B); ECF No. 51-9 ¶¶ 4–7 & n.2.

Plaintiff describes the final population as satisfying the class criteria. ECF No. 51 at 9. DNC matching and repeated-call queries do not resolve every liability predicate. HSI has not identified a number in the original index that it contends was unregistered when called. ECF No. 51-5, Interrog. No. 1. Accepting that matching does not resolve permission or show that every retained row represents a separate qualifying solicitation.

First, the script adds a direction field, but the commands to select and remove inbound calls are commented out. The disclosed script does not demonstrate an active exclusion using call_type or an active restriction to outbound calls. Ex. B at 1–5, particularly 3. That observation does not prove that a specified number of inbound calls survived other filters. The script nevertheless does not demonstrate direction-based exclusion. The distinction matters because the class requires telephone solicitation calls from HSI or someone acting on its behalf, not every record generated

during a consumer interaction. ECF No. 51 at 8.

Second, the duplicate-removal logic uses a key combining telephone number, date, and time. Ex. B at 1–2. It does not demonstrate consolidation of distinct records at different times generated by a transfer during one interaction. Morgan's sworn description of Blubaugh's outbound connection and ensuing inbound transfer establishes that this distinction exists in HSI's records. ECF No. 32-2 ¶¶ 7–9 & Ex. A. It does not establish that Woolfson counted that transfer, and HSI does not assert that he did. Plaintiff nevertheless must explain how the retained rows correspond to the legally relevant calls before using them to establish the more-than-one-call threshold or classwide violations.

Third, duration and disposition are proxies whose legal significance must be shown. Woolfson retains calls lasting at least three seconds with enumerated codes, including answering-machine detection, call transfer, and do-not-call dispositions. ECF No. 51-3 ¶¶ 31, 36; Ex. B at 3. Morgan states that eight records for Blubaugh reflect twelve-second answering-machine detections without agent involvement or a voicemail. ECF No. 32-2 ¶ 8. HSI does not contend that an unanswered call is categorically outside the TCPA. The narrower point is that a qualifying duration and selected code do not themselves resolve direction, separate-call status, permission, or the recipient's identity.

A direction filter or demonstrated transfer-matching rule might correct a count mechanically. HSI does not contend that such a correction is inherently individualized or impossible. The present deficiency is that Plaintiff has not demonstrated the connection between retained rows and qualifying solicitations; correcting that mapping would still leave the distinct permission and relationship questions addressed in Section I. *Ford* requires examination of the method's ability to prove the actual claim. 115 F.4th at 859–60. *Sandusky Wellness Center, LLC*

*v. Medtox Scientific, Inc.*, 821 F.3d 992, 996–98 (8th Cir. 2016), does not require a different result. It rejected a heightened ascertainability barrier and held that fax transmission logs objectively identified recipients of the challenged fax. HSI seeks no heightened administrative-feasibility requirement here. Its objection is that the proffered filters have not been shown to distinguish the events and permissions material to this proposed telephone-solicitation class.

## IV. The present subscriber evidence leaves an additional gap in the proposed common proof

HSI does not identify any particular retained number as a proven business or nonresidential line. Its discovery response expressly acknowledges the limits of its historical-use information. ECF No. 51-5, Interrog. No. 2. *Hand* rejected speculative business-use objections, particularly where the marketing targeted individuals. 456 F. Supp. 3d at 1151–52. HSI accordingly preserves this issue as an incompleteness in the present proof, not an independent assertion that unidentified businesses defeat certification.

Woolfson relies on the presumption associated with Registry registration and describes additional carrier and subscriber procedures. ECF No. 51-3 ¶¶ 27, 32–33, 39–56; ECF No. 51-9 n.1. Plaintiff's discovery response states that Woolfson relied on the Reassigned Number Database, but objects to the premise that he made a final subscriber-level residential determination for every number. Pl.'s Second Discovery Responses, Interrog. No. 7 & RFP No. 6 (Ex. C). Thus, HSI does not contend that he performed no reassignment work. The remaining question is what completed analysis connects the historically relevant recipient to the number and resolves any material subscriber issues.

Registry status and HSI's consumer-oriented marketing support Plaintiff's position, but they do not themselves identify the person who authorized a lead or received particular calls. The proposed class consists of persons, while the supplemental index lists telephone numbers and call

totals. ECF No. 51 at 8; ECF No. 51-9 ¶ 7 & Ex. A. The Court should require Plaintiff to explain that connection as part of evaluating the proposed common proof, without presuming either that every number is nonresidential or that every possible subscriber issue will require a separate trial.

### V. The expert population extends beyond the class Plaintiff moved to certify

The motion limits the class to calls "within the four years preceding the filing of the Complaint." ECF No. 51 at 8. The Complaint was filed August 1, 2025. ECF No. 1. Woolfson instead analyzes May 19, 2025 through May 19, 2026, and the supplemental index retains post-filing calls. ECF No. 51-3 ¶ 34; ECF No. 51-9, Ex. A. For example, the first indexed entry, ending in 7819, reports 133 calls beginning August 12, 2025 and ending May 13, 2026. ECF No. 51-9 at ECF p. 6. None of those indexed calls falls within the presently proposed period.

This mismatch may be curable by a properly restricted analysis or a supported request to revise the class. Post-filing calls are not categorically impermissible. Rule 23(c)(1)(C) permits alteration or amendment of a certification order before final judgment. But changing the temporal definition would require identifying the revised class and establishing the applicable Rule 23 requirements, with a fair opportunity for HSI to address the revision. The Court should not silently use an expanded expert population to supply proof for a narrower proposed class. A corrected or expanded period would not itself resolve the predominance and representative questions addressed above.

## CONCLUSION

HSI respectfully requests that the Court deny Plaintiff's Motion for Class Certification. Alternatively, before considering any revised class, the Court should require a defined proposal and a supported method addressing the material participation, call-classification, and temporal questions, with an opportunity for HSI to respond. Correcting a count or date range would not

itself establish predominance or resolve the separate typicality and representative-scope objections.

Dated October 5, 2026.

HEALTHCARE SOLUTIONS
INSURANCY AGENCY LLC,
Defendant
By: /s/ *James A. Peterson*
James A. Peterson, Esq.
(admitted pro hac vice)
PETERSON LEGAL P.A.
5079 North Dixie Highway, Suite 105
Oakland Park, Florida 33334
Telephone: (754) 444-8076
James@PetersonLegal.com

and

Nimrod T. Chapel, Jr., MO 46875
Chapel Law Group LLC
311 W Dunklin
Jefferson City, MO 65101
Phone 573-303-0405
Email: nimrod@chapellaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2026, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which sent notification of such filing to the following attorneys registered with the CM/ECF system:

Maxwell Cory Nelson
MCN Law LLC
8600 W. 110th Street
Suite 214
Overland Park, KS 66210
913-358-5800
E-Mail: mcorynelson@mcnlawllc.com

Anthony Paronich, Esq.
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
E-Mail: anthony@paronichlaw.com

*/s/ James A. Peterson*
James A. Peterson, Esq.