IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

CASE NO.: 4:25-cv-00607-BCW

JEFFERY BLUBAUGH, individually and
on behalf of a class of all persons and entities
similarly situated,

Plaintiff,

vs.

HEALTHCARE SOLUTIONS INSURANCY
AGENCY LLC,

Defendant.

_____________________________________________/

**PLAINITFF'S RESPONSES TO DEFENDANT'S**
**SECOND SET OF INTERROGATORIES TO PLAINTIFF**

## INTERROGATORIES

**Interrogatory No. 1:** Identify every database, dataset, software application, script, algorithm, process, or other source of information used by Aaron Woolfson in preparing his June 3, 2026 expert report, including each third-party database or service consulted in determining whether a telephone number was on the National Do Not Call Registry for more than thirty (30) days as of the date of any call analyzed, or whether a telephone number was a residential number at the time it was called.

**Response:** Plaintiff identifies the following sources and tools used or described by Aaron Woolfson in connection with the analysis reflected in his June 3, 2026 expert report: Defendant's call-detail records; Microsoft SQL Server Management Studio; Structured Query Language ("SQL"); SQL database tables created to analyze the call records; North American numbering-plan information; National Exchange Carrier Association ("NECA") North American Numbering Plan 1000-block assignment information; National Do Not Call Registry information published by the Federal Trade Commission; number-portability and line-classification information described in the report, including information maintained within databases evidencing number assignment, including the Local Exchange Routing Guide (LERG), various line-type identification databases , and Central Office Code Assignment Records from the North American Numbering Plan Administrator (NANPA).; and the Reassigned Number Database made available by Somos.

Mr. Woolfson imported Defendant's call-detail records into a SQL database table identified as `dbo.calls` and used SQL statements to analyze and tag the call records according to the criteria described in paragraphs 24 through 43 of his report. The SQL statements used in the analysis are included in Exhibit 8 to Mr. Woolfson's report.

**Interrogatory No. 2:** Describe in detail the methodology used to determine whether a telephone number was on the National Do Not Call Registry for more than thirty (30) days as of the date of each call analyzed, including:

a. every data source consulted;
b. the date(s) the data were obtained;
c. whether historical registry information was used;
d. how additions to and removals from the National Do Not Call Registry were accounted for; and
e. every calculation or comparison performed.

**Response:** Mr. Woolfson's methodology is described in paragraphs 23 through 38 of his June 3, 2026 expert report and in the SQL statements attached as Exhibit 8.

Mr. Woolfson imported Defendant's call-detail records into a Microsoft SQL Server database table identified as `dbo.calls`. He then used SQL queries to analyze the call records and determine whether the telephone number associated with a particular call was reflected on the National Do Not Call Registry and, if so, whether the number had been on the Registry for more than thirty days as of the date of the call.

The analysis was conducted on a basis using the date associated with each call and the DNC information associated with the called telephone number. The analysis excluded calls to telephone numbers that were not on the National Do Not Call Registry, as well as calls placed before the associated telephone number had been on the Registry for more than thirty (30) days. Mr. Woolfson then determined whether two (2) or more qualifying calls had been placed to the same telephone number within a 365-day period.

As further described in paragraphs 34 through 38 of the report, Mr. Woolfson began with 312,968 call records. He removed records that lacked a telephone number, and those records that were duplicative of one another, records associated with non-qualifying area codes, records that did not meet the identified disposition and duration criteria, records involving telephone numbers that did not satisfy the DNC-duration requirement, and telephone numbers that did not receive at least two qualifying calls within 365 days. That process resulted in 147,651 calls to 1,925 unique telephone numbers.

The SQL queries used to perform the analysis and the associated comparisons are set forth in Exhibit 8.

**Interrogatory No. 3:** Describe in detail the methodology used to determine whether a telephone number was a residential number, including:

a. every data source consulted;
b. the date(s) the data were obtained;
c. whether historical registry information was used;
d. how additions to and removals from the National Do Not Call Registry were accounted for; and
e. every calculation or comparison performed.

**Response:** Plaintiff objects to subparts (c) and (d) because they seek information concerning additions to and removals from the National Do Not Call Registry rather than the methodology for determining whether a telephone number was residential and therefore are not directed to the subject matter identified in the Interrogatory.

Subject to and without waiving that objection, Mr. Woolfson's methodology is described in his June 3, 2026 expert report. As explained in the report, telephone numbers appearing on the National Do Not Call Registry are treated as presumptively residential for purposes of the methodology described therein, subject to an additional confirmatory process capable of removing numbers that telephone companies identify as non-residential. Mr. Woolfson's methodology also identifies whether a number was on the national DNC list for more than thirty (30) days as of the date of the call, rather than the date that the telephone number itself was originally registered on the DNC list.

Mr. Woolfson also utilizes the number-portability and line-classification information described in the report to determine data elements including wireless status, ~~porting information~~, carrier of record, and Operating Company Number,. Using that information, telephone numbers may be organized by carrier and placed into an Electronic Data Interchange format for purposes of obtaining subscriber-level information, including residential or business designation, from the applicable telephone carriers.

Plaintiff refers Defendant to paragraphs 39 through 56 of the expert report for the additional description of this methodology.

**Interrogatory No. 4:** Identify every person who participated in obtaining, creating, maintaining, validating, or modifying any database, table, dataset, script, software, or process relied upon by Aaron Woolfson in determining National Do Not Call Registry status.

**Response:** Plaintiff objects to this Interrogatory to the extent it seeks information concerning persons responsible for creating, maintaining, or modifying third-party or governmental databases generally, rather than persons who participated in Mr. Woolfson's analysis in this action, on the grounds that the Interrogatory is overbroad and disproportionate to the needs of the case.

Subject to and without waiving that objection, Aaron Woolfson personally performed the SQL analysis described in his report and personally constructed the SQL statements used in that

analysis. As stated in paragraph 28 of his report, Mr. Woolfson was the sole author of the work product associated with the methodologies he undertook in this matter.

Third-party entities maintained or supplied certain underlying data sources identified in response to Interrogatory No. 5, but Plaintiff is not presently aware that any such third party created, modified, or validated Mr. Woolfson's SQL methodology.

**Interrogatory No. 5:** Identify every third-party vendor, contractor, or entity that supplied data or services relied upon by Aaron Woolfson in preparing the expert report and describe the nature of the data or services each supplied.

**Response:** The third-party and governmental data sources identified in Mr. Woolfson's expert report include:

- NECA, whose numbering-plan information was used in connection with North American Numbering Plan assignments;
- the Federal Trade Commission, whose National Do Not Call Registry information was used in determining whether telephone numbers were reflected on the National Do Not Call Registry;
- the number-portability and line-classification information described in the report, including information administered through third party databases, such as Somos and/or verirouteintel.com, used in connection with carrier, porting, and line-classification information; and
- Somos, which made the Reassigned Number Database available for determining whether telephone numbers had been disconnected or reassigned.

Plaintiff further refers Defendant to paragraph 23 and paragraphs 39 through 43 of Mr. Woolfson's report for the nature and use of those data sources.

**Interrogatory No. 6:** Identify every validation, testing, audit, quality assurance process, peer review, error-rate analysis, or other procedure used to confirm the accuracy of the methodology employed by Aaron Woolfson to determine historical National Do Not Call Registry status.

**Response:** Plaintiff objects to this Interrogatory to the extent it assumes that Mr. Woolfson performed a separate formal audit, peer review, benchmarking analysis, or quantified error-rate analysis where no such procedure was performed.

Subject to and without waiving that objection, Mr. Woolfson performed database validation and cross-checking through SQL queries and comparisons reflected in Exhibit 8 to his expert report. Those procedures included cross-checking calls tagged as National Do Not Call Registry calls against the underlying DNC data.

Mr. Woolfson's analysis also included identifying and removing exact duplicate records and applying objective filtering criteria to the call records. The number of records removed at the

various filtering stages and the resulting quantities are stated in the waterfall analysis contained in paragraphs 34 through 38 of his report.

**Interrogatory No. 7:** Identify every assumption relied upon by Aaron Woolfson in preparing the expert report, including every assumption regarding the accuracy or completeness of Defendant's call records, third-party datasets, National Do Not Call Registry information, residential telephone numbers, telephone carrier information, reassigned-number data, and any other data used in his analysis.

**Response:** Plaintiff objects to this Interrogatory to the extent it seeks communications between Plaintiff's counsel and Mr. Woolfson protected from discovery under Federal Rule of Civil Procedure 26(b)(4)(C), except to the extent Rule 26(b)(4)(C)(iii) permits discovery concerning assumptions that Plaintiff's counsel provided and that Mr. Woolfson relied upon in forming the opinions expressed in his report.

Subject to and without waiving that objection, Mr. Woolfson relied upon Defendant's electronically produced call-detail records as accurately reflecting the information recorded in those records, except to the extent his analysis identified records containing missing telephone numbers, exact duplicates, non-qualifying or malformed telephone numbers, calls that did not satisfy the identified disposition or duration criteria, or other records excluded through the waterfall methodology described in his report.

Mr. Woolfson relied upon the third-party and governmental data sources identified in his report for the particular data elements for which those sources were consulted. His methodology further treats telephone numbers appearing on the National Do Not Call Registry as presumptively residential, subject to the additional confirmatory procedure described in the report for excluding telephone numbers identified as non-residential.

Mr. Woolfson also relied upon the Reassigned Number Database made available by Somos for information concerning whether telephone numbers had been disconnected or reassigned during the relevant period, and upon the number-portability and carrier information described in his report for the corresponding carrier and line-classification information.

**VERIFICATION**

I, Jeffery Blubaugh, declare under penalty of perjury that I am the Plaintiff in this action; that I have reviewed the foregoing Plaintiff's Responses to Defendant's Second Set of Interrogatories to Plaintiff; and that the responses to the interrogatories are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 21, 2026.

____________________
Jeffery Blubaugh
Plaintiff

## DOCUMENT REQUESTS

**Request No. 1:** Produce every SQL script, stored procedure, function, view, macro, executable program, or other computer code used to prepare Aaron Woolfson's June 3, 2026 expert report.

**Response:** Plaintiff objects to this Request to the extent it seeks draft expert materials, attorney-expert communications, attorney work product, or other materials protected from discovery under Federal Rule of Civil Procedure 26(b)(3) or 26(b)(4).

Subject to and without waiving that objection, the SQL code used by Aaron Woolfson in preparing his June 3, 2026 expert report is included in Exhibit 8 to the report.

**Request No. 2:** Produce every database, database table, spreadsheet, flat file, CSV, or other electronic dataset created, maintained, or relied upon by Aaron Woolfson in preparing his report.

**Response:** Plaintiff objects to this Request to the extent it seeks draft expert materials, protected attorney-expert communications, attorney work product, or proprietary third-party databases or datasets that are not within Plaintiff's possession, custody, or control or that Plaintiff or Mr. Woolfson is not authorized to redistribute.

Subject to and without waiving those objections, Plaintiff will produce non-privileged electronic databases, tables, spreadsheets, flat files, CSV files, or other datasets created, maintained, or relied upon by Mr. Woolfson in forming the opinions expressed in his June 3, 2026 expert report.

**Request No. 3:** Produce every version of the database or table identified in Exhibit 8 of the expert report as:

```
isDNC.dnc.dbo.dnc
```

including all fields, metadata, schemas, documentation, and data dictionaries sufficient to explain every field contained therein.

**Response:** Plaintiff objects to this Request to the extent it assumes the existence of multiple versions, separate documentation, metadata, schemas, or data dictionaries that were not created or maintained. Plaintiff further objects to the extent the Request seeks proprietary or restricted third-party data that Plaintiff or Mr. Woolfson is not authorized to redistribute.

Subject to and without waiving those objections, Plaintiff will produce the responsive version of the table identified as `isDNC.dnc.dbo.dnc`, which is labeled *dbo.dnc* within the SQL database structure that Mr. Woolfson utilized in the construction of his analysis, together with available information reflecting its fields and structure, to the extent such materials remain within Plaintiff's or Mr. Woolfson's possession, custody, or control and may lawfully be produced.

**Request No. 4:** Produce every document describing how the table identified as isDNC.dnc.dbo.dnc was created, populated, maintained, updated, or validated.

**Response:** Plaintiff objects to this Request to the extent it seeks draft expert materials, protected attorney-expert communications, attorney work product, or documents that do not exist.

Subject to and without waiving that objection, Plaintiff will produce non-privileged responsive documents, if any, maintained by Mr. Woolfson describing the creation, population, maintenance, updating, or validation of the identified table and not already disclosed in his expert report, Exhibit 8, or materials produced in response to Request for Production No. 3.

**Request No. 5:** Produce every historical National Do Not Call Registry dataset, download, snapshot, archive, database, or other document sufficient to identify the source and timing of every National Do Not Call Registry determination reflected in the expert report.

**Response:** Plaintiff objects to this Request to the extent it seeks entire governmental or third-party databases that are independently available to Defendant, are subject to restrictions on redistribution, or are not within Plaintiff's possession, custody, or control.

Subject to and without waiving that objection, Plaintiff will produce non-privileged historical National Do Not Call Registry data actually used and considered by Mr. Woolfson in forming the opinions expressed in his June 3, 2026 expert report, to the extent such data remain within Plaintiff's or Mr. Woolfson's possession, custody, or control and may lawfully be produced.

Note: this data is contained within dbo.dnc within the SQL database that contains the analysis and has been foundationally part of his analysis.

**Request No. 6:** Produce every dataset, download, snapshot, archive, database, or other document sufficient to identify the source and timing of every residential telephone number determination reflected in the expert report.

**Response:** Plaintiff objects to this Request to the extent it assumes that Mr. Woolfson made a final subscriber-level residential determination for every telephone number identified in his June 3, 2026 expert report.

Subject to and without waiving that objection, Plaintiff will produce non-privileged datasets or other materials actually used and retained by Mr. Woolfson in making any line-classification or residential determination expressed in his report, to the extent such materials remain within Plaintiff's or Mr. Woolfson's possession, custody, or control and may lawfully be produced.

**Request No. 7:** Produce every dataset submitted to any third-party vendor or service for processing in connection with Aaron Woolfson's opinions, together with every dataset returned.

**Response:** Plaintiff will produce non-privileged responsive datasets, if any, actually submitted by Mr. Woolfson to a third-party vendor or service for processing in connection with the opinions expressed in his June 3, 2026 expert report, together with responsive returned datasets within Plaintiff's or Mr. Woolfson's possession, custody, or control.

**Request No. 8:** Produce every communication between Aaron Woolfson and any third-party vendor relating to:

a. National Do Not Call Registry data;
b. WDNC data;
c. ~~iConectiv;~~ verirouteintel;
d. Somos;
e. NECA;
f. NANPA; or
g. any other data source relied upon in preparing the expert report.

**Response:** Plaintiff objects to this Request to the extent it seeks materials protected from discovery under Federal Rule of Civil Procedure 26(b)(3) or 26(b)(4).

Subject to and without waiving that objection, Plaintiff will produce non-privileged communications, if any, between Mr. Woolfson and non-attorney third-party data providers concerning facts, data, or services actually considered by Mr. Woolfson in forming the opinions expressed in his June 3, 2026 expert report.

**Request No. 9:** Produce every document reflecting any testing, validation, quality assurance, peer review, error-rate analysis, benchmarking, or audit of the methodology used by Aaron Woolfson to determine historical National Do Not Call Registry status.

**Response:** Plaintiff objects to this Request to the extent it assumes the existence of a separate formal peer review, benchmarking analysis, audit, or quantified error-rate analysis where no such document or procedure was created or performed.

Subject to and without waiving that objection, Plaintiff will produce non-privileged responsive materials reflecting testing, validation, cross-checking, or quality-control procedures actually performed by Mr. Woolfson in connection with the methodology described in his expert report and not previously produced.

**Request No. 10:** Produce every intermediate dataset created during Aaron Woolfson's analysis, including all datasets generated after each filtering step described in paragraphs 34 through 38 of the expert report.

**Response:** Plaintiff will produce non-privileged intermediate datasets actually created and retained by Mr. Woolfson during the filtering process described in paragraphs 34 through 38 of his June 3, 2026 expert report, to the extent such datasets remain within Plaintiff's or Mr. Woolfson's possession, custody, or control.

**Request No. 11:** Produce every document sufficient to identify the software, version numbers, database management systems, scripts, and programming languages used in performing the analyses described in the expert report.

**Response:** Plaintiff responds that Mr. Woolfson's expert report identifies Structured Query Language ("SQL") as the query language used and Microsoft SQL Server Management Studio ("SSMS") as the database-management software used to import and analyze Defendant's call-detail records. Exhibit 8 contains the SQL statements used in the analysis.

Microsoft SQL Server 2022 (RTM-GDR) (KB5102334) - 16.0.1190.2 (X64) Standard Edition (64-bit) on Windows Server 2019 Standard 10.0 <X64> (Build 17763)

SQL Server Management Studio
22.8.0+140.12009.203

SQL Server Management Objects (SMO)
18.100.11.28+78d2973eab5a47b182574a7c19c2faeedb3f41ff

Microsoft T-SQL Parser
18.0.4.0+85146cc66a685da2f1136c61e949e53a879d0bad.85146cc66a685da2f1136c61e949e53a879d0bad

Microsoft Analysis Services Client Tools
22.1.17.0

Microsoft Data SqlClient (MDS)
6.1.5+5bcf2003f4bab96e32aff1e2158393f9f4fcd1ed

Microsoft SQL Server Data-Tier Application Framework (DacFX)

170.4.83.3+6b5a249e797735a88101d9bd17c72ef3fd0a0a87

Microsoft .NET Framework
4.0.30319.42000

Operating System 10.0.26200

**Request No. 12:** Produce every document, dataset, spreadsheet, database, communication, memorandum, publication, or other material considered, reviewed, relied upon, or generated by Aaron Woolfson in forming any opinion contained in the expert report, whether or not ultimately relied upon.

**Response:** Plaintiff objects to this Request as overbroad and to the extent it seeks materials protected from discovery under Federal Rule of Civil Procedure 26(b)(3) or 26(b)(4), including draft expert reports or disclosures, protected attorney-expert communications, attorney work product, or materials beyond the facts or data considered by Mr. Woolfson in forming his opinions.

Subject to and without waiving those objections, Plaintiff has produced or will produce the non-privileged facts and data considered by Mr. Woolfson in forming the opinions expressed in his

June 3, 2026 expert report, including the materials identified in paragraph 23 of the report and the non-privileged responsive materials identified in Plaintiff's responses to Requests for Production Nos. 1 through 11.

RESPECTFULLY SUBMITTED AND DATED this 21st day of August, 2026.

*s/ Anthony I. Paronich*_______________
Anthony I. Paronich
**PARONICH LAW, P.C.**
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com
*Attorney for Plaintiff*