**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| JEFFERY BLUBAUGH, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTHCARE SOLUTIONS INSURANCY AGENCY LLC,<br><br>Defendant. | CASE NO.: 25-cv-00607-BCW<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF'S REPLY SUGGESTIONS IN**
**<u>SUPPORT OF MOTION FOR CLASS CERTIFICATION</u>**

Plaintiff Jeffery Blubaugh submits these reply suggestions in support of his Motion for Class Certification (ECF No. 51) and in response to Defendant's Suggestions in Opposition (ECF No. 55) ("Opp.").

## I. INTRODUCTION

Defendant Healthcare Solutions Insurancy Agency LLC ("HSI") does not oppose most of what Rule 23 requires. Its Opposition is silent on numerosity, offers no argument against commonality or the adequacy of counsel, and does not contest standing. Its remaining objections are, by its own description, "limitations in the showing, not proof of a quantified overcount." (Opp. 1.) HSI identifies no number it contends was unregistered on the Do Not Call Registry, no number it can show is a business line, which is not surprising since it only offers consumer products. Indeed, HSI has not retained an expert to oppose the Plaintiff's expert.

What is left is a set of possible defenses on which HSI bears the burden and has produced no evidence. But "the mere mention of a defense is not enough to defeat the predominance

requirement of Rule 23(b)(3).” *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016). The Class should be certified.

HSI does not contest the following:

*Numerosity.* HSI never mentions Rule 23(a)(1). It recites Plaintiff’s figures of 1,852 numbers and 144,892 calls (Opp. 3), disputes none of them, and does not suggest that any correction would shrink the Class below the numerosity threshold. *See Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376, 392 (D. Mass. 2024) (certifying a TCPA Do Not Call case and stating that “courts have generally found the numerosity requirement satisfied if the proposed class exceeds forty members”).

*Commonality.* HSI makes no argument under Rule 23(a)(2) and agrees that its disclosure evidence “permits common adjudication of the process and disclosure’s legal sufficiency.” (Opp. 1.)

*Adequacy and standing.* HSI does not challenge the adequacy of Class counsel or Plaintiff’s Article III standing. (Opp. 9.)

*Registration and residential use.* HSI “has not identified a number in the original index that it contends was unregistered when called” (Opp. 10), identifies no “particular retained number as a proven business or nonresidential line,” and concedes that “Registry status and HSI’s consumer-oriented marketing support Plaintiff’s position.” (Opp. 12.)

*Methodology.* HSI “does not argue that database matching itself defeats certification” (Opp. 4); “does not contend” that a direction or transfer correction “is inherently individualized or impossible” (Opp. 11); and “seeks no heightened administrative-feasibility requirement” (Opp. 12).

## II. ARGUMENT

### A. HSI's Predominance Objections Do Not Defeat Certification.

#### 1. Permission to make the Calls Presents a Common Question.

Predominance requires "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). A common question is one on which "the same evidence suffices for each member to make a prima facie showing." *Ford v. TD Ameritrade Holding Corp.*, 115 F.4th 854, 859 (8th Cir. 2024). HSI's permission defense is exactly that. It contends that every Exhibit 11 number "was associated with lead information reflecting a request or authorization to be contacted" (Ex. 5, Interrog. No. 3; *see id.*, No. 6); that "active campaigns used the same TCPA language" (Opp. 2); and that its calling "was designed to call only telephone numbers associated with consumer-submitted leads bearing consent to be contacted." (ECF No. 32-2 ¶ 10.) HSI concedes that whether that process could obtain valid permission is a common question, and that if the disclosure is legally insufficient, "identifying the submitter may not be necessary." (Opp. 2.) As other courts have found in TCPA case, on such a defense, "all class members will prevail or lose together." *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 686 (S.D. Fla. 2013). *Mantha*, a § 227(c)(5) class action, is directly on point: because the sufficiency of the defendant's consent forms was a single classwide legal question, "[i]n either scenario, QuoteWizard's consent defense can be resolved through a single ruling." 347 F.R.D. at 397.

Defendant's subsequent discovery opposition confirms that the produced lead records identify different publishers and marketing properties but a common Zeeto marketing platform. ECF No. 56 at 2–4. Those differences do not, without more, establish materially different consent disclosures or individualized consent determinations. Indeed, Defendant's class-

certification opposition acknowledges that its active campaigns used the same TCPA language. Opp. 2. The relevant question is whether the variations Defendant identifies require different evidence to resolve the legal sufficiency of its consent defense. Defendant has identified no such variation.

Against this, HSI offers only the possibility that some lead was submitted by someone other than the subscriber. But HSI admits that Plaintiff's dispute "does not establish false leads or a systemwide failure" and does not show "how frequently attribution will be contested." (Opp. 3.) A court "must not rely on mere speculation that individual issues may arise," *Mantha*, 347 F.R.D. at 396 (citation omitted), and "[S]peculation alone regarding individualized consent was insufficient to defeat plaintiffs' showing of predominance," *Bridging*, 843 F.3d at 1126, and "[e]ven where defendants point to some evidence that a defense will indeed apply to some class members . . . courts routinely grant certification." *Id.* HSI points to no such evidence as to any member other than Plaintiff.

The attribution gap is also of HSI's own making. Its Chief Marketing Officer admitted that HSI's process for accepting leads did not include independent verification that the number belonged to the person who submitted it: "At the time, we did not." (Vickers Dep. 64:15–23, ECF No. 50-4.) As in *In re Humana, Inc.*, a defendant's "argument that its own record-keeping is deficient or misleading is unavailing." 163 F.4th 376, 381 (6th Cir. 2025) (denying Rule 23(f) petition); *accord Krakauer v. Dish Network, L.L.C.*, 311 F.R.D. 384, 398 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019) ("If the records that Dish and its affiliates keep do not allow Dish to identify every possible EBR, that should not preclude persons with valid claims from recovering, nor does it prevent class certification under Rule 23(b)(3)."). And HSI's effort to test Plaintiff's lead record through his deposition (Opp. 6–7) is the individualized corroboration

*Hand* rejected: "Defendants may not manufacture an individualized issue merely because they seek to corroborate their common theory of consent in an individualized way." 456 F. Supp. 3d at 1148.

### 2. HSI Offers No Evidence of Inquiry-Based or Inbound Relationships.

HSI next suggests that, apart from purchasers, some members may have an established business relationship ("EBR") through an inquiry, an application, or an inbound call. (Opp. 3–4.) HSI bears the burden. *Krakauer*, 311 F.R.D. at 397 ("EBR is a defense for Dish to prove, and the absence of an EBR is not an element of a TCPA claim."). It has offered no evidence. Asked to identify any Exhibit 11 number it contends had an EBR or other consent, HSI named none and pointed only to the uniform lead records. (Ex. 5, Interrog. No. 3.) Asked to identify any number that responded with a call, HSI named none, reporting only that its records contain 5,983 rows coded "INBOUND" and that cross-referencing them to Exhibit 11 is a burden "substantially the same to either party." (*Id.*, No. 4.) By HSI's own account that figure "is a record count, not a count of consumers, qualifying inquiries, or surviving class members" (Opp. 3), and the one inbound row it identifies is the internal transfer leg of Plaintiff's own outbound call. (Opp. 4; ECF No. 32-2 ¶ 8.) That is not an inquiry.

That is what *Krakauer* called doing "little more than speculate." 311 F.R.D. at 398. Where the defendant "has presented no evidence" of relationships with class members, "[e]ven if [it] can ultimately prove a few established relationships, a common question is still 'at the heart of the litigation.'" *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) (citation omitted). As in *Etter*, "while the inquiry is about the statuses of individual recipients, it remains susceptible to a common method of proof," and "any individual issues raised by this affirmative defense will not predominate over common questions." *Etter v.*

*Allstate Ins. Co.*, 323 F.R.D. 308, 313–14 (N.D. Cal. 2017). Cross-referencing a defendant's records "is precisely the type of objective analysis that makes an issue capable of class-wide resolution," *Hand*, 456 F. Supp. 3d at 1150, and HSI concedes that, once a qualifying inquiry or opt-out is identified, "comparing dates may be mechanical." (Opp. 4.) Predominance is satisfied "even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Mantha*, 347 F.R.D. at 396 (citation omitted). Should HSI ever prove a few relationships, "adequate procedural mechanisms" such as subclassing or exclusion remain available. *Bridging*, 843 F.3d at 1126. Plaintiff has already excluded the one transactional group HSI has identified, roughly 73 purchaser numbers. (Mot. § IV.)

HSI's reliance on *Romano* does not change the analysis. *Romano* concerned, in HSI's words, "individual gambling losses"; "[h]ere, the concern is determining liability." (Opp. 5.)

**B. Plaintiff Is Typical.**

HSI's typicality objection rests on Plaintiff's denial that he submitted the lead. (Opp. 6–9.) HSI's own concessions answer it. HSI "does not contend that a denial of participation or a corresponding lead record automatically defeats typicality" (Opp. 8–9), and it seeks no finding that Plaintiff lacks credibility. (Opp. 8.) HSI also acknowledges that *Hand* "found typicality" on a comparable record. (Opp. 8.) There, the plaintiff disputed giving his information although the defendants' database showed it, and the Court held his claim typical because defendants had "not submitted direct evidence from 'many if not most' class members, or any class members at all," and because his interest in rebutting the defendants' account of how information was collected, or whether that method supplied permission, "is not antagonistic to other class members' interests but rather is in the interest of other class members." 456 F. Supp. 3d at 1141–42.

*Mantha* is to the same effect: even where the defendant bought the plaintiff's lead from a different source, "[t]he only relevant considerations, for typicality purposes, are whether [the plaintiff's] claims originate from the same course of conduct and are based on the same legal theory as the rest of the class." 347 F.R.D. at 394.

Nor is Plaintiff's position a "unique defense." A consent defense "is common to [the plaintiff] and all putative class members," who "will prevail or lose together both on their claims and on Defendants' affirmative defense." *Manno*, 289 F.R.D. at 688. Even a genuinely unique defense defeats typicality only if it "threaten[s] to become the focus of the litigation," *Nitsch v. DreamWorks Animation SKG Inc.*, 315 F.R.D. 270, 284–85 (N.D. Cal. 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)), and courts have "required the opponent of class certification to make a 'sufficiently clear showing' that the alleged unique defense will occupy a significant portion of the litigation." 1 *Newberg & Rubenstein on Class Actions* § 3:45 (6th ed.). HSI says only that the dispute "may become a major focus." (Opp. 9.) That is not a clear showing, particularly because, on HSI's own account, the dispute may drop out of the case if the disclosure is legally insufficient (Opp. 2), and its July 2026 screenshots "do not recreate Blubaugh's September 2024 session." (*Id.*)

Plaintiff's testimony is also consistent. HSI calls his recollection "qualified" (Opp. 8): he did not recall requesting insurance help online ("No, not that I recall"; "No, I can't recall doing it"), and after reviewing HSI's advertisement and consent language he said he had never seen either. (Opp. Ex. A, ECF No. 55-1, at 41:6–15, 72:12–17, 73:7–8.) That matches his declaration. (Ex. 1 ¶ 7.) HSI concedes that Plaintiff's confirmation of identifying details in the lead record "do not conclusively establish assent" (Opp. 6), and disputing a defendant's record does not

make him unreliable: "A class representative's credibility is not undermined merely because he disputes the accuracy of a defendant's evidence." *Hand*, 456 F. Supp. 3d at 1143–44.

*Berman* and *Clark* do not change this. HSI concedes they are "persuasive, not controlling," that it relies on them only for their "representative analysis," and that Plaintiff's testimony "is not Clark's categorical website denial." (Opp. 8.) By HSI's account, *Clark* also involved a session replay and varying webforms (*id.*); HSI has no session replay of Plaintiff's visit and says its active campaigns used "the same TCPA language." (Opp. 2.) Nor does *Blum* help: HSI invokes it for the limit on representing persons "injured by distinct conduct that the named plaintiffs did not experience" (Opp. 9), but Plaintiff and every member were called through the same platform on the same lead-consent theory (Mot. § V.C), and HSI concedes Plaintiff has standing and may challenge its consent defense. (Opp. 9.)

**C. The Woolfson Analysis Fits the Class.**

HSI does not say Woolfson's count is wrong, it does not have an expert that says it is either, instead it says the script does not "demonstrate" a direction exclusion, a point that "does not prove that a specified number of inbound calls survived other filters." (Opp. 10.) HSI's own example answers it. HSI's export of every record for Plaintiff's number has ten rows: nine coded "OUTBOUND" and one "INBOUND," the transfer leg of the July 8, 2025 call. (ECF No. 32-2 ¶¶ 7–8 & Ex. A.) Woolfson counted nine calls to Plaintiff's number (Ex. 3 ¶ 38) because his script keeps only records with one of thirteen enumerated dispositions, and the inbound transfer leg is dispositioned "MA AEP Follow Up / Most Comp Plan," which is not among them. (Ex. 3 ¶ 36; Opp. Ex. B, ECF No. 55-2, at 3; ECF No. 32-2 Ex. A.) HSI "does not assert" that Woolfson counted the transfer (Opp. 11), and, although it holds the records, it identifies no inbound, transfer, or duplicate row anywhere in the 1,852-number population.

HSI also concedes that "[a] direction filter or demonstrated transfer-matching rule might correct a count mechanically." (Opp. 11.) A correction of that kind is what *Sandusky* approves: "fax logs showing the numbers that received each fax are objective criteria that make the recipient clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 997 (8th Cir. 2016). HSI agrees *Sandusky* "rejected a heightened ascertainability barrier." (Opp. 12.) *See also Mantha*, 347 F.R.D. at 392 (class ascertainable from the defendant's "internal records provided . . . in discovery"; "[a]lthough [the defendant] disputes the accuracy of [the expert's] methodology, it is enough, for ascertainability purposes, that [the plaintiff] has offered an objective means to ascertain the Class").

**D. The Subscriber Argument Is an Acknowledged Gap, Not a Defense.**

HSI "preserves this issue as an incompleteness in the present proof, not an independent assertion that unidentified businesses defeat certification." (Opp. 12.) It concedes that its records cannot show any Exhibit 11 number was nonresidential (Ex. 5, Interrog. No. 2; Opp. 12), that *Hand* "rejected speculative business-use objections, particularly where the marketing targeted individuals" (Opp. 12), and does not contend that Woolfson "performed no reassignment work." (*Id.*) The law is settled in this District: "[a] cell phone user can qualify as a residential telephone subscriber," *Hand*, 456 F. Supp. 3d at 1120, and the FCC presumes "wireless subscribers who ask to be put on the national do-not-call list" to be residential. *In re Rules & Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14039 ¶ 36 (2003). *See Hand*, 456 F. Supp. 3d at 1151–52 (defendants "failed to put forth any evidence or specific allegations"); *Krakauer*, 311 F.R.D. at 396–97 (business-number questions were "few in number, straightforward, and peripheral," and certification "does not obviate [plaintiff's] ultimate burden of proof"). *Mantha* confirms that such a dispute is no obstacle at certification: "[e]ven if a handful of numbers . . .

are not, in fact, residential, that does not warrant denial of class certification," and where the defendant "disclosed no evidence or witnesses to support such minitrials as to even one of the numbers on the Class List," there was no "reasonable possibility of mini-trials on the residential issue." 347 F.R.D. at 398. The court also struck "residential" from the class definition to avoid number-by-number determinations, *id.* at 391–92, as Plaintiff's definition already does. HSI's "persons" versus "numbers" point (Opp. 12–13) fares no better. Under *Sandusky*, "[t]he best objective indicator of the 'recipient' . . . is the person who subscribes." 821 F.3d at 997 (citation omitted). *See also Mantha*, 347 F.R.D. at 390 (the § 227(c)(5) right of action "belongs to any person using the number, not just the subscriber").

### E. The Class-Period Mismatch Is Curable.

HSI admits the mismatch "may be curable," that "[p]ost-filing calls are not categorically impermissible," and that Rule 23(c)(1)(C) permits amendment of a certification order. (Opp. 13.) It is a date filter, not a basis for denial. Plaintiff's own calls, and every call from May 19 to August 1, 2025, fall within the Class as defined. Plaintiff requests certification of the Class as proposed. Alternatively, to the extent the Court finds the difference between the pleaded class period and the period covered by Defendant's produced records material, Plaintiff requests certification of a Class limited to qualifying calls placed between May 19, 2025, and May 19, 2026. This alternative conforms the Class to the records analyzed by Mr. Woolfson without altering the underlying claims, common evidence, or methodology. Rule 23(c)(1)(C) permits the Court to amend a certification order before final judgment.

## III. CONCLUSION

Plaintiff respectfully requests that the Court certify the Class, appoint him as Class representative and appoint Anthony I. Paronich of Paronich Law, P.C. as Class counsel.

Dated: October 15, 2026

Respectfully submitted,

/s/ *Anthony I. Paronich*
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com
*Counsel for Plaintiff and the Proposed Class*

M. Cory Nelson, MO # 63357
MCN Law LLC
8600 W. 110th Street, Suite 214
Overland Park, KS 66210
Tel: 913-358-5800
mcorynelson@mcnlawllc.com
*Local Counsel for Plaintiff and the putative Class*